UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELIZABETH A. REIS, Plaintiff, | : | |
| vs. | : | Civil Action No. 07-236S |
| NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION, Defendant. | : | |

**DEFENDANT NATIONAL PASSENGER RAILROAD CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

The defendant, National Passenger Railroad Corporation, a/k/a National Railroad Passenger Corporation ("Amtrak"), moves this Honorable Court, pursuant to Fed. R. Civ. P. 56(c), for entry of Summary Judgment against all claims of plaintiff. As a basis, Amtrak asserts:

1. Plaintiff failed to include this claim in her Schedule of Assets in her Voluntary Bankruptcy Petition filed approximately ten months after the accident. Such action constitutes a fraud upon the Court for which summary judgment is warranted under the doctrine of judicial estoppel;

2. Plaintiff cannot prove essential elements of her claims, including:

a. an act or omission on the part of Amtrak, and not some other person or entity, that caused Plaintiff to fall;

b. that Amtrak had actual or constructive notice of the allegedly defective condition causing her to fall; and

c. causation.

In support of its Motion, defendant relies upon the attached Memorandum of Law.

DEFENDANT,
NATIONAL RAILROAD
PASSENGER CORPORATION,

/s/ Paul E. Dwyer, Jr.
Paul E. Dwyer, Jr. (#3956)
Andrew J. Murray (#5071)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903-2499
(401) 274-9200 (tel.)
(401) 276-6611 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2008, I served a copy of the within document by causing a copy to be sent via First Class U.S. Mail, postage pre-paid to the below named counsel.

TO: Frederick A. Costello, Esquire
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886

/s/ Paul E. Dwyer, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELIZABETH A. REIS,<br>Plaintiff, | : | |
| vs. | : | Civil Action No. 07-236S |
| NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION,<br>Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONAL PASSENGER RAILROAD CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

## I. SUMMARY OF ARGUMENT

National Passenger Railroad Corporation, a/k/a National Railroad Passenger Corporation ("Defendant" or "Amtrak") submits this Memorandum in support of its Motion for Summary Judgment. Plaintiff has filed a complaint asserting the following claims: Count I – Respondeat Superior; Count II – Intentional Tort; Count III – Negligence; and Count III [*sic*] – Breach of Contract. As shown below, Plaintiff Elizabeth Reis ("Plaintiff") is precluded from asserting her claims before this Court as this action was omitted from the schedule of assets included in her Chapter 7 Bankruptcy Petition filed approximately ten months after the incident. Furthermore, with regard to the merits of Plaintiff's claim, Plaintiff is unable to prove an essential element of each of her claims. Therefore, Amtrak is entitled to judgment as a matter of law.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure sets forth the standard for initiating a motion for summary judgment. Rule 56(c) provides in pertinent part:

> [J]udgment sought shall be rendered forthwith if the pleadings,

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, as the Supreme Court stated in Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

The Celotex Court further explained that "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; see also Lipsett v. Univ. of P.R., 864 F.2d 881, 894 (1st Cir. 1988). If the moving party meets its burden, the opposing party "may not rest upon the mere allegations or denials in [its] pleading." F.R.Civ.P. 56. Instead, the opposing party must set forth specific facts, that have the capacity to sway the outcome of the litigation under applicable law, showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. ARGUMENT

### A. Amtrak Should Be Granted Summary Judgment Because Judicial Estoppel Precludes Plaintiff From Asserting A Claim That Was Omitted From Her Chapter 7 Bankruptcy Petition.

#### 1. Failure To Disclose A Claim In Bankruptcy Precludes A Plaintiff From Asserting The Claim In A Subsequent Civil Action And Warrants Summary Judgment.

On June 23, 2004, Plaintiff Elizabeth Reis allegedly was injured due to a fall upon Amtrak's Acela Train leaving Providence bound for New York. *Amtrak's Statement of Undisputed Facts ¶ 1.* She was traveling on business. Id. Because she was traveling on business, she made a claim for Workers' Compensation Benefits. The day after her fall, Ms. Reis personally had contacted Amtrak's Claims Department about a damages claim against

Amtrak. Id. ¶¶ 26-27. On December 1, 2004, four months prior to filing her bankruptcy petition, Ms. Reis' counsel, with her knowledge, sent an initial demand letter to Amtrak. Id. at ¶ 29, Exhibit E. On April 18, 2005, Plaintiff filed a voluntary Chapter 7 petition for bankruptcy. Id. at ¶ 30, Exhibit F. Although Ms. Reis listed her Workers' Compensation Claim as an exempt asset, she failed to list her claim against Amtrak, a non-exempt claim, as required. Id. at ¶¶ 30-33.

Section 521(1) of the Bankruptcy Code requires a debtor to file a "schedule of assets." 11 U.S.C. § 521(1). A claim or cause of action, whether potential or pending, is an asset that must be disclosed under § 521(1). Jeffrey v. Desmond, 70 F.3d 183, 186 (1st Cir. 1995); Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570 (1st Cir. 1993).

When a debtor fails to disclose a cause of action in a bankruptcy proceeding and subsequently receives a discharge from the bankruptcy court, she is estopped from asserting the cause of action in another forum, even if it results in a windfall for the opposing party. See Payless, 989 F.2d at 571. Failure to identify an asset, such as the claim at hand, while required to do so under pains and penalties of perjury, is a fraud upon the court which will not be condoned.

In Payless, the plaintiff filed for bankruptcy protection in 1988, failed to disclose any claims, potential or existing, against the defendants, received a discharge in bankruptcy, and later sued the defendants in 1990. Payless, 989 F.2d at 571. The district court awarded summary judgment to the defendant, and plaintiff appealed.

The First Circuit Court of Appeals held that the plaintiff's failure to disclose its claims against defendants in the bankruptcy proceeding estopped it from asserting the claims later. Specifically, the court ruled:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt,

> as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it had a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. *This is a palpable fraud that the court will not tolerate, even passively.* Payless, having obtained relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis...Indeed, defendants may have a windfall. However, this is an unacceptable abuse of judicial proceedings...Here, "the silence" in the...bankruptcy record concerning this present claim, as they say in the vernacular, "is deafening."

Id. at 571 (emphasis supplied; citation omitted).[1] Likewise, in Eastman v. Union Pacific Railroad Company, 493 F.3d 1151, 1159 (10th Cir. 2007), the court affirmed the lower court's holding that the plaintiff was judicially estopped from prosecuting his claim:

> The ever present motive to conceal legal claims and reap the financial rewards undoubtedly is why so many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy...We think [this] case is indistinguishable from the overwhelming majority of cases where debtors, who have failed to disclose legal claims to the bankruptcy court without credible evidence of why they did so, have been judicially estopped from pursuing such claims subsequent to a discharge."

Eastman, 493 F.3d at 1159; accord U.S. ex rel. Gebert v. Transport Admin. Servs., 260 F.3d 909, 917-18 (8th Cir. 2001) (upholding lower court's finding that plaintiffs were judicially estopped from asserting their claim which they did not disclose in bankruptcy proceedings); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001) (same); Welsh v. Quabbin

[1] It should be noted that while Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570 (1st Cir. 1993) involved a situation where the defendants in the tort action were previously plaintiff's creditors, judicial estoppel applies equally in the situation found here, where the defendant in tort was not previously a creditor of the plaintiff. Howell v. Leyden, 335 F.Supp.2d 248, 250 (D.Mass. 2004). In fact, the fraud perpetrated on the court in the latter situation is more egregious because defendants who were not prior creditors are much less likely to discover the plaintiff's fraud and bring it to the attention of the court, making the likelihood of the plaintiff successfully deceiving the court far greater.

Timber, Inc., 199 B.R. 224, 228 (D.Mass. 1996) (same); Howell v. Leyden, 335 F.Supp.2d 248, 250 (D.Mass. 2004) (same).

The First Circuit Court of Appeals has held that two conditions must be met for judicial estoppel to apply. First, "the legal or factual assertion advanced in the earlier proceeding must be 'directly inconsistent' with the assertion made in the current forum." Howell, 335 F.Supp.2d at 250 (quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (stating that the positions must be "mutually exclusive")). Second, "the court must have accepted or adopted the assertion made at the earlier proceeding." Id. (citing Alternative Sys. Concepts, 374 F.3d at 33). The First Circuit consistently has taken the position that a good faith exception to the application of judicial estoppel only applies in the most limited of circumstances "such as where 'the new, inconsistent position is the product of information neither known nor readily available to [the party] at the time the initial position was taken.'" Howell, 335 F.Supp.2d at 251 (quoting Alternative Sys. Concepts, 374 F.3d at 35).

Both conditions required by the First Circuit for judicial estoppel to apply easily are satisfied here. Plaintiff took the position in the bankruptcy court that she had no contingent claims of any kind as of April 18, 2005. See Voluntary Bankruptcy Petition, a true and accurate copy of which is appended hereto as Exhibit F of *Amtrak's Statement of Undisputed Facts*. This position is contrary to her assertion before this Court that she has multiple claims against Amtrak arising out of the incident, and contrary to the position Plaintiff took with Amtrak immediately following the incident. *Amtrak's Statement of Undisputed Facts* ¶¶ 15, 26-27, 29 and Exhibit B appended thereto. The bankruptcy court also accepted Plaintiff's representation in resolving her bankruptcy petition, thus depriving her creditors of access to a claim Plaintiff believes would be substantial were she to prevail. Id. at ¶¶ 33, 35 and Exhibit F.

When plaintiffs are confronted with the judicial estoppel doctrine, they often defend on the grounds that their failure to disclose a claim in bankruptcy was an innocent oversight. Courts, however, routinely have rejected such claims. Courts:

> have not been overly receptive to debtors' attempts to recover on claims about which they "inadvertently or mistakenly" forgot to inform the bankruptcy court. Instead, courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."

Eastman, 493 F.3d at 1157 (quoting In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999).

Plaintiff cannot credibly rebut the application of judicial estoppel on the grounds that her failure to disclose her interest in this claim was innocent. As Alternative Sys. Concepts makes clear, this excuse is available only where "the new, inconsistent position is the product of information neither known nor readily available to [the party] at the time the initial position was taken." 374 F.3d at 35. The information underlying Plaintiff's claim was known to her at the time she filed for bankruptcy, as her injury already had occurred, she had filed a Worker's Compensation claim based on the same injury, and she already had contacted the Amtrak Claims Department as a first step to initiating the instant claim. Plaintiff knew that she had suffered an injury and knew the identity of the alleged wrongdoer. When given the opportunity to explain her failure to disclose, Plaintiff provided no reasonable excuse. In fact, Plaintiff's explanation for failing to identify the claim was not that the claim was overlooked, but was instead that she had not yet decided whether to pursue litigation against Amtrak. *Amtrak's Statement of Undisputed Facts* at ¶ 34. Much like the debtors discussed in the aforementioned cases, by concealing this claim from the Bankruptcy Court, Plaintiff later was able to assert it herself and "start over with a bundle of rights."

When pressed for additional information regarding her failure to disclose, Plaintiff repeatedly asserted the attorney-client privilege. Id. Regardless, courts have declined to accept excuses based on a plaintiff's purported reliance on legal advice. See Cannon-Stokes v. Potter, 453 F.2d 446, 449 (7th Cir. 2006) (rejecting plaintiff's argument that her failure to disclose claim in bankruptcy court was excusable because it was the result of reliance on her attorney's advice); Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 601 (5th Cir. 2005) (rejecting debtor's assertion that her failure to inform the bankruptcy court of her claim was because her bankruptcy attorney told her that such claims were "irrelevant").

For these reasons, Plaintiff is estopped from asserting the instant claims against Amtrak and Amtrak should be granted summary judgment.

**B. Amtrak Is Entitled To Summary Judgment Because Plaintiff Cannot Establish An Essential Element of Each Of Her Claims.**

Amtrak is not liable to the Plaintiff under any of the causes of action asserted in the Complaint because Plaintiff is unable to prove an essential element of each of her claims.

**1. Amtrak Is Entitled To Summary Judgment On Counts I and III Of Plaintiff's Complaint Because (1) Plaintiff Cannot Establish The Identity of The Defendant Because She Cannot Identify What Caused Her Fall; and (2) Plaintiff Cannot Establish That Amtrak Owed Her A Duty Under The Circumstances Because She Cannot Prove Notice.**

In Counts I and III of Plaintiff's Complaint, Plaintiff alleges that Amtrak employees' negligence was the proximate cause of aggravation to her existing injuries, as well as the cause of new injuries, under two separate theories: (1) Amtrak employees were negligent in failing to keep the aisles of the train free from obstructions; (2) Amtrak employees were negligent in lifting Plaintiff and moving her off of the train when she was injured. Plaintiff, however, cannot establish that Amtrak is the proper defendant or that Amtrak had the notice necessary to create a

duty, as required under each of her theories. As a result, Amtrak is entitled to summary judgment.

**a. Plaintiff cannot establish that Amtrak is liable because she cannot identify what caused her injury.**

To prevail in a negligence action, a plaintiff must show not only that the defendant owed a duty of care and that the duty was breached "but also that the defendant's negligence was the proximate cause of the plaintiff's injury." Kennedy v. Tempest, 594 A.2d 385, 388 (R.I. 1991); see also Montuori v. Narragansett Electric Co., 418 A.2 5, 9-10 (R.I. 1980). "The establishment of liability [against a particular defendant] requires the identification of the specific defendant responsible for the injury." Gorman v. Abbott Lab., 599 A.2d 1364 (R.I. 1993); see also Konicki v. Lawrence, 475 A.2d 208, 210 (R.I. 1984).

Here, Plaintiff claims that she was first injured when she tripped while walking through a car on the Acela train that she had boarded moments earlier. See Compl. at ¶¶ 4-5. The mere happening of an accident, however, "does not in and of itself necessarily warrant a reasonable and legitimate inference of negligence." Russian v. Life-Cap Tire Services, Inc., 608 A.2d 1145, 1147 (R.I. 1992) (quoting Kennedy, 594 A.2d at 388). Instead, in order to prevail on her negligence claim, Plaintiff must be able to offer proof of that it was this defendant's negligent act which caused her to fall, and Plaintiff is unable to do so.

The Rhode Island Supreme Court's holding in Russian is controlling in this case. 608 A.2d 1145 (R.I. 1992). In Russian, the plaintiff brought a negligence action against the defendant tire service corporation after falling while walking around the truck on which the defendant was working, suffering severe injuries that rendered him quadriplegic. As evidence that defendant's negligence caused his injuries, the plaintiff testified that "he felt something hit him in the shins" before he fell and conjectured that there may have been a long-handled jack in

the area where he fell that hit his shins and caused his fall, as the defendant was using such jacks to remove the tires of his truck. The Supreme Court upheld the lower court's grant of summary judgment for the defendant, finding this type of evidence insufficient to affirmatively identify the cause of his fall, a necessary element of his claim:

> The plaintiff does not assert what hit him in the shins or, in the alternative, identify anything that the defendant...did that caused him to fall...No inference of the defendant's negligence may be drawn without such testimony, and the plaintiff's failure to present evidence...showing proximate cause by direct allegation or by legal inference is a failure to satisfy a necessary element of the claim.

Id. at 1147-48.

Here, Plaintiff's claim fails for a similar lack of evidence, as Plaintiff cannot affirmatively identify what caused her to trip and fall, and therefore cannot identify the specific defendant responsible for her injury. See *Amtrak's Statement of Undisputed Facts* at ¶¶ 10-16. Initially, when giving her statement to Seth Starr of the Amtrak Claims Department, Plaintiff stated that she could not remember or identify what she tripped over. Id. at ¶¶ 15-16 and Exhibit B, appended thereto. Later, during her deposition testimony, Plaintiff testified that she was still not certain what she tripped on, but that she "believed" that it was a piece of luggage because she remembered seeing a woman putting her bags in the overhead luggage compartment in about the location where she fell. See *Amtrak's Statement of Undisputed Facts* at ¶ 16. Plaintiff, however, did not actually see the bag that she alleges she tripped on before, during or after her fall. See id. at ¶¶ 10-13. Like that of the plaintiff in Russian, Ms. Reis' speculation as to what Amtrak did or failed to do and what caused her to fall requires summary judgment in Amtrak's favor.

**b. Even if Plaintiff successfully identified the proper defendant, Amtrak would still be entitled to summary judgment because Plaintiff cannot establish that Amtrak had the requisite notice of a hazardous condition to create a duty to Plaintiff or a**

**breach of that duty.**

Assuming, arguendo, that Plaintiff's testimony is found sufficient to establish that she tripped on a passenger's bag protruding into the aisle of the train car, Plaintiff cannot establish causation because she cannot prove that Amtrak had sufficient notice of the dangerous condition that allegedly caused her fall. Common carriers, like Amtrak, are "charged with the highest degree of care in preventing injury to their passengers." Ellis v. Rhode Island Public Transit Authority, 586 A.2d 1055, 1060 (R.I. 1991). This duty, however, is no higher than is "consistent with the orderly conduct of their business with respect to all matters under their control." Id. (citing Shipman v. United Electric Railways Co., 26 A.2d 478, 479 (1942)). A common carrier is not an insurer of the safety of its passengers. Burke v. United Electric Rys. Co., 79 R.I. 50, 53, 83 A.2d 88, 89 (1951); Bines v. United Electric Rys. Co., 50 R.I. 438, 148 A. 417, 418 (1930). Even when a carrier is required to provide the utmost care and diligence, there is always the question of what is reasonable in the circumstances. See Sharpe v. Peter Pan Bus Lines, Inc., 519 N.E.2d 1341 (Mass. 1988); Glennen v. Boston Elevated Ry., 93 N.E. 700 (1911); Dodge v. Boston & Bangor S.S. Co., 19 N.E. 373 (Mass. 1889). "The mere fact that the personal baggage of a passenger is in the aisle of a car at the exact time of the accident does not of itself raise a presumption of negligence on the part of the employés of the railroad company." Burns v. Pennsylvania R. Co., 82 A. 246, 248 (Pa. 1912). Instead, to establish that a common carrier acted unreasonably, and thus prove negligence, a plaintiff must provide evidence of actual or constructive notice of the dangerous or defective condition present for a reasonable time within which to correct or warn about its existence. Ponton v. United Electric Rys. Co., 61 R.I. 203, 200 A. 425, 427 (1938); Bines, 50 R.I. at 438, 148 A.2d at 417-418; see also Oliveri v. Mass. Bay Transp. Auth., 292 N.E.2d 863 (Mass. 1973); Williams v. Queen City Coach Co., 44 S.E.2d

883, 886 (N.C. 1947); Greer v. Public Service Coordinated Transport, 12 A.2d 844 (N.J.Err. & App. 1940); Burns, 82 A. at 248; Adams v. Louisville & N. R. Co., 121 S.W. 419 (Ky.App. 1909); Lewis v. Metropolitan Transportation Authority, 472 N.Y.S.2d 368 (N.Y.A.D. 1 Dept., 1984).

Hayes v. New England Greyhound Lines, Inc., 116 A.2d 655 (Me. 1955), is instructive in this case. In Hayes, the plaintiff, one of the last passengers to board a bus, brought suit against the bus company alleging negligence and failure to inspect after being injured when a small bag placed in the baggage rack by a fellow passenger fell and struck her, causing her physical injuries. The lower court granted defendant's motion for a directed verdict on the grounds that the plaintiff had failed to prove any negligence on the part of the defendant bus company. The plaintiff appealed. On appeal, the Maine Supreme Court held that a carrier is not responsible for an injury to a passenger if the carrier's employee did not have notice of the alleged dangerous condition. The court held that the operator of the bus was "not required to be constantly on alert to cope with the negligence of other passengers," because

> [l]iability rests upon failure to act after notice. In order to make it the duty of an employee to act, he must have actual notice that the baggage is placed in the [luggage] rack in such a manner or is of such size or shape that it is likely to…injure some passenger, or the condition creating danger must have existed a sufficient length of time to affect him with constructive notice.

Hayes, 116 A.2d at 656. Thus, because the only evidence the plaintiff presented was that the bag fell and struck her without establishing that the bag had been in a dangerous position for a sufficient amount of time to establish constructive notice, the Court upheld the lower court's granting of the motion for a directed verdict.

Here, Plaintiff can establish neither actual or constructive notice, as her description of the events surrounding her fall fails to show that Amtrak had any knowledge of the existence of the

bag that allegedly caused her fall. Plaintiff testified that no Amtrak employees were present in the car at the time of her fall. See id. at ¶ 7. Plaintiff also testified that she was one of the last passengers to board the Acela. See *Amtrak's Statement of Undisputed Facts* at ¶ 4. She stated that she was onboard the train for "mere moments," walking no more than twenty-five feet, before tripping over what she, in hindsight, only believes was a bag belonging to a woman standing in the aisle of the train and storing her things overhead. See id. at ¶¶ 6, 8, 14, 16. Thus, Plaintiff has provided neither evidence that Amtrak had actual notice of the baggage allegedly protruding into the train's aisle, nor has she provided evidence even remotely establishing that the baggage had been sitting in the aisle for a length of time sufficient to presume Amtrak had notice of its existence. To the contrary, Plaintiff's testimony supports the opposite conclusion: that any baggage allegedly placed in the aisle only recently had been brought on board, as the owner was still standing and storing her belongings. Moreover, the evidence clearly establishes that the baggage which allegedly caused Plaintiff to fall remained in the control of the passenger to whom it belonged. Id. at ¶¶ 6, 8. According to Ms. Reis' own testimony, at no time did the passenger relinquish control of her baggage to Amtrak.

**c. Plaintiff also cannot establish that an Amtrak employee's negligence was the proximate cause of the exacerbation of her injuries incurred at the time of her fall.**

Plaintiff alleges that an Amtrak employee negligently lifted and moved her to the platform after her fall, causing her to suffer a herniated disc, rotator cuff tear, injured knee and aggravation of her broken foot. See Compl. at ¶¶ 7-10. Plaintiff's claim, however, again must fail for lack of evidence of causation. In order to establish that Amtrak's negligence exacerbated her previous injuries and caused her further injuries, Plaintiff must offer evidence that an Amtrak employee's negligent actions in lifting and moving her from the train to the platform were the

proximate cause of the specific injuries pled. Plaintiff, however, has not and cannot establish that any of her injuries were caused or exacerbated when she was lifted and moved from the train.

Plaintiff's medical records provide no objective evidence to support the proposition that but-for her being lifted and moved to the platform, Plaintiff would not have suffered any of the injuries pled. See *Declaration Under Penalty of Perjury of Joseph S. Barr, Jr., M.D.,* Exhibit G at ¶ 5-12. In fact, Plaintiff's medical records contain no statements attributing any of her injuries to having been lifted and taken off of the train after her injury and having stood for ten minutes with her foot raised while waiting for rescue services to arrive, nor do they support a finding that any additional trauma occurred between her initial fall and the time EMTs arrived to take her to Rhode Island Hospital. See Exhibit G at ¶ 7, 9-12. There also was no medical examination performed or radiology studies taken between the time of her fall and when she was moved from the train to establish her condition at the time of her fall which would allow a doctor to opine that her injuries were exacerbated between the time of Plaintiff's fall and the time she was transported to the hospital.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's medical records reveal, at best, that her alleged injuries and ailments are a result of her initial foot injury and her subsequent treatment, not any act or omission on the part of Amtrak. See Exhibit G at ¶¶ 9-11. In addition, Joseph S. Barr, Jr., M.D.'s review of Plaintiff's medical records and x-rays, attributes her shoulder, neck, knee and foot injuries to causes other than her having been lifted and moved by an Amtrak employee. Id. at ¶¶ 6-12. Thus, Plaintiff has failed to offer evidence establishing that any act or omission by an Amtrak employee caused or exacerbated any of her injuries, and judgment must be entered against her.

**2. Amtrak Must Be Granted Summary Judgment On Count II – Intentional Tort of Plaintiff's Complaint Because Plaintiff Has Failed To Offer Proof of Causation And Has Failed To Offer Proof Of Willfulness, Recklessness or Wickedness As Required For An Award Of Punitive Damages.**

Plaintiff alleges in Count II of her Complaint that Amtrak employees engaged in intentional tortious conduct when they lifted her from the ground when she was injured and moved her off of the train. Plaintiff alleges that this conduct was "egregious and oppressive and characterized by malice or wantonness justifying the imposition of punitive damages therefore." Compl. at ¶ 25.

When the intentional tort pled is battery, as it appears to be here, a plaintiff must offer evidence of an act intended to cause, and in fact causing, an offensive contact with or unconsented touching of or trauma upon the body of the plaintiff. See Hennessey v. Pyne, 694 A.2d 691, 696 (R.I. 1997) (stating that battery requires either intent or a willful setting in motion of a force that ordinarily causes injury). Here, Plaintiff has offered no evidence that the Amtrak employee's touching was unwanted. Plaintiff's testimony does not include evidence that she told any Amtrak employee that she did not want to be helped up and/or moved off of the train. See Reis Tr.; Exhibit B. In fact, Plaintiff was trying to lift herself up on a metal bar in the train's vestibule when the Amtrak employee assisted her by lifting her and taking her off of the train to the safety of the platform. See *Amtrak's Statement of Undisputed Facts* at ¶¶ 18, 20. It has long been recognized that peril and danger invite rescue and Plaintiff's position of peril and her actions in trying to get up after her fall invited the Amtrak employee's assistance. See Gifford v. Haller, 710 N.Y.S.2d 187 (3d Dept. 2000).

In order to prevail on an intentional tort claim, a plaintiff must also establish causation. See Ed Peters Jewelry Co. v. C&J Jewelry Co., 51 F.Supp.2d 81, 102 (D.R.I. 1999) ("The

elements of [tortious interference with contractual relations], like those of all other intentional torts, includes a causation requirement."). As explained *supra*, Plaintiff cannot establish that any of her injuries ple

d – "herniated disc, rotator cuff tear, injured knee and aggravation of broken bones in her right foot" – were caused or exacerbated when an Amtrak employee lifted and moved her from the train to the platform.

A claim for punitive damages must be supported by some underlying tort, such as battery as alleged. It is only when a party suffers damages as a result of another's intentional tortious acts that one is entitled to recover any and all losses caused by the tortfeasor's misconduct, including in certain circumstances punitive damages. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 1 at 6 (5th ed. 1984). Accordingly, as Plaintiff's intentional tort claim must be dismissed for lack of proof of intentional tortious conduct, her claim for punitive damages must also fail. Regardless, Plaintiff has offered no evidence of wantonness on the part of the Amtrak employee who lifted her and moved her to the platform to justify a punitive damages award. The standard for punitive damages as set out by the Rhode Island Supreme Court is as follows:

> [A] party seeing an award of punitive damages bears the burden of producing evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished.

Soares v. Ann & Hope of R.I., 637 A.2d 339, 351 (R.I. 1994) (internal citations omitted). The Plaintiff cannot meet this heavy burden. In determining the propriety of assessing punitive damages, "the focus is not on the blameworthiness of the conduct, itself, but on the mental attitude of the actor with respect to the consequences of the wrongful conduct. Mere indifference

to foreseeable harm consequences to a plaintiff will not support an award of punitive damages." Manocchia v. Narragansett Television, L.P., 1996 WL 937020 *3 (R.I. Super. 1996).

Plaintiff brought her punitive damages claim based on the theory of *respondeat superior*. *Compl.* at ¶¶ 22-25. "Rhode Island law does not countenance vicarious liability for punitive damages on a *respondeat-superior* theory." Shoucair v. Brown University, 917 A.2d 418, 434 (R.I. 2007) (quoting Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993)). "It has long been the law in this state that punitive...damages will not be allowed in situations in which 'a principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him *particeps criminis* of his agent's act.'" Id. (quoting AAA Pool Service & Supply, Inc. v. Aetna Casualty and Surety Co., 479 A.2d 112, 116 (R.I. 1984)). Here, Plaintiff has offered no evidence to support her contention that Amtrak participated in, authorized, or ratified the allegedly tortious act of its employee; therefore punitive damages cannot properly be awarded. See AAA Pool Service & Supply, Inc., 479 A.2d at 116.

Plaintiff also has presented no evidence that Amtrak employees acted willfully, wantonly or recklessly amounting to criminality, as is required under Rhode Island law. Regan v. Cherry Corp., 706 F.Supp. 145, 152-53 (D.R.I. 1989). Instead, Plaintiff described the man who lifted her and moved her off of the train as "very nice" and stated that she thought he felt bad for her because of her injury. See Exhibit B. At best, the scenario Plaintiff describes amounts to negligence, and nothing more. See *Amtrak's Statement of Undisputed Facts* at ¶¶ 18-25. Absent a showing of willfulness, wickedness or recklessness, the issue of punitive damages may not be maintained. See LaPlante v. Am. Honda Motor Co., Inc., 27 F.3d 731, 745 (1st Cir. 1994) (holding that the First Circuit was "in complete agreement" with the district court's ruling that the defendant was entitled to judgment as a matter of law on plaintiff's claim for punitive

damages absent plaintiff sustaining its burden of proof).

Because Plaintiff has failed to sustain her burden of proof on the elements of causation and unwanted touching as related to the intentional tort of battery, and has failed to offer satisfactory evidence to support an award of punitive damages, her intentional tort claim must fail as a matter of law.

**3. Amtrak Must Be Granted Summary Judgment On Count III [sic] – Breach Of Contract, Because Plaintiff Cannot Establish That Amtrak Breached Any Duty To Plaintiff.**

Plaintiff alleges that Amtrak breached its contractual duty "to provide safe travel from Providence to New York" by "failing to properly supervise and train its employees to care for individuals who may have been injured while on its train and failed [*sic*] to provide a safe and supervised car in which to deal with injured passengers while under the care and supervision of…Amtrak." Plaintiff alleges that, as a result of Amtrak's breach of contract, Plaintiff was "injured and damnified." Plaintiff, however, has failed to provide evidence of any alleged breach of contract on the part of Amtrak that injured Plaintiff.

Contrary to Plaintiff's assertion, a common carrier, like Amtrak, is not an insurer of the safety of its passengers and must only act reasonably under the circumstances. See Sharpe v. Peter Pan Bus Lines, Inc., 519 N.E.2d 1341 (Mass. 1988); Glennen v. Boston Elevated Ry., 93 N.E. 700 (1911); Dodge v. Boston & Bangor S.S. Co., 19 N.E. 373 (Mass. 1889). As explained *supra*, Plaintiff must offer evidence that Amtrak had actual or constructive notice of the allegedly defective condition which injured her. More importantly, Plaintiff must offer evidence that it was Amtrak's act which caused her injury. Without evidence as to what caused her fall or that Amtrak had actual or constructive notice of the condition so as to remedy it, Plaintiff cannot recover under any theory.

An essential element of a breach of contract claim is that the contract breach be the proximate cause of the plaintiff's alleged injuries. For a defendant's acts to be the proximate cause of a plaintiff's harm, its acts or omissions must have been the "primary cause" in bringing about the harm. Wells v. Uvex Winter Optical, Inc., 635 A.2d 1188, 1191 (R.I. 1994). To prove proximate cause, a plaintiff must prove two distinct elements: (1) the plaintiff's injury would not have occurred "but for" the defendant's breach of contract; and (2) "the harm was a natural and probable consequence" of the breach. Wells, 635 A.2d at 1191 (quoting Redgrave v. Boston Symphony Orchestra, 855 A.2d 888, 893 (1st Cir. 1988), cert. denied, 488 U.S. 1043 (1989)). Thus, the defendant's act must have been a "direct" rather than "remote" cause of the plaintiff's damages. See Federal Express Corp. v. Rhode Island Dept. of Trans., 664 F.2d 830, 837-38 (1st Cir. 1981).

Any alleged breach of contract was not the proximate cause of Plaintiff's injuries. As discussed *supra*, the injuries Plaintiff sustained when she tripped and fell on an unidentified object—which Plaintiff now believes was another passenger's bag—are not attributable to any act or omission on the part of Amtrak. Likewise, Plaintiff cannot establish that she sustained any additional injuries or aggravated any previous injuries when she was lifted and moved from the train to the platform. Absent such evidence, Plaintiff's Breach of Contract claim fails and Amtrak must be granted summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Amtrak requests that its Motion for Summary Judgment be granted.

DEFENDANT,
NATIONAL RAILROAD
PASSENGER CORPORATION,

/s/ Paul E. Dwyer, Jr.
Paul E. Dwyer, Jr. (#3956)
Andrew J. Murray (#5071)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903-2499
(401) 274-9200 (tel.)
(401) 276-6611 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2008, I served a copy of the within document by causing a copy to be sent via First Class U.S. Mail, postage pre-paid to the below named counsel.

TO: Frederick A. Costello, Esquire
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886

/s/ Paul E. Dwyer, Jr.