UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ELIZABETH A. REIS**

**VS C. A. NO. 07-236S**

**NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. SUMMARY OF ARGUMENT

At this time the Court is only addressing the issue of judicial estoppel. Is the Plaintiff estopped from asserting her claims before this Court because she did not schedule a potential claim against National Passenger Railroad Corporation (Amtrak) at the time she filed her Chapter 7 bankruptcy petition in April of 2005? Plaintiff alleges that, in fact, there is a question of fact as to whether she intentionally omitted that claim and whether or not she actually was aware that she had a legal claim and intended to press it at the time she filed her bankruptcy petition.

Therefore, one of the elements of judicial estoppel, the intentional conduct of Plaintiff to mislead the Court for her own advantage is missing. In looking at the facts in a light most favorable to the Plaintiff, Defendant's Motion should be denied.

## II. Introduction

Elizabeth Reis was seriously injured when she fell on Amtrak's Acela train, which was stopped to pick up passengers in Providence for a continuation of a trip from Boston to New York on June 23, 2004. At the time she fell, Plaintiff suffered a comminuted fracture of her right foot as well as injuries to her neck, shoulder and knee.

Later, the complications of those injuries served to exacerbate and aggravate a pre-existing fibromyalgia condition. See Plaintiff's Exhibit 1. Affidavit of Elizabeth Reis.

At the time of her injury, Ms. Reis was an employee of the Providence Warwick Convention and Visitor's Bureau (PWCVB). She was earning approximately $49,000.00 per year. See Plaintiff's Exhibit 1. Ms. Reis was 45 years old. She is a single mother of one child. Id.

Ms. Reis had never been involved in litigation prior to this incident with the exception of divorce, child custody and support proceedings.

Subsequent to her fall, Ms. Reis was taken off the train prematurely in violation of Amtrak's own rules concerning the treatment of injured passengers. She was placed in a standing position, hanging onto the shoulder of an Amtrak employee for about ten minutes prior to emergency personnel arriving at the train station and transporting her to the Rhode Island Hospital Emergency Room. See Plaintiff's Exhibit 1.

Ms. Reis was diagnosed with several fractures in her right foot. Within two weeks she developed a serious aggravation and flare-up of her previously asymptomatic fibromyalgia disease. After resuming some physical activity, it was discovered she had a torn rotator cuff and a frozen shoulder, which was attributed to her fall and her attempts to ambulate with the use of a crutch. She was also diagnosed with an injury to her knee and herniation of the disk of her C6/C7 cervical spine. See Plaintiff's Exhibit 1.

She was obviously unable to work and immediately placed a claim for workers' compensation. She retained an attorney, Michael Farley, to represent her in her workers' compensation claim. See Plaintiff's Exhibit 1.

After being transported by ambulance to Rhode Island Hospital on June 23, 2004, she was told by her father that if she had any questions or complaints she should contact Amtrak to register her concerns. See Plaintiff's Exhibit 1. Within a few days, Ms. Reis attempted to contact Amtrak and was placed in communication with a Martha O'Neil, who told her that she was not the person to take a complaint but she would refer her to Seth Starr. See Plaintiff's Exhibit 1. Mr. Starr called Ms. Reis on July 2, 2004, approximately one week after the incident in question. During her conversation with Mr. Starr, which was recorded, she was asked to go through the incident as it happened, how it happened and what was done to her after it happened. At no time during the conversation, as recorded and transcribed in four typewritten pages, did Ms. Reis indicate she was going to sue or bring a claim against Amtrak. See Plaintiff's Exhibit 2 at pages 1-4. In fact, the only party she indicated she was asking for compensation from was her employer's workers' compensation carrier. This was in response to a question on page four of the transcript where Mr. Starr asked her: "I guess, let me ask you quickly, if there is any other fact about the incident that you would like to add?" Ms. Reis responded: "just that this is going under workers' compensation because I was on my way to a trade show in New York when this happened." See Plaintiff's Exhibit 1, page 4. When Mr. Starr asked Ms. Reis the name of the workers' compensation carrier she indicated it was Beacon Mutual Insurance Company and the adjuster was Maria Pate. See Plaintiff's Exhibit 1, page 4. She then gave Mr. Starr Ms. Pate's telephone number. She told Mr. Starr to get in touch with the insurance carrier. This was the last contact between Ms. Reis and Amtrak until December 1, 2004 when her attorney in the workers' compensation case, Michael J. Farley, contacted Seth Starr on December 1st and asked for

information concerning any investigation that was done as a result of her fall and for a copy of the recorded statement that Mr. Starr had taken on July 2nd . See Plaintiff's Exhibit 3. At no time prior or subsequent to December 1, 2004 did Mr. Farley submit any claim to Amtrak or request any money from Amtrak for the injuries suffered by Elizabeth Reis nor did he identify himself as the attorney for Elizabeth Reis in reference to a monetary claim of Ms. Reis against Amtrak. See Plaintiff's Exhibit 3. Conversely, Mr. Farley very actively represented Ms. Reis in her workers' compensation claim and in December of 2004 was in the process of advocating for her in order to keep her receiving workers' compensation benefits. The information he requested in his letter of December 1st was pertinent as to how Ms. Reis was injured and to the severity of her fall.

Due to the fact that Ms. Reis was receiving approximately half the income through workers' compensation benefits than she had been receiving from her employment at PWCVB on an annual basis, she fell seriously behind in her monthly living expenses and was in danger of losing her home. She had to do something to alleviate her debt obligations. See Plaintiff's Exhibit 1. In April, 2005, she engaged Robert Jacquard, Esquire to represent her in a Chapter 7 bankruptcy that was approved and a discharge entered on or about July 2, 2005. See Plaintiff's Exhibit 4. In filling out the bankruptcy petition, Ms. Reis listed her claim against the Workers' Compensation Carrier for her injury suffered on June 23, 2004. She discussed the issue with Mr. Jacquard and he has submitted an Affidavit concerning the preparation of certain bankruptcy schedules, including those that would identify assets of the petitioner in bankruptcy. See Plaintiff's Exhibit 4. Mr. Jacquard states under oath and as an officer of the Court that he assisted Ms. Reis in preparing the bankruptcy schedules. He asked

her if she was involved in any lawsuits or possessed the ability to bring a claim or lawsuit against any party for any reason, including personal injury claims. In his Affidavit, he indicates that Ms. Reis told him she suffered an injury while at work and it was listed in Schedule B of her bankruptcy petition as personal property. Mr. Jacquard also indicates he inquired further of her concerning the facts surrounding her fall and whether any third party might be responsible for her injury. After he discussed that with her, it was his position that she did not have a third party claim at that time and if he did feel she had a third party claim, he would have listed it. He was her attorney. He heard her description of how she fell and he was familiar and cognizant of the bankruptcy laws. She followed his direction. See Affidavit of Robert Jacquard, Esquire, Plaintiff's Exhibit 4.

In approximately November of 2005, Ms. Reis replaced her workers' compensation attorney, Mr. Farley, with Attorney Frederick Costello. See Plaintiff's Exhibit 1. At that time she had been taken off workers' compensation. She had filed a petition to be reinstated in the compensation program based on the aggravation of her fibromyalgia, her shoulder injury and her ongoing problem with the non-union of the metatarsal bones of her right foot.

On February 20, 2006 Ms. Reis was reinstated on workers' compensation as a result of the injury suffered on June 23, 2004. See Plaintiff's Exhibit 1. The respondent in that case, the PWCVB, took a timely appeal and proceeded to litigate the case aggressively for the next year and a half. During that period of time, Mr. Costello made absolutely no claims or demands of Amtrak, instituted no litigation against Amtrak and, in fact, had no communication with Amtrak. See Plaintiff's Exhibit 1. In May of 2007, Ms. Reis was able to obtain what is known as a "commutation" with Beacon Mutual

Insurance Company, the insurer for PWCVB. After settling the claim with Beacon Mutual and still being in considerable discomfort, Ms. Reis filed a petition for total disability with the Social Security Administration. See Plaintiff's Exhibit 1. Attorney Costello then reviewed the incident that precipitated Ms. Reis' fall in the first place. He felt that she might have a cause of action against Amtrak. At this time Beacon Mutual was also requesting that Ms. Reis pursue a claim against Amtrak. Plaintiff was aware that the statute of limitations for the claim against Amtrak was about to run as of June 23, 2007. For this reason, counsel and Plaintiff felt it was important to place the matter in litigation to avoid the bar of the statute of limitations and to then proceed with discovery as time went on to develop any claim Ms. Reis might have. See Plaintiff's Exhibit 1. This was the first and only claim that was made by Ms. Reis against Amtrak and it was after she had been represented by two other attorneys and almost three years had passed since the original incident had taken place.

After Plaintiff filed the Complaint in the Providence County Superior Court, the Defendant filed a petition to remove this case to the Federal District Court for the State of Rhode Island and initiated discovery, as did Plaintiff. A conference with Magistrate Almond was held in July of 2007 and discussions about settlement took place. Since the discussions were not fruitful, the matter continued with the normal pre-trial orders being entered as well as a schedule for discovery and dispositive motions.

The first time the issue of the failure to identify Amtrak as a potential defendant in a tort claim in Ms. Reis' bankruptcy petition was raised was at Ms. Reis' deposition on December 10, 2007. This was also the first time Mr. Costello was made aware that a

bankruptcy petition had been filed. Subsequent to that deposition, Defendant filed his Motion for Summary Judgment.

At the present time the only issue before this Court is the question concerning whether or not judicial estoppel applies in this case.

## **III**. **Standard for Review.**

**1. Summary Judgment**.

For a moving party to succeed in a Motion for Summary Judgment, he is obligated to prove that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Lipset v University of Puerto Rico, 864 F.2d 881, 894 (1st Cir. 1988).

In determining whether there is a material issue of fact, the Court considers affidavits and pleadings in a light most favorable to the non-moving party and only when it appears that no genuine issue of material fact is asserted can summary judgment be ordered. Lipset v University of Puerto Rico, 864 F.2d 881, 895. Charles Garnier Paris v Andin Intern., Inc. 36 F.3d 1214 (1st Cir. RI 1994). Caylor v Virden, 217, F.2d 739 (8th Cir. 1955), Marandola v Hillcrest Builders, 277 A.2d 785 (RI 1967).

Summary Judgment should be denied if the facts established are such that conflicting inferences could be drawn therefrom or if reasonable men might disagree. Caylor v Virden 217 F.2d 739.

An analogy exists between a Motion for Summary Judgment and a Motion for a Directed Verdict. Summary Judgment may be granted on a showing that it would permit a direction of a verdict tried by a jury. Sartar v Arkansas Natural Gas Corp. 321 U.S.

620, 64 S. CT. 724 (1924). The Court stated in that situation that all inferences are read in favor of the non-moving party. Kelly v LaFarce, 288 F.3d 1, 9, 14, (1[st] Cir. 2002).

Summary Judgment is a drastic remedy and it should be cautiously applied. McPhilips v Zayre Corp. 582 A.2d 747 (RI 1990).

In a Motion for Summary Judgment, the Court does not pass on the weight and credibility of the evidence. It simply determines whether there are any issues of fact to be resolved. Palazzo v Big G Supermarkets, Inc. 110 RI 242 (1972).

As a pre-requisite to an Order for Summary Judgment, the lower court must review the pleadings, affidavits, admissions, answers to interrogatories and other appropriate evidence from a perspective most favorable to the party opposing the motion. Steinberg v State, 427 A.2d 338 ( RI 1981).

Summary Judgment is not appropriate merely because facts offered by the moving party seem most plausible or because the opponent is unlikely to prevail at trial. Oriello v Rhode Island Department of Administration, Division of Motor Vehicles, 985 F. Supp. 48 Dist. of RI (1997), Schock v U.S., 56 F. Supp. 2d 185 Dist. of RI (1999).

A genuine issue of material fact exists for purposes of summary judgment motions if there is sufficient evidence to persuade a reasonable jury to resolve a point in a non-moving party's favor. Hope Furnace Associates, Inc. v F.D.I.C., 71 F.3d 39 (1[st] Cir. RI 1995). Charles Garnier, Paris, v Andin Intern.,Inc., 36 F.3d 1214 (1[st] Cir. RI 1994).

If facts support plausible but conflicting inferences on a pivotal issue in a case, a judge may not choose between those inferences at summary judgment stage. Schock v U.S. 56 F. Supp. 2d 185.

**2. Plaintiff's response to Defendant's argument that Amtrak should be granted summary judgment because judicial estoppel precludes Plaintiff from asserting a claim that was omitted from her Chapter 7 bankruptcy petition.**

First, Plaintiff takes issue with the so-called Statement of Undisputed Facts of Defendant that Ms. Reis contacted Amtrak's Claims Division in reference to a damages claim against Amtrak the day after her injury. Ms. Reis' position is that she contacted Amtrak about the circumstances of her fall at the suggestion of her father and to voice her complaint about Amtrak's serve or care subsequent to her fall. See Affidavit of Elizabeth Reis, Plaintiff's Exhibit 1. There was nothing in any record that indicates she was making a claim for damages at that point in time or that she had made a decision to make a claim for damages. The only evidence is that she spoke with a Ms. Martha O'Neil on the phone and was directed to a Mr. Seth Starr, who handles incidents where someone is injured on an Amtrak train. See deposition of Elizabeth Reis p. 48, 50, Plaintiff's Exhibit 1.

In reference to Mr. Starr, as previously indicated in our Introduction, Ms. Reis certainly expressed her displeasure at the way she was treated by Amtrak personnel but there was absolutely no claim for damages made against Amtrak in the discussions Ms. Reis had with him.

The closest thing to any discussion of a claim was the fact that Ms. Reis stated she was pursuing this case through her workers' compensation carrier, Beacon Mutual, who might, in fact, contact Amtrak. See Plaintiff's Exhibit 2, transcript of telephone conversation of Ms. Reis at p. 4.

Defendant's claim that on December 4th Ms. Reis' counsel, Michael Farley, with her knowledge sent a claim for damages to Amtrak is completely misleading and inaccurate. That letter, which is submitted as Plaintiff's Exhibit 3, simply requests copies of any investigation that was done concerning the incident and a transcript of her taped conversation with Mr. Starr, which she had every right to receive. There was neither a claim in that letter that she was demanding money from Amtrak nor any indication that she was planning to file a lawsuit against Amtrak. As stated in Plaintiff's Introduction, Mr. Farley was actively representing Ms. Reis in the litigation against Beacon Mutual on behalf of Ms. Reis for her workers' compensation benefits. In fact, her workers' compensation claim was listed in her bankruptcy schedule indicating that the injury she suffered on June 23, 2004 was the basis for that claim.

Section 521 of the Bankruptcy Code does require the debtor to file a "Schedule of Assets" and there are serious consequences for parties who intentionally mislead the Court by omitting claims on the Schedule of Assets forms. Payless Wholesale Distributors, Inc. v Alberto Colvo, P.R. 989 F.2d 570 (1st Cir. 1993).

The Defendant would have you believe that because the claim against Amtrak was not listed in April of 2005, that Ms. Reis is estopped from asserting a cause of action over two years later in June of 2007. In fact, the Defendant goes so far as to imply that her actions were a fraud upon the Court.

Predictably, Defendant cites a series of cases that support its claim that judicial estoppel prevents this Plaintiff from pursuing her claim against Amtrak regardless of what her state of mind was and her intentions were in April of 2005.

As Paul Harvey would say however, "now, the rest of the story". There are several elements that must be satisfied prior to the doctrine of judicial estoppel being triggered. In the case of In re: Envirodyne Industries, Inc. et al v Union Carbide Corporation, 183 B.R. 812 U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division (1995), the United States Bankruptcy Court set forth the elements of judicial estoppel. They are:

1. a party must take one position in an earlier legal proceeding;

2. then, at a subsequent separate proceeding, the party must take a position clearly inconsistent with the earlier position;

3. the party to be estopped had to have convinced the first court to accept its position; and

4. (most importantly), the subsequent position must be intentionally inconsistent with the prior position.

The Envirodyne Court cited Levinson v United States, 969 F.2d 260, 264 (7th Cir.) Cert. denied. 121 L.Ed. 2d 441, 113 S.CT. 505 (1992) for this legal precedent. The Court in Levinson followed the position of Cassidy v Commissioner of Internal Revenue Service, 498 U.S. 812 (1990). In Cassidy the Court indicated that judicial estoppel should only be applied where intentional self-contradiction is being used as a means of obtaining an unfair advantage, it should not be applied where "it would work an injustice, such as where the former position was the product of inadvertence or mistake." Cassidy 641, 642.

Numerous courts have followed this doctrine; such as U.S. v McCaskey, 9 F.3d 368, p. 378 ( 5th Cir. 1993). Patriot Cinemas v General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987).

In Envirodyne, the Court found that the plaintiff did not intentionally omit a set off or counterclaim against Union Carbide and for that reason refused to invoke the doctrine of judicial estoppel.

In Ryan G.P. v Santiam-Midwest Lumber Company, 81 F.3d 355 (3rd Cir. 1996), the Circuit Court found that while a builder had violated its disclosure requirements under 11 U.S.C.A. 521, to be judicially estopped the party must adopt an inconsistent position as a means of obtaining an unfair advantage and not merely a good faith mistake. Because there was no basis for inferring that the debtor had deliberately asserted an inconsistent position to obtain an advantage, the court refused to estop the plaintiff from proceeding with his case.

Because judicial estoppel is such a draconian penalty, courts have stated that it must be adopted cautiously. Envirodyne Industries 183 Bankruptcy A.12. Rhode Island's Supreme Court is in accord with this principle. In a recent case, Shorrock v Scott, 2007-232, decided April 17, 2008, it stated "ordinarily the application for estoppel is an extraordinary form of relief that will not be applied unless the equities clearly are balanced in favor of the party seeking relief." (quoting Southern Exhibitions, Inc. v Rhode Island Builders Associates, Inc., 279 F.3d 94 104 (1st Cir. 2002) applying Rhode Island law.)

Most importantly, in the Envirodyne case, the court found it was a material issue of fact as to whether the bankrupt company had intentionally contradicted itself and

based on this material issue of fact the court was precluded from summarily dismissing Envirodyne's counterclaim.

In Dawson v J.G. Wentworth & Company, Inc. 946 F.Supp. 394 (E.D. PA. 1996), the Court held that one might not infer bad faith merely from the omission of the claim. Some disclosure was sufficient to preclude the application of judicial estoppel. Clearly, in the case at bar Elizabeth Reis notified the Bankruptcy Court that she was injured and pursuing a claim for that injury. Bankruptcy Trustees and lawyers certainly have the ability to flesh out facts to determine whether a third party claim was present warranting the listing of such a claim in the schedules. In this case, neither Mr. Jacquard nor the bankruptcy trustee came to that conclusion.

In Battle v Alpha Chemical and Paper Company, 2000 WL 681074 (ALA. Civil Appeals 2000) held that a Chapter 7 debtor's failure to list her claim against a cleaning company did not appear to be anything but an oversight and thus entering summary judgment in favor of the cleaning company on the basis of judicial estoppel was inappropriate.

In Cloud v Northup Grumman Corporation, 67 CAL. APP. 4th 995 (2nd Dist. 1998), the Court held that there were factual issues to be determined on a motion for judgment on the pleadings that precluded the application of judicial estoppel to bar claims since no showing of bad faith on the part of the debtor was established.

A similar finding was made in Kelsey v Waste Management of Alameida County, 90 CAL. RPTR. 2d 510 (1st Dist. 1999) where the court found that a debtor who failed to list claims for discrimination and intentional infliction of emotional distress against a former employer in his bankruptcy schedules should not be judicially estopped from

pursuing that claim where there was insufficient evidence to negate the possibility that the debtor's failure to list the claims was the result of ignorance or mistake. Thus, the motion for summary judgment was denied.

The issue of material fact again was addressed in Thompson v Continental Airlines, 18 S.W. 3d 701 TEX. APP. (SanAntonio 2000). The court found that a genuine issue of material fact existed as to whether the plaintiff failed to disclose in the bankruptcy petition the possibility of a personal injury cause of action against an airline was intentional and in bad faith or simply a mistake thus precluding summary judgment for the airline on the grounds plaintiff was judicially estopped from pursuing its action.

As you can see from the cases cited, there are two strong issues that should militate against any grant of summary judgment in this case. First, there has been no evidence shown that Elizabeth Reis, a woman with little or no experience in the judicial system, was aware that even though she had made no claim against Amtrak that she had to list it as a "potential" defendant in some possible future law suit. There is not a scintilla of evidence presented by Defendant to show that Plaintiff intended to pursue a claim against Amtrak and, in fact, the opposite is true. The only comments she made when she spoke with representatives of Amtrak were that she was pursuing a workers' compensation claim and that, in fact, the workers' compensation insurance carrier may contact Amtrak or vice versa. See Plaintiff's Exhibit 2, page 4.

The so-called letter from Mr. Farley merely asks for information. There is nothing in that letter asking for monetary damages or that he is threatening legal action. In fact, there is not even any specific language that Mr. Farley says I represent Elizabeth Reis in her claim against Amtrak for monetary damages. He simply says I represent her for her

injury suffered while on an Amtrak train, which he did. The injury he was representing her for was the workers' compensation claim. See Plaintiff's Exhibit 3.

As indicated in our Standard of Review, when a person is filing for summary judgment, all inferences are found in favor of the non-moving party. Schock v U.S. 56 F. Supp. 2d 185, Kelly v LaFarce, 288 F.2d 1, 9, 14 (1st Cir.).

In this particular case, the inferences are that Ms. Reis was pursuing a workers' compensation claim. She had done nothing to actively pursue a claim against Amtrak. She identified the only claim that she believed she had in her bankruptcy schedule. That was the workers' compensation claim. Whether or not it was an exempt claim or not is irrelevant. The point is that was the only claim she believed she was pursuing. Her discussions with her two previous lawyers, Mr. Farley and Mr. Jacquard, produced no evidence that she intended to go forward against Amtrak. It was only after a three-year period of time had passed and she had a third lawyer that she was persuaded to bring this claim.

Second, is the issue of material fact. Whether or not Ms. Reis intentionally mislead the Court by omitting the claim against Amtrak in her 521 Schedule is a question of fact that precludes a ruling of summary judgment. Thompson v Continental Airlines, 118 S.W.3d. 701, Cloud v Northup Grumman Corp., 67 Cal. App. 4th 995, Judicial Estoppel-Bankruptcy, 85 ALR 5th 353 at p. 429-430.

For these reasons Plaintiff respectfully states that there is an issue of fact as to whether she intentionally attempted to deceive the Court or that she willfully committed any fraud upon the Court.

Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied.

Plaintiff,
By her attorney,

/s/ Frederick A. Costello
Frederick A. Costello #2205
FLAHERTY, BUTTERFIELD & COSTELLO
33 College Hill Road Suite 20D
Warwick, RI 02886
Tel. 401-822-1800 x 6, Fax. 401-822-1879