UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ELIZABETH REIS**

**VS CIVIL ACTION NO. 07-236S**

**NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION**

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule Civil 56, Plaintiff submits this Statement of Undisputed Facts in support of her objection to Defendant's Motion for Summary Judgment.

### Undisputed Facts.

1. That Elizabeth A. Reis is a single mother, born on October 27, 1959, with one child, David, age 15. See Plaintiff's Exhibit 1, paragraph 1.

2. That on June 23, 2004 Plaintiff was an employee of the Providence Warwick Visitors Convention Bureau (PWVCB). See Plaintiff's Exhibit 1, paragraph 2.

3. That at that time Plaintiff earned approximately $49,000.00 per year in salary. See Plaintiff's Exhibit 1, paragraph 17.

4. That as of June 23, 2004 Plaintiff had never been involved in any litigation of any type other than divorce and custody proceedings.

5. That on June 23, 2004 Plaintiff boarded the Amtrak Acela train that had stopped in Providence and was continuing from Boston to New York for business trades show for her employer the PWVCB. See Plaintiff's Exhibit 1, paragraph 2.

6. That as Plaintiff entered the train, which was identified as "the quiet car", she walked through that car and was about to enter the vestibule when she tripped on a bag that according to the documents received from the Defendant belonged to a Nancy Brensson. See Plaintiff's Exhibit 1, paragraph 3 and Exhibit 5.

7. That Plaintiff fell through the doorway of the quiet car into the vestibule. See deposition of Brian Radovich, pages 42, 43 and Incident Report of Amtrak, identified as Non-Employee Injury/Illness Report dated June 23, 2004. See Plaintiff's Exhibit 5.

8. That as a result of Plaintiff's fall she suffered a comminuted fracture of her right foot, injuries to her neck, shoulder, knees and exacerbated a pre-existing fibromyalgia problem. See Plaintiff's Exhibit 1, paragraph 4.

9. That while Plaintiff was on the floor of the train she was told by Brian Radovich, the conductor employed by Amtrak, that "Lady, you going to stay on or get off, we got to get this train moving." See Plaintiff's Exhibit 1, paragraph 5.

10. That at that time Plaintiff was lying on the floor, in incredible pain, and could not lift herself off the floor. See Plaintiff's Exhibit 1, paragraph 6.

11. That while Plaintiff was on the floor, her luggage was taken off the train by Amtrak personnel, thrown on the train platform and two security guards pulled Plaintiff off the train. She leaned on one of the security guard's shoulder for approximately ten minutes while waiting for an ambulance to come to transport her to the Hospital. See Plaintiff's Exhibit 1, paragraphs 7 and 8.

12. That after being transported to the Hospital Plaintiff spoke to her father who told her that she should obtain a copy of the accident report from the train company. Plaintiff indicated to her father that she had not signed anything and he indicated that she should call the Company and find out what happened. See Plaintiff's Exhibit 1, paragraph 9.

13. That the next day Plaintiff called Amtrak in Boston and spoke with a woman who identified herself as Martha O'Neil. She indicated to Plaintiff that if she had a complaint or wanted information that she would have someone from Amtrak contact Plaintiff. See Plaintiff's Exhibit 1, paragraph 11.

14. That several days later an individual by the name of Seth Starr contacted Plaintiff and asked if she would give a recorded statement. Plaintiff agreed and, in fact, gave Mr. Starr a recorded statement where she told him how unhappy she was with how she was treated after she had fallen on the train but at that time Plaintiff made no claim for monetary damages from Amtrak. In fact, Plaintiff told Mr. Starr that she intended to proceed through her employer's worker's compensation carrier, Beacon Mutual Insurance Company. See Plaintiff's Exhibit 1, paragraph 12, Plaintiff's Exhibit 2, page 4 Statement of July 2, 2004.

15. That this was the last time Plaintiff spoke with anyone from Amtrak concerning the incident of June 23, 2004. See Plaintiff's Exhibit 1, paragraph 13.

16. That subsequent to that point in time Plaintiff retained an attorney, Michael Farley, who represented her in her claim against PWVCB and Beacon Mutual Insurance Company to obtain worker's compensation benefits. See Plaintiff's Exhibit 1, paragraph 14.

17. That subsequent to that time Mr. Farley contacted Amtrak on or about December 4, 2004 and requested a copy of the taped statement of Plaintiff and any reports relating to Plaintiff's fall from Mr. Starr. See Plaintiff's Exhibit 1, paragraph 14 and Exhibit 3.

18. That Mr. Farley never made any claim for monetary damages from Amtrak nor did he indicate in his letter that he was making a claim against Amtrak. It is Plaintiff's understanding and belief that this was the only contact Mr. Farley had with Amtrak and that this was the last communication between Plaintiff or her representatives with Amtrak prior to filing suit against Amtrak in June of 2007. See Plaintiff's Exhibit 1, paragraph 16 and Exhibit 3.

19. That while Plaintiff was disabled and receiving worker's compensation benefits, her weekly income was approximately 50% of what it was prior to her injury on June 23, 2004. See Plaintiff's Exhibit 1, paragraph 17.

20. That because of this, Plaintiff went further and further into debt and was unable to meet her monthly living expenses. Plaintiff was in great fear that she and her son would be without a place to live. See Plaintiff's Exhibit 1, paragraph 18.

21. That with those financial issues pressing Plaintiff hired Robert Jacquard, Esquire to file a Chapter 7 bankruptcy petition to alleviate her debt burden while she was disabled. See Plaintiff's Exhibit 1, paragraph 19.

22. That Plaintiff did not have any experience with bankruptcy at that time and she followed Mr. Jacquard's instructions, filled out the forms as requested and listed her claim for worker's compensation resulting from the injury of June 23, 2004.

23. That Plaintiff discussed with Mr. Jacquard the circumstances of her fall of June 23, 2004 and they came to the conclusion that this was the only claim to be made. See Plaintiff's Exhibit 1, paragraph 20, and Exhibit 4, Affidavit of Robert Jacquard.

24. That in April of 2005, Plaintiff's main focus was on remaining on worker's compensation and obtaining some debt relief. Plaintiff had no intention or desire to make a claim against Amtrak. See Plaintiff's Exhibit 1, paragraph 21.

25. That at the end of April, 2005 Plaintiff was removed from worker's compensation and in November of 2005 she had new counsel, Frederick A. Costello. He attempted to reinstate her on worker's compensation due to the ongoing problems with Plaintiff's foot, shoulder and fibromyalgia. In February of 2006 Plaintiff was successful in being reinstated on worker's compensation; however, her employer's insurance carrier, Beacon Mutual, appealed the decision and litigated it aggressively from February of 2006 through May of 2007. During this period of time, Mr. Costello never to Plaintiff's knowledge contacted Amtrak to make any claim or had any communications at all with Amtrak. See Plaintiff's Exhibit 1, paragraph 22.

26. That in May of 2007 Plaintiff obtained a "commutation" with the worker's compensation carrier, Beacon Mutual, and she had a pending claim for Social Security benefits based on the fact that she was totally disabled. See Plaintiff's Exhibit 1, paragraph 23.

27. That at that time Attorney Costello actively reviewed the history of Plaintiff's fall and advised her that in his opinion she did, in fact, have a possible claim against Amtrak; however, the statute of limitations was due to run as of June 23, 2007 and Plaintiff needed to move quickly to avoid the bar of the statute of limitations. See Plaintiff's Exhibit 1, paragraph 24.

25. That Attorney Costello filed suit in the Providence County Superior Court on or about June 1, 2007 alleging negligence on the part of Amtrak that caused Plaintiff's fall and negligence on the part of Amtrak's handling of Plaintiff subsequent to her fall. See Plaintiff's Exhibit 1, paragraph 25.

26. That this was the first and only time a claim was made against Amtrak for any injuries Plaintiff suffered on June 23, 2004. See Plaintiff's Exhibit 1, paragraph 26.

27. That at no time did Plaintiff ever hide the issue that she was injured on June 23, 2004 and she listed all claims she thought she had when filing the petition for bankruptcy in April of 2005. See Plaintiff's Exhibit 1, paragraph 27.

28. That Plaintiff is willing to re-open her bankruptcy petition and file an amended 521 statement listing the claim against Amtrak at any time. See Plaintiff's Exhibit 1, paragraph 28.

Plaintiff,
By her attorney,

/s/ Frederick A. Costello
Frederick A. Costello #2205
FLAHERTY, BUTTERFIELD & COSTELLO
33 College Hill Road Suite 20D
Warwick, RI 02886
Tel. 401-822-1800 x 6, Fax. 401-822-1879

**CERTIFICATION**

I hereby certify that on the _______ day of __________, 2008 I sent a true copy of within via regular mail to: Paul E. Dwyer, Jr. Esquire, Andrew J. Murray, Esquire, Edwards Angell Palmer & Dodge, LLP, 2800 Financial Plaza, Providence, RI 02903-2499. /s/ Frederick A. Costello