UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELIZABETH A. REIS, Plaintiff, | : | |
| vs. | : | Civil Action No. 07-236S |
| NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION, Defendant | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONAL PASSENGER RAILROAD CORPORATION'S EMERGENCY MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM**

## I. INTRODUCTION

Now comes the Defendant, National Passenger Railroad Corporation a/k/a National Railroad Passenger Corporation (hereinafter "Amtrak" or "Defendant") and hereby submits this Memorandum of Law in support of Defendant's Emergency Motion to Compel compliance with a subpoena duces tecum issued to Michael J. Farley Esq., former counsel for the Plaintiff, Elizabeth Reis. For the reasons set forth below, Defendant respectfully requests an Order compelling full and complete compliance with the subpoena issued to and served upon Attorney Farley.

At present, Defendant's Motion for Summary Judgment and Plaintiff's Objection thereto are pending before the Court and are scheduled for hearing on May 12, 2008. It was only on April 23, 2008, the date upon which Defendant received Plaintiff's Objection, that the issues addressed in this Emergency Motion to Compel arose. As Defendant's Motion for Summary Judgment contends that Plaintiff's claim is barred by the principle of judicial estoppel for failure to disclose this personal injury claim in a Chapter 7 Bankruptcy Petition, Plaintiff has now

submitted affidavits attempting to explain Plaintiff's failure to disclose the claim. While the affidavits submitted by Plaintiff do not, in any way, raise a genuine issue of material fact sufficient to defeat Defendant's Motion for Summary Judgment, Defendant respectfully submits that the affidavits do waive the attorney-client privilege with respect to various communications and documents and the testimony from Ms. Reis' prior counsel may provide additional factual grounds supporting Defendant's Motion.

Upon receipt of the Objection and affidavits, Defendant promptly served subpoenas upon Attorney Farley and Attorney Jacquard on April 29, 2008 and conferred with Plaintiff's counsel regarding potential resolution of the issues raised in this Motion on April 30, 2008. Further, on May 5, 2008, Defendant's counsel discussed the Farley subpoena with Attorney Paul Ryan, counsel for Attorney Farley. At that time, Attorney Farley informed counsel for the Defendant that he will be representing Attorney Farley and raising the attorney client privilege and the Fifth Amendment privilege on behalf of Ms. Reis in opposition to the subpoena.[1]

After concluding that the issues raised could not be resolved without Court intervention, Defendant filed this Motion and now seeks a Court Order compelling compliance with the subpoena as issued.

## II. FACTS AND BACKGROUND

In this matter, Plaintiff seeks to recover monetary damages for physical injuries she suffered as a result of a fall allegedly caused by Amtrak's negligence on June 23, 2004. Almost immediately following her fall, Plaintiff contacted Amtrak's Boston claims office to discuss Plaintiff's complaint and injury. Exhibit A at ¶ 11. Shortly thereafter, Plaintiff provided a recorded statement to Amtrak during her conversation with another Amtrak representative, Seth

[1] Defendant is unaware of the basis for the anticipated invocation of the Fifth Amendment privilege or the nature of any documents or testimony that would be protected by this privilege.

Starr. Id. at ¶ 12; Exhibit B. Plaintiff's former attorney, Michael J. Farley, Esq., contacted Amtrak via a December 1, 2004 letter to Mr. Starr in which he advised Amtrak that he represented "Elizabeth Reis with respect to an injury she sustained while on Amtrak on June 23, 2004." See Exhibit C. Attorney Farley's December 1, 2004 letter also requested that Amtrak forward to him any information regarding the incident, including a copy of Plaintiff's July 2, 2004 recorded statement. Id. Notably, this letter was sent well after Plaintiff's claim for workers' compensation benefits had been filed and after Plaintiff had begun to receive workers' compensation benefits. Exhibit A at ¶14.

Approximately four (4) months after Attorney Farley communicated with Amtrak via his December 1, 2004 letter, Plaintiff filed a voluntary Chapter 7 Bankruptcy Petition. See Exhibit D at ¶ 2; Exhibit A at ¶¶ 19-20. According to the affidavit of Attorney Jacquard, as well as the affidavit of Plaintiff, Attorney Jacquard represented Plaintiff with regard to the Bankruptcy Petition and assisted Plaintiff in completing the bankruptcy schedules. Id. at ¶ 2; Exhibit A at ¶¶ 19-22. Prior to filing the schedules, Attorney Jacquard questioned whether Plaintiff was involved in any lawsuits or possessed the ability to bring a claim against any party. Exhibit D at ¶ 4. Taking Attorney Jacquard's affidavit as true, Plaintiff told him she was injured at work and had filed a workers' compensation claim, which was then listed as personal property in the Bankruptcy Petition. Id. Plaintiff failed, however, to list the potential personal injury claim against Amtrak in any of the bankruptcy schedules despite the fact that Attorney Farley had written to Amtrak on her behalf nearly four (4) months earlier. Exhibit C; Exhibit D at ¶ 6.

Due in part to Plaintiff's failure to list the personal injury claim against Amtrak in the Bankruptcy Petition, Defendant filed a Motion for Summary Judgment arguing, in part, that

Plaintiff's personal injury claim is now barred by the principle of judicial estoppel.[2] In opposition, Plaintiff has filed two (2) affidavits attempting to support Plaintiff's position that this claim is not barred. One affidavit was executed by Plaintiff. The second affidavit was executed by Attorney Jacquard. Both affidavits are replete with statements that would otherwise be protected from disclosure by the attorney-client privilege.

Upon receipt of the Affidavits of Attorney Jacquard and Plaintiff, Defendant issued subpoena duces tecums to Attorney Jacquard and Attorney Farley requesting each to appear at depositions on May 6, 2008. Exhibits E and F. In addition to requesting each attorney to appear and testify at deposition, each subpoena requested the witness to produce certain documents at the respective depositions. At this time, and based upon representation made by Plaintiff's counsel during an April 30, 2008 telephone conversation, it is Defendant's understanding that Plaintiff's counsel will instruct Attorney Farley not to answer deposition questions based on the attorney-client privilege and it is also Defendant's understanding that Attorney Farley will be instructed to not produce the documents requested by the April 28, 2008 subpoena, which requested "any and all documents including, but not limited to, notes, memoranda, correspondence, reports, emails, audiotapes, videotapes, and materials reflecting communications with Elizabeth Reis or any co-counsel related to a claim, or potential claim, against Amtrak arising out of a June 23, 2004 incident." See Exhibit F.

Defendant now respectfully submits that the affidavits filed in opposition to Defendant's Motion for Summary Judgment waive the attorney client privilege between Attorney Farley and Plaintiff with regard to the subject matter that is Plaintiff's personal injury claim and cannot now

[2] In addition to arguing Plaintiff's claim is barred by the doctrine of judicial estoppel, Defendant also argues that it is entitled to summary judgment as Plaintiff cannot establish an element of each of her claims, primarily that Amtrak had notice of the allegedly defective condition causing Plaintiff's fall. The Motion relating to the bankruptcy issue and the notice issue has been bifurcated.

be used by Plaintiff to oppose and defeat the subpoena at issue.

## III. ARGUMENT

### A. Standard of law – Waiver of the attorney-client privilege

Attorney-client communications are protected from disclosure only if the privilege has not been implicitly or explicitly waived by the client. State v. Grayhurst, 852 A.2d 491, 512 (R.I. 2004). "[A] disclosure of, or even merely an assertion about, the communication may effect a waiver of privilege not only as to that communication but also as to other communications made during the same consultation and communications made at other times about the same subject." State v. von Bulow, 475 A.2d 995, 1007 (R.I. 1984). Further, "…if the client or his attorney at his instance takes the stand and testifies to privileged communications in part this is a waiver as to the remainder of the privileged consultation or consultations about the same subject." Id. at 1008 (citing International Telephone and Telegraph Corp. v. United Telephone Co. of Florida, 60 F.R.D. 177, 185 (M.D. Fla. 1973)). In instances in which a litigant takes a position that makes it unfair to protect attorney-client communications, "such as when a client testifies about portions of such communications or a client relies on an attorney's advice as an element of a claim or defense," the courts have held that the privilege has been waived by implication. United States v. Desir, 273 F.3d 39, 45 (citing 3 Weinstein's Federal Evidence 503.41 (Joseph M. McLaughlin, ed., 2d ed. 1997)).

### B. In this matter, the affidavits of Plaintiff and Attorney Jacquard waive the attorney-client privilege regarding the personal injury claim at issue in this litigation.

In opposing the subpoena served upon Attorney Farley, Plaintiff has chosen to selectively disclose portions of communications she views as helpful to her position without disclosing the

remainder. Like in State v. von Bulow, this case presents a "classic example of the impermissible selective use of privileged information." 475 A.2d at 1007.

At various points in her own affidavit, Plaintiff discusses communications and conversations she had with her present and prior counsel, her understanding of the communications, and the content of the communications. In her affidavit, Plaintiff states that, in May 2007, "Mr. Costello suggested that I may have a claim against Amtrak ..." Exhibit A at ¶ 24. Plaintiff further states that she did not list this claim in her prior bankruptcy petition because "at that point in time I did not believe I was making a claim against Amtrak and, in fact, had not made any claim against Amtrak at that time and I had no intention of pursuing a claim at that point, after discussions with Mr. Jacquard it was my belief that there was no claim to be made." Id. at ¶ 20. Plaintiff states she hired Attorney Jacquard to represent her in filing a Chapter 7 Bankruptcy Petition; she "filled out the forms at his instruction..."; and, "after discussions with Mr. Jacquard," it was Plaintiff's understanding "that there was no claim to be made." Exhibit A at ¶¶ 19-20.

Attorney Jacquard's affidavit further describes the attorney-client relationship between he and Plaintiff and provides additional facts regarding the decision not to list the personal injury claim in the bankruptcy schedules. Exhibit D. Specifically, Attorney Jacquard states that he "asked Ms. Reis if she is involved in any lawsuits, or if she possesses the ability to bring a claim or lawsuit against any party for any reason including personal injury claims." Id. at ¶ 4. The affidavit also states that "Ms. Reis told me she did receive an injury at work and had filed a Workers' Compensation claim." Id. at ¶ 5. Finally, the affidavit provides that Attorney Jacquard is "certain that Ms. Reis knew of no third party claim that she may have had and that nothing she said in response to my questions led me to believe otherwise." Id. at ¶ 6.

The statements contained in the affidavits cited above waive the attorney-client privilege as to the entire subject matter of this personal injury claim. By including the various statements in the affidavits, Plaintiff has waived the attorney client privilege with respect to the subject matter of this claim, no matter the attorney involved in the communications or consultations.

Plaintiff is selectively utilizing confidential communications with her present and past attorneys as a sword in an attempt to defeat Defendant's Motion for Summary Judgment yet is also seeking to use the attorney client privilege as a shield against disclosing the information requested by the subpoena. Such an attempt undermines the purpose of the attorney client privilege and must be rejected as it has been held that the attorney client privilege must not be used as an "offensive tool" in litigation. Desir, 273 F.3d at 45 (citing United States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir.1998) (implied waiver is to prevent defendant from "selectively assert[ing] the privilege to block the introduction of information harmful to his case after introducing other aspects" of attorney-client communications that are beneficial; "attorney client privilege cannot be used as both a shield and a sword"))); State v. Von Bulow, 475 A.2d at 1007 (citing Edmund J. Flynn Co., Inc. v. La Vay, 431 A.2d 543, 551 (D.C. 1981)).

It is well established that "communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure." Mortgage Guarantee & Title Co. v. Cunha, 745 A.2d 156, 158-159 (2000) (citing Callahan v. Nystedt, 641 A.2d 58, 61 (R.I. 1994) (quoting State v. von Bulow, 475 A.2d at 1004))). "As a part of that general rule, attorney-client communications are protected only if the privilege has not been explicitly or implicitly waived by the client." Id. (citing Rosati v. Kuzman, 660 A.2d 263, 265 (R.I. 1995) (citing von Bulow, 475 A.2d at 1004)).

"The principle that the attorney-client privilege is implicitly waived when a party puts an attorney-client communication at issue in a case is well accepted in American jurisprudence." Mortgage Guarantee & Title Co., 745 A.2d at 159 (citing Aranson v. Schroeder, 140 N.H. 359, 671 A.2d 1023, 1030 (1995); Mountain States Tel. & Tel. v. DiFede, 780 P.2d 533 (Colo. 1989)). It has been said that "waivers come in various sizes and shapes" and "it is well accepted that waivers by implication can sometimes extend beyond the matter actually revealed." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22-24 (1st Cir. 2003) (citing In re Grand Jury Proceedings, 219 F.3d 175,182-83 (2nd Cir. 2000)); Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir.1982). Such waivers are almost invariably premised on fairness concerns. See In re Claus von Bulow, 828 F.2d 94, 101-03 (2nd Cir. 1987). Weinstein on Evidence explains, "[t]he courts have identified a common denominator in waiver by implication: in each case, the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information" would have been unfair to the opposing party. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.41[1] (Joseph M. McLaughlin ed. 1997) (collecting cases). See also Sedco, 683 F.2d at 1206 (noting that courts have found waiver by implication when a client (i) testifies concerning portions of an attorney-client communication, (ii) places the attorney-client relationship itself at issue, or (iii) asserts reliance on an attorney's advice as an element of a claim or defense).

In United States v. Aronoff, the United States District Court for the Southern District of New York discussed "waivers by implication" as follows:

> "[W]hen [the client's] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final. 8

> Wigmore, supra § 2327, at 636. See also McCormick on Evidence § 93, at 194 (2d ed. 1972)." Id.

466 F. Supp. 855, 862 (D.C.N.Y. 1979).

In In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), the First Circuit noted that "virtually every reported instance of an implied waiver extending to an entire subject matter involves a judicial disclosure, that is, a disclosure made in the course of a judicial proceeding." 348 F.3d at 24. The Court stated, "This uniformity is not mere happenstance; it exists because such a limitation makes eminently good sense." Id. (citing von Bulow, 828 F.2d at 103).

In this case, Plaintiff placed her otherwise confidential communications with her counsel directly at issue by submitting the affidavits to the Court during the course of a judicial proceeding. The sole purpose of submitting the affidavits and citing the confidential communications was to avoid the entry of summary judgment in Defendant's favor. Thus, Plaintiff is attempting to benefit from the disclosure of these communications but is now arguing that the attorney-client privilege has not been waived. Plaintiff cannot selectively use the confidential communications in this manner, however. Through the submission of the affidavits, Plaintiff *chose* to testify regarding privileged communications, and this choice, in accordance with the case law, serves as a waiver of the attorney-client privilege as to items regarding the same subject matter – i.e. the personal injury action.

Specifically, Plaintiff has waived the privilege with regard to all communications with all attorneys regarding the personal injury action that is the subject of this suit, the scope and content of all communications whether oral or written, and the content of any document, report, correspondence, or memorandum discussing, reflecting or touching upon this claim and the incident leading to this claim. von Bulow, 475 A.2d at 1007-1008.

The communications described in the affidavits of Plaintiff and Attorney Jacquard directly include attorney-client communications for which there is no longer a privilege. The statements made in the affidavits are a blatant attempt to assist Plaintiff in escaping the bar imposed by the principle of judicial estoppel. As Plaintiff has now injected these communications into the case and attempted to defeat Defendant's Motion for Summary Judgment with the affidavits forming a central portion of Plaintiff's defense, it must follow that Defendant is entitled to inquire further into these communications to ascertain exactly why the personal injury claim was not listed in the bankruptcy proceedings. An examination of these issues is critical to Defendant's arguments at the summary judgment stage in light of the points raised in the Motion.

Permitting Defendant to depose Attorney Farley and requiring disclosure of the documents requested by the subpoena is consistent with the case law of this jurisdiction as well as other jurisdictions and principles of fundamental fairness. Defendant's Motion for Summary Judgment directly focuses on Plaintiff's failure to raise this claim in the bankruptcy proceedings. Plaintiff's choice to utilize attorney-client communications to defeat the Motion establishes that the information contained in the communications is "required for the truthful resolution of the issues raised in the controversy." Mortgage Guarantee & Title Co., 745 A.2d at 160. Without a full inquiry into the communications cited by Plaintiff as well as all other communications concerning the same subject matter – i.e. the personal injury claim against Amtrak, Defendant will be unable to respond to the affidavits and averments contained therein. Such a result contradicts the precedent cited herein and undermines all notions of fairness.

In accordance with State v. von Bulow, the waiver not only extends to oral communications referenced in the affidavits but extends to all communications regarding the

personal injury claim including written communications, correspondence, reports, memoranda, and other documents touching upon, reflecting or memorializing communications regarding the claim. See State v. von Bulow, 475 A.2d at 1008 (recognizing waiver of privilege to the extent documents reflect confidential communications between attorney and client when related to the same subject matter).

## IV. CONCLUSION

For the reasons stated herein, Defendant, National Passenger Railroad Corporation a/k/a National Railroad Passenger Corporation, respectfully requests that its Emergency Motion be granted.

NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION,

By Its Attorneys,

/s/ Paul E. Dwyer, Jr.

Paul E. Dwyer, Jr. (#3956)
Andrew J. Murray (#5071)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903-2499
(401) 274-9200 (tel.)
(401) 276-6611 (fax)

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 5, 2008 a copy of the foregoing Memorandum of Law in the above-captioned case has been served by ECF to the following attorney(s).

Frederick A. Costello, Esquire
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886
fac15@aol.com

/s/ Paul E. Dwyer, Jr.

The undersigned hereby certifies that on this 5th day of May 2008, I have sent, via first-class mail and facsimile, a true and accurate copy of within Memorandum of Law to the following counsel of record:

Paul Ryan, Esq.
670 Willett Avenue
East Providence, RI 02915
P-(401) 437-0660
F-(401) 433-1605

/s/ Paul E. Dwyer, Jr.