UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ELIZABETH REIS**

**VS CIVIL ACTION NO. 07-236S**

**NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER OBJECTION TO DEFENDANT'S EMERGENCY MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM**

## I. INTRODUCTION

Defendant has previously filed a Motion for Summary Judgment requesting that Plaintiff's case be dismissed because Plaintiff in her bankruptcy schedules failed to list a potential claim against National Passenger Railroad Corporation (Amtrak) when she filed for Chapter 7 bankruptcy in April of 2005. At the time she filed for bankruptcy in April of 2005, Thomas Jacquard, Esquire, who specializes in bankruptcy, represented Plaintiff. According to his deposition, (a copy of the transcript has not yet been received), he indicates approximately 90% of his practice is related to bankruptcy and at the time he represented Plaintiff in April of 2005, it represented between 40 and 50% of his practice.

In her response to Defendant's Motion for Summary Judgment, Plaintiff submitted an Affidavit of Mr. Jacquard, which among other things indicated that he assisted Ms. Reis in preparing her bankruptcy schedules. He asked her if she was involved in any lawsuits or if she possessed the ability to bring claims for a lawsuit against any party for any reason. See paragraph 4 of Plaintiff's Exhibit 4.

In addition, Attorney Jacquard indicated that Ms. Reis told him that she received an injury at work and filed a workers' compensation claim. That claim was, in fact, listed on Schedule B of her petition, which identified her personal property. In paragraph 6 of his Affidavit, Attorney Jacquard states it was his practice when interviewing a client that he would inquire and ask specific questions to determine if a third party was responsible if a person listed a workers' compensation claim. If he felt there was any chance there would be a potential lawsuit, he would list it in the schedule. See paragraph 6 of Plaintiff's Exhibit 4.

As a result of this Affidavit, Attorney Jacquard's deposition was noticed and he reiterated the testimony elicited in his Affidavit. In addition, his entire bankruptcy file was subpoenaed. He produced his file and notes, which indicate that in addition to telling Attorney Jacquard she was injured at work, that the injury occurred on an Amtrak train in June of 2004 where she broke her foot in three places, injured her knees, caused a fibromyalgia flare and that her attorney for that injury was Michael Farley. She also identified her employer, the Providence Warwick Visitors Convention Bureau, and that she earned approximately $49,000.00 a year. See notes of Attorney Jacquard's Reis file, Plaintiff's Exhibit 5. His notes included other information but this was the most pertinent.

It is apparent that Ms. Reis did not hold anything back when she discussed the accident with her bankruptcy attorney and he did not withhold anything when he testified at his deposition. At no time during the deposition of Mr. Jacquard did Plaintiff interject an objection based on attorney/client privilege, nor did Plaintiff prevent Defendant's attorney from cross-examining Attorney Jacquard in every area of the bankruptcy

petition. In fact, it is clear that the notes he took when he interviewed Ms. Reis support everything he indicated in his Affidavit.

In addition to the Affidavit submitted by Plaintiff from Attorney Jacquard, she also submitted her own Affidavit, which this Court has in its possession, and a taped statement taken by an employee of Amtrak, approximately one week after her injury. See Plaintiff's Exhibits 1 and 2 submitted with Plaintiff's Objection to Defendant's Motion for Summary Judgment.

In Ms. Reis' Affidavit, which contains twenty-eight paragraphs, not one word is mentioned about conversations between herself and her workers' compensation attorney, Michael Farley. The only words in the Affidavit that mention Attorney Farley are contained in paragraphs 14, 15 and 16. In paragraph 14 Ms. Reis indicates that Michael Farley contacted Amtrak on or about December 1, 2004 and requested a copy of the taped statement that Mr. Starr had taken on July 2, 2004 as a representative of Amtrak.

In paragraph 15 of her Affidavit she states that to her knowledge Attorney Farley never made a claim for any monetary sum from Amtrak nor did he send any notice to Amtrak identifying a claim.

Paragraph 16 indicates that the letter of December 1, 2004 was the only contact that she was aware of that Attorney Farley had with Amtrak.

Ms. Reis also revealed in her Affidavit that to her knowledge her current attorney, Frederick A. Costello, never contacted Amtrak to make any claim prior to filing suit in June of 2007.

Based on the three paragraphs where Plaintiff mentioned what Attorney Farley did on her behalf, which would not have been protected by the attorney/client privilege

since it was correspondence with Amtrak, Defendant now claims that she waived her attorney/client privilege with Mr. Farley. Despite this minimal representation, which obviously was necessary to confront the Motion for Summary Judgment, the Defendant uses this as an opening to bootstrap a request to subpoena Attorney Farley's complete record and take his deposition arguing that Plaintiff has waived the attorney/client privilege because she acknowledged in her Affidavit what the Defendant already knew.

## II. Standard of Review

The attorney/client privilege is among the oldest common law privileges dating back to the sixteenth century. It exists for the purpose of encouraging full and truthful communication between an attorney and his client and recognizes that sound legal advice or advocacy services a client's public ends and that such advice or advocacy depends on the lawyer being fully informed by the client. The maintenance of the attorney/client privilege up to its proper limits has substantial importance to the administration of justice. In re: VonBulow 828 F.2d 94, 99 (1st Cir. 1987).

Attorney/client privilege may be waived only when there has been a disclosure of a confidential communication to a third party. United States v Aronoff 466 F.2d 855, 861, 862 (S.D. NY 1979).

Elements that must be established to invoke attorney client privilege are as follows:

1. The asserter/holder of the privilege is or sought to become a client;

2. The person to whom the communication was made (a) is a member of a bar of a court or a subordinate and is acting as a lawyer;

3. The communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing either an opinion of law or legal services or assistance in some legal proceeding and not for the purpose of committing a crime or tort;

4. The privilege has been claimed and not waived by the client.

United States v Kelly 69 F.2d 928, 938 (5th Cir.)

The so-called waiver by implication is based on considerations of fairness that usually entails the client testifying as to privileged communications in part and then selectively withholding the other communications. State v VonBulow 475 A.2d 995, 1008 (RI 1984).

Subject matter waiver of attorney/client privilege also rests on the fairness considerations at work in the context of litigation. In re: VonBulow 828 F.2d 94, 102 (1st Cir. 1987).

Deliberate disclosure by a client of privileged communications did not waive attorney/client privilege where the client did not put at issue in any way the substance of her communications with her attorney and the partial disclosure was not misleading. In re: VonBulow 828 F.2d 94, 102.

A waiver of privilege of one attorney which is related to subject matter disclosed does not result in a sweeping subject matter waiver that would extend to other attorneys. In re: Von Bulow 828 F.2d 94, 103.

**III Argument**

Defendant argues that because Plaintiff allowed her bankruptcy attorney to testify as to what she told him while preparing her bankruptcy petition, she therefore has waived

any other privilege concerning her workers' compensation attorney, Michael Farley, under the so-called subject matter waiver. This assertion by the Defendant is simply not justified or warranted by the facts of this case or the law.

The Defendant has made a claim and asked for summary judgment based on alleged misstatements made to the Bankruptcy Court by Plaintiff that are so egregious that they warrant the imposition of the doctrine of judicial estoppel. See Defendant's original brief in support of its Motion for Summary Judgment. To oppose this Motion for Summary Judgment, Plaintiff allowed her bankruptcy attorney to explain exactly what took place during her interview with him, what his questions were to her during the interview, and what notes he took from her during the interview. In fact, Ms. Reis waived every objection based on attorney/client privilege to the deposition of her bankruptcy attorney and the submission by her attorney of an Affidavit and his complete file. This Court can hardly find that this was a "selective" waiver on the part of the Plaintiff. She completely opened the book on any statement she made to the person who prepared the bankruptcy schedules that are the basis for Defendant's original Motion. Nor was this waiver an unfair self-interested disclosure on Plaintiff's part.

Any claim that this waiver of privilege should trigger a further implied waiver of privilege with her attorney for an entirely different purpose, her workers' compensation claim, is completely unwarranted. In re: VonBulow 828 F.2d 94, 104.

As stated in Plaintiff's Introduction, the Affidavit submitted by Ms. Reis reveals absolutely no confidential communications between herself and Michael Farley. She in no way selectively reveals any information between herself and Michael Farley. At best, Ms. Reis reiterates what the Defendant has already argued in his original Motion for

Summary Judgment – that Michael Farley wrote a letter to Amtrak on December 1, 2004 asking for a copy of a taped statement taken from Ms. Reis and any incident reports that might have been prepared at the time she fell. See Plaintiff's Exhibit 1, Affidavit, paragraph 14. This information never was privileged, as it could not be since it was between Mr. Farley and Amtrak. Therefore, to argue that waiver by implication or subject matter is triggered because Plaintiff identified this event in her Affidavit is pure rubbish.

It is interesting to note that the Advisory Committee on Evidence Rules has dealt with this issue in its report dated May 15, 2006. The Committee indicated in its report at that time: (1) that subject matter waiver should be found only when privilege or work product has already been disclosed and further disclosure "ought in fairness" be required in order to protect against a misrepresentation that might arise from the previous disclosure; (2) an inadvertent disclosure should not constitute a waiver if the holder of the privilege or work product protection took reasonable precautions to prevent disclosure and took reasonable prompt measures once the holder knew or should have known of the disclosure to rectify the error; (3) a provision on selective waiver should be included in any proposed rule released for public comment but should be placed in brackets to indicate that the Committee has not yet determined whether a provision on selective waiver should be sent to Congress; (4) parties to litigation should be able to protect against the consequences of a waiver by seeking a confidentiality order from the Court and in order to give the parties reliable protection, that confidentiality order must bind non-parties in any federal or state court; (5) parties should be able to contract around a common law waiver rule by entering into a confidentially agreement but in the absence of a court order these agreements cannot bind non-parties. The Committee went on to

indicate that the Evidence Rules Committee unanimously approved a proposed Rule 502 and the notes to that proposal indicate that the Rule seeks to provide a predictable uniform set of standards under which the parties can determine the consequences of a disclosure of communications or information covered by the attorney/client privilege or work product protection. See Report of the Advisory Committee Evidence Rules, May 15, 2006, page 3, Plaintiff's Exhibit 6.

It is interesting in Subdivision A of the notes that the Rule provides that a voluntary disclosure generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those **unusual situations which fairness requires a further disclosure of related protected information in order to protect against a selective and misleading presentation of evidence to the disadvantage to the adversary**. Quoting in re: VonBulow 828 F.2d 94 (2nd Cir. 1987). See Report of Advisory Committee on Evidence rules, page 10, Plaintiff's Exhibit 6.

Nowhere in Defendant's brief does he cite a case where Plaintiff waived the privilege in one area concerning a bankruptcy petition and disclosed no confidential communications in reference to a workers' compensation claim with a different attorney that the initial waiver of the privilege concerning the bankruptcy attorney translates into a waiver of her conversations and correspondence and communication with her workers' compensation attorney. If we accept the principle propounded by Defendant, when does it stop? Should Defendant be allowed access to Ms. Reis' divorce attorney? Her attorney in a real estate transaction?

Defendant is the party who brought up this whole issue of the bankruptcy generated judicial estoppel. Plaintiff met that argument with the Affidavit, testimony and file of her bankruptcy attorney. She withheld not one scintilla of communication between herself and her bankruptcy attorney. She did not rely on the Affidavit and then object to his deposition or ask that communications with this Attorney or the Attorney's file be restricted. The Defendant has had complete access to everything that Plaintiff had in reference to her bankruptcy Attorney. To allow the Defendant to bootstrap that waiver to an entirely different counsel for an entirely different purpose defeats the whole concept of the attorney/client privilege. It has nothing to do with fundamental fairness. Defendant's attorney writes nothing in his brief that indicates that Plaintiff selectively revealed information concerning her conversations with Michael Farley. What did she say or do in reference to Michael Farley in her Affidavit or any other documents submitted to this Court that was so prejudicial or unfair that would trigger the waiver of her attorney/client privilege pursuant to United States v Aronoff, 466 F. Supp 855, 856? In U.S. v Aronoff, the Court found that Aronoff's attorney never disclosed any privileged communications and therefore nothing was waived. That anything revealed by Aronoff during the course of the government's investigation was narrowly limited and would not by itself permit a so-called subject matter waiver. Aronoff 466 F.Supp. 855, 856.

The Court appears to be saying in Aronoff that when a client discloses as much as he pleases in reference to his communications with his attorney and then arbitrarily decides to withhold the remainder, after a certain point his election to disclose must remain final. That threshold is never met and cannot be met by the Defendant in reference to Mr. Farley. Plaintiff disclosed nothing concerning her conversations and

communications with Farley. Therefore, to say that she made some assertion to the Court about her conversations with Farley that effectively waived her privilege with Farley is simply unsupportable by the facts. Nothing in Plaintiff's Affidavit can be construed to mislead an adversary; i.e. Amtrak, in reference to her comments in the paragraphs that related to Michael Farley. The Defendant already knew the substance of those comments from his own investigation.

Where a party attacking a privilege has not been prejudiced and where there are no other grounds for a finding of waiver, there was no reason to find a waiver by implication. U.S v Aronoff, 466 F.Supp. 855, 862. In this case, the Court indicated that Aronoff's assertions about privileged communications failed to even serve their intended purpose and "consequently their legal effect is to let a whisker out of the bag but not the whole cat". Id. 862. That case only goes further to prove that subject matter waivers or waivers by implication are not lightly given and in this case should not be given at all.

In a Rhode Island case decided by the First Circuit, U.S. v Desir, 273 F.3d 39 (1st Cir. 2001) the Court warned against applying the doctrine of "implied waiver" cavalierly. The Court stated: "waiver doctrine has only a few hard-edged rules: as to many permutations, it is a fluid body of precedent reflecting a variety of concerns, including an insistence on real confidentiality and limitations based on fairness. Even in those Circuits which have greater opportunities to discuss the contours of the implied waiver theory, the analysis is fact intensive and based on a less than definitive standard of fairness . . . stating that whether fairness requires a waiver of privilege is determined on a case by case basis, focusing on the specific context in which the privilege is asserted. Because implied waiver requires a careful weighing of facts and should not be applied cavalierly,

we decline to address the specific contours of appellant's privilege claim, particularly since a determination on privilege is unnecessary to affirm the district court's denial of the new trial motion." U.S. v Desir, 273 F.3d 39 at p. 44.

We believe that this Court should adhere to the admonition of Judge Selya in U.S. v Desir and refrain from imposing either implied or subject matter waiver in reference to Plaintiff's confidential representations to Attorney Farley.

For these reasons, Plaintiff requests that Defendant's Motion to Compel the testimony of Michael Farley and review his file be denied and Plaintiff's Request for a Protective Order be granted.

Plaintiff,
By her attorney,

/s/ Frederick A. Costello
Frederick A. Costello #2205
FLAHERTY, BUTTERFIELD & COSTELLO
33 College Hill Road Suite 20D
Warwick, RI 02886
Tel. 401-822-1800 x 6, Fax. 401-822-1879

**CERTIFICATION**

I hereby certify that on the _______ day of __________, 2008 I sent a true copy of the foregoing Memorandum in the above captioned case has been served by ECF to the following: Paul E. Dwyer:

/s/ Frederick A. Costello