UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELIZABETH A. REIS,<br>Plaintiff,<br><br>v.<br><br>NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CA 07-236 S |

**MEMORANDUM AND ORDER**
**GRANTING MOTION TO COMPEL**

Before the Court is Defendant, National Passenger Railroad Corporation's Emergency Motion to Compel Compliance with a Subpoena Duces Tecum (Document ("Doc.") #30) ("Motion to Compel" or "Motion"). By the Motion, Defendant National Passenger Railroad Corporation ("Defendant") seeks to compel Attorney Michael J. Farley ("Attorney Farley"), who represented Plaintiff Elizabeth A. Reis ("Plaintiff") in a workers' compensation claim, to comply with a subpoena duces tecum served upon him. The subpoena seeks both deposition testimony and documents from Attorney Farley regarding communications with Plaintiff "relating to a claim, or potential claim, against Amtrak arising out of a June 23, 2004[,] incident involving Elizabeth Reis ...." Memorandum of Law in Support of Defendant National Passenger Railroad Corporation's Emergency Motion to Compel Compliance with Subpoena Duces Tecum (Doc. #33) ("Defendant's Mem."), Exhibit ("Ex.") F (Subpoena).

**Facts and Travel**

Plaintiff was injured on June 23, 2004, after falling while on board an Amtrak Acela train that had stopped in Providence en route to New York. See Affidavit of Elizabeth Reis in Opposition

to Defendant's Motion for Summary Judgment ("Plaintiff's Aff.")[1] ¶¶ 2-4. Several days later Plaintiff was contacted by an Amtrak representative, and she gave him a recorded statement concerning the incident. See id. ¶ 12. Although Plaintiff voiced displeasure with how she had been treated by Amtrak personnel after falling, Plaintiff told the representative that she "intended to proceed through my employer's workers' compensation carrier, Beacon Mutual Insurance Company." Id.

On or about December 1, 2004, Attorney Farley, who was representing Plaintiff in her workers' compensation claim, sent a letter to Amtrak. See Defendant's Mem., Ex. C (Letter from Farley to Amtrak of 12/1/04); Plaintiff's Aff. ¶ 14. In the letter, Attorney Farley stated that he "represent[ed] Elizabeth Reis with respect to an injury she sustained while on Amtrak on June 23, 2004." Id. He requested any information which Amtrak had regarding the matter, including a copy of the recorded statement which Plaintiff had given "on July 2, 2004." Id.

In April of 2005, Plaintiff filed a Chapter 7 Bankruptcy Petition. See Affidavit of Attorney Robert B. Jacquard ("Jacquard Aff.")[2] ¶ 2. She was represented in the bankruptcy proceeding by Attorney Robert B. Jacquard ("Attorney Jacquard"). See id.

Also in April, Plaintiff was "removed from workers' compensation," Plaintiff's Aff. ¶ 22, and in November 2005 she hired new counsel, Attorney Frederick Costello ("Attorney Costello"), "to attempt to get ... back on workers' compensation because of the ongoing problems with my foot, shoulder and

---

[1] A copy of Plaintiff's Aff. is attached as Exhibit A to the Memorandum of Law in Support of Defendant National Passenger Railroad Corporation's Emergency Motion to Compel Compliance with Subpoena Duces Tecum (Doc. #33) ("Defendant's Mem.").

[2] A copy of the Jacquard Aff. is attached as Exhibit D to Defendant's Mem.

especially my fibromyalgia symptoms." Id. Although her workers' compensation benefits were restored in February 2006, the matter continued to be litigated through May of 2007. See id.

In May of 2007 Attorney Costello suggested to Plaintiff that she may have a claim against Amtrak. See id. ¶¶ 23-24. Shortly before the expiration of the statute of limitations, Plaintiff filed suit against Defendant in the state superior court. The action was subsequently removed by Defendant to this Court. See Notice of Removal (Doc. #1).

On February 5, 2008, Defendant filed a motion for summary judgment. See Defendant National Passenger Railroad Corporation's Motion for Summary Judgment (Doc. #10) ("Motion for Summary Judgment"). One of the grounds advanced for summary judgment is that Plaintiff failed to disclose the existence of her claim against Defendant when she filed her bankruptcy petition and that, therefore, she should be judicially estoppel from asserting that claim in the present action. See Memorandum of Law in Support of Defendant National Passenger Railroad Corporation's Motion for Summary Judgment ("Defendant's S.J. Mem.") at 2-7. Plaintiff filed an objection to the Motion for Summary Judgment on April 22, 2008. See Plaintiff's Objection to Defendant's Motion for Summary Judgment (Doc. #19) ("Objection to Summary Judgment"). In support of her objection, Plaintiff filed an affidavit from herself and one from Attorney Jacquard. See Defendant's Mem., Exs. A, D.

After receiving Plaintiff's Objection to Summary Judgment and the affidavits, Defendant served subpoenas on Attorney Farley and Attorney Jacquard on April 29, 2008, seeking documents and deposition testimony from each of them. See Defendant's Mem. at 2, 4. Attorney Jacquard submitted to being deposed by Defendant's counsel and produced documents in response to the subpoena. See Plaintiff's Memorandum in Support of Her Objection

to Defendant's Emergency Motion to Compel Compliance with Subpoena Duces Tecum ("Plaintiff's Mem.") at 2. However, Attorney Paul Ryan, who represents Attorney Farley, notified Defendant's counsel that Attorney Farley would be "raising the attorney client privilege and the Fifth Amendment privilege on behalf of Ms. Reis in opposition to the subpoena.[3]" Defendant's Mem. at 2.

Defendant filed the instant Motion to Compel on May 5, 2008. The Court conducted a telephone conference with counsel on May 7, 2008, and scheduled a hearing on the Motion for May 21. See Notice and Order Following May 7, 2008, Telephone Conference (Doc. #34). On May 16, 2008, Plaintiff filed an objection to the Motion and moved for a protective order. See Plaintiff's Objection to Defendant's Emergency Motion to Compel Compliance with Subpoena Duces Tecum (Doc. #41) ("Objection to Motion to Compel"); Plaintiff's Motion for Protective Order (Doc. #39). On the same date, Attorney Farley filed a Motion to Quash (Doc. #37) the subpoena. A hearing was conducted on May 21, 2008, and, thereafter, the Court took the matter under advisement.

**Law**

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)(alteration in original)(italics omitted); see also State v. Grayhurst, 852 A.2d 491, 512 (R.I. 2004)("It is well established that 'communications by a client to his attorney for the purpose of seeking professional advice, as well as the

[3] Defendant states that it is unaware of the basis for Attorney Farley's "anticipated invocation of the Fifth Amendment privilege or the nature of any documents or testimony that would be protected by this privilege." Defendant's Mem. at 2 n.1.

responses made by the attorney to such inquires, are privileged communications not subject to disclosure.'")(quoting Mortgage Guarantee & Title Co. v. Cunha, 745 A.2d 156, 158-59 (R.I. 2000) (quoting Callahan v. Nystedt, 641 A.2d 58, 61 (R.I. 1994))). "The attorney-client privilege is well established ...." In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corporation), 348 F.3d 16, 22 (1st Cir. 2003); see also United States v. Bauer, 132 F.3d at 510 ("[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential the just and orderly operation of our legal system.").

The privilege belongs solely to the client and may only be waived by him or her. In re Von Bulow, 828 F.2d 94, 100 (2nd Cir. 1987). An attorney may not waive the privilege without the client's consent. Id.

"A client may waive the protection of the attorney-client privilege either expressly or by implication." Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982); see also In re Von Bulow, 828 F.2d at 101 ("A client may ... by his actions impliedly waive the privilege or consent to disclosure."). Moreover, "[i]t is well accepted that waivers by implication can sometimes extend beyond the matter actually revealed." In re Keeper of the Records, 348 F.3d at 23-24; see also United States v. Aronoff, 466 F.Supp. 855, 862 (S.D.N.Y. 1979)("[A] disclosure of, or even merely an assertion about, the communication may effect a waiver of privilege not only as to that communication, but also as to other communications made during the same consultation and communications made at other times about the same subject.").

This principle of "waiver by implication" is based on considerations of fairness:

> [W]hen [the client's] conduct touches a certain point of

> disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final.

United States v. Aronoff, 466 F.Supp. at 862 (quoting 8 Wigmore, Evidence § 2327, at 636)(alterations in original); see also United States v. Desir, 273 F.3d 39, 45 (1st Cir. 2001) (explaining that "implied waiver is to prevent defendant from 'selectively assert[ing] the privilege to block the introduction of information harmful to his case after introducing other aspects' of attorney-client communications that are beneficial; 'attorney-client privilege cannot be used both as a shield and a sword'")(quoting United States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir. 1998))(alteration in original).

In discussing the principle of waiver by implication, the First Circuit has quoted the following passage from Weinstein's Federal Evidence:

> "[T]he courts have identified a common denominator in waiver by implication: in each case, the party asserting privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information" would have been unfair to that opposing party.

In re Keeper of the Records, 348 F.3d at 24 (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 504.41[1] (Joseph M. McLaughlin ed. 1977)).

Most of the cases that have found implied waivers involve assertions by a client that made his or her confidential communications a material issue in a judicial proceeding and circumstances in which it would be patently unfair to uphold a claim privilege. United States v. Aronoff, 466 F.Supp. at 862. Thus, where such assertions have been offered on a material issue

in a judicial proceeding, the client's privilege should be revoked at least with respect to any communications whose disclosure might affect the factfinder's judgment as to that issue. Id.

The First Circuit has noted that "[v]irtually every reported instance of an implied waiver extending to an entire subject matter involves a judicial disclosure, that is, a disclosure made in the course of a judicial procedure." In re Keeper of the Records, 348 F.3d at 24. In such situations, the likelihood of prejudice looms. Id. "[O]nce a litigant chooses to put privileged communications at issue, only the revelation of all related exchanges will allow the truth-seeking process to function unimpeded." Id.

"Claims of implied waiver must be evaluated in light of principles of logic and fairness. That evaluation demands a fastidious sifting of the facts and a careful weighing of the circumstances." Id. at 23 (internal citation omitted); see also United States v. Desir, 273 F.3d at 45 ("implied waiver requires a careful weighing of facts and should not be applied cavalierly")(internal quotation marks omitted); In Re Keeper of the Records, 348 F.3d at 23 ("[C]ourts should be cautious about finding implied waivers."); United States v. Aronoff, 466 F.Supp. at 862 ("The principle of waiver by implication as a qualification on the attorney/client privilege should not be applied without reference both to the objectives of the privilege and the qualification.")(internal quotation marks omitted).

Lastly, "the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." In Re Keeper of the Records, 348 F.3d at 22. Thus, Plaintiff carries the burden of persuasion.

## Discussion

In her affidavit, Plaintiff states that she filled out forms related to her bankruptcy petition at Attorney Jacquard's instruction and that she listed the workers' compensation claim resulting from her June 23, 2004, injury. See Plaintiff's Aff. ¶ 20. Plaintiff additionally states that she:

> did not list a claim against Amtrak because at that point in time I did not believe I was making a claim against Amtrak and, in fact, had not made any claim against Amtrak at that time and I had no intention of pursuing a claim at that point, after discussions with Mr. Jacquard it was my belief that there was no claim to be made.

Plaintiff's Aff. ¶ 20.

The affidavit from Attorney Jacquard states in part:

> I am certain that I asked Ms. Reis specific questions to determine if there was any third party responsible for her injuries. I am certain that Ms. Reis knew of no third party claim that she may have had, and that nothing she said in response to my questions led me to believe otherwise.

Jacquard Aff. ¶ 6.

The Court finds that by filing these affidavits Plaintiff has disclosed confidential communications between herself and Attorney Jacquard and that by doing so she has waived the attorney-client privilege relative to those communications. See United States v. Aronoff, 466 F.Supp. at 862 ("A client's disclosure to a third party of a communication made during a confidential consultation with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege.")(internal quotation marks omitted); see also In re Keeper of the Records, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure

destroys the confidentiality upon which the privilege is premised.”).

The next question is whether the waiver not only exists as to Plaintiff's communications with Attorney Jacquard but also extends to her earlier communications with Attorney Farley. See State v. Von Bulow, 475 A.2d 995, 1007 (R.I. 1984)("[A] disclosure of, or even merely an assertion about, the communication may effect a waiver of privilege not only as to that communication, but also as to other communications made during the same consultation and communications made at other times about the same subject.")(quoting United States v. Aronoff, 466 F.Supp. at 862)(alteration in original). In other words, has Plaintiff by this disclosure impliedly waived the attorney client privilege as to her communications with Attorney Farley regarding her June 23, 2004, injury?

In answering this question, the Court notes initially that Plaintiff's disclosure has been made in the course of a judicial proceeding, namely the instant lawsuit, and that virtually every reported instance of an implied waiver extending to an entire subject matter has involved a judicial disclosure, see In re Keeper of the Records, 348 F.3d at 24. While the presence of this circumstance does not compel a finding of implied waiver, its existence is almost a prerequisite for such a finding. See id. at 25 n.6 (noting that cases where extrajudicial disclosures work as an implied waiver “of anything beyond that which was actually disclosed ... will be rare, and the scope of any ensuring waiver will be narrow”).

Plaintiff's disclosure has also occurred under circumstances which leave no doubt that the disclosure was deliberate and intentional. She has filed sworn affidavits. Thus, the Court is not presented with the situation where a party or witness while testifying has, perhaps, inadvertently disclosed a privileged

communication. Here it is clear that Plaintiff has made the disclosure to bolster her arguments in opposition to Defendant's Motion for Summary Judgment.

Turning to the facts, Plaintiff has submitted the affidavits to support her contention that she did not include the claim against Amtrak on the bankruptcy forms because she was unaware that she had such a claim. Indeed, Attorney Jacquard affirms that he is certain that Plaintiff "knew of no third party claim that she may have had, and that nothing she said in response to my questions led me to believe otherwise." Jacquard Aff. ¶ 6; cf. In re Keeper of the Records, 348 F.3d at 26 ("[O]nce a litigant puts the legal advice given to him at issue, the opposing party should be entitled to all the information on that same subject regardless of when it was compiled.")

Plaintiff previously conferred with Attorney Farley regarding her injury. He represented Plaintiff in her workers' compensation claim, and in December of 2004 he sent Amtrak a letter stating that he represented Plaintiff in connection with the injury she sustained while on Amtrak. While it is true that the letter does not state that Attorney Farley is representing Plaintiff with respect to a claim against Amtrak, this is not determinative of the issue of whether there has been an implied waiver. The letter indicates that Attorney Farley was aware of Defendant's connection to Plaintiff's injury, and this awareness makes Plaintiff's communications with him relevant to the issue of whether or not she had knowledge of a potential claim against Defendant.

In short, the issue is one of fairness. Plaintiff (through the affidavits) has made assertions about privileged communications for the purpose of supporting her claim that she did not have knowledge of the claim against Defendant at the time she filed her bankruptcy petition. She now seeks to bar evidence

of other communications regarding the June 23, 2004, incident which bear directly on her knowledge or lack of knowledge regarding the existence of a claim against Defendant. The "attorney client privilege cannot be used as both a shield and a sword." United States v. Desir, 273 F.3d at 45; see also State v. Von Bulow, 475 A.2d at 1007 ("the attorney-client privilege properly serves as a shield and not as an offensive tool of litigation"); id. ("A party may not, therefore, insist upon protection of the privilege for damaging communications while disclosing those which it considers to be favorable to its position."). Plaintiff has thrust a partial disclosure into this litigation regarding a material issue. It would be unfair to permit her "to block the introduction of information harmful to h[er] case after introducing other aspects of attorney-client communications that are beneficial ...." United States v. Desir, 273 F.3d at 45 (internal quotation marks omitted); see also United States v. Aronoff, 466 F.Supp. at 862 (stating that where a privilege holder has made assertions about privileged communications in a judicial proceeding, "his privilege should be revoked at least with respect to any communications whose disclosure might affect the factfinder's judgment as to that issue").

Accordingly, the Court finds that Plaintiff has failed to meet her burden of establishing that she has not waived the attorney client privilege with respect to communications with Attorney Farley which may bear upon her knowledge of whether or not she had a potential claim against Defendant as a result of the injury she sustained on June 23, 2004. See In re Keeper of the Records, 348 F.3d at 22 ("the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived"). In reaching this conclusion, the Court has carefully considered the

facts and circumstances constituting the implied waiver, see id. at 23 (requiring such consideration), and finds that those facts and circumstances weigh substantially in favor of a finding of implied waiver.

## Conclusion

For the reasons stated above, Defendant's Motion to Compel is granted. Attorney Farley is ordered to comply with the subpoena which Defendant served upon him.[4]

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 27, 2008

[4] If Attorney Farley withholds production of any documents sought by the subpoena, he must file a privilege log as required by Fed. R. Civ. P. 45(d)(2). See In re Grand Jury Subpoena, 274 F.3d 563, 575 (1st Cir. 2001)("The operative language is mandatory and ... courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log.").