UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ELIZABETH REIS**

**VS C.A. NO. 07-236S**

**NATIONAL PASSENGER RAILROAD CORPORATION, A/KA/ NATIONAL RAILROAD PASSENGER CORPORATION**

## APPEAL OF DECISION

Now comes Plaintiff Elizabeth Reis in the above captioned matter and pursuant to Rule 72 of the Local Rules of the United States District Court appeals the Order and Decision of Magistrate Judge Martin dated May 27, 2008 concerning the denial of Plaintiff's Request for Protective Order and the Motion to Compel attendance at a deposition of Attorney Michael Farley.

Plaintiff,
By her attorney,

/s/ Frederick A. Costello
Frederick A. Costello #2205
FLAHERTY, BUTTERFIELD & COSTELLO
33 College Hill Road Suite 20D
Warwick, RI 02886
Tel. 401-822-1800 x 6, Fax. 401-822-1879

## CERTIFICATION

I hereby certify that on the 6th day of June, 2008 I electronically sent a true copy of within to: Paul E. Dwyer, Jr., Esquire, Andrew J. Murray, Esquire, Edwards Angell Palmer & Dodge LLP, 2800 Financial Plaza, Providence, RI 02903 and Paul Ryan, Esquire, 670 Willett Avenue, East Providence, RI 02915.

/s/ Frederick A. Costello

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ELIZABETH REIS**

**VS C.A. NO. 07-236S**

**NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPEAL OF THE ORDER GRANTING A MOTION TO COMPEL**

**FACTS AND TRAVEL**

This is a Memorandum in support of Plaintiff's Appeal of the Memorandum and Order of a Motion to Compel by Magistrate Martin on or about May 27, 2008.

This matter emanates from an injury to the Plaintiff on June 23, 2004 while she was boarding an Amtrak Acela train that had stopped in Providence on Route to New York. See Plaintiff's Exhibit 1, Affidavit of Elizabeth Reis in opposition to a Motion for Summary Judgment filed by Defendant, ¶ 2 and 4.

Plaintiff initially complained about her treatment by Amtrak personnel; however, she informed the Claims Representative of Amtrak that she intended to proceed through her employer's workers' compensation insurance carrier, Beacon Mutual Insurance Company. Id. ¶12 of Plaintiff's Affidavit.

In December 2004 Attorney Michael Farley, who represented Ms. Reis in her workers' compensation claim, sent a letter to Amtrak requesting that they turn over any recorded statements Plaintiff gave to Amtrak and copies of any incident reports. This letter was previously submitted in support of Defendant's Motion for Summary Judgment against Plaintiff.

In April 2005 Plaintiff retained Attorney Robert Jacquard to represent her in a Chapter 7 Bankruptcy Petition. See Affidavit of Robert V. Jacquard, which was submitted in support of Plaintiff's Objection to Defendant's Motion for Summary Judgment, identified as Plaintiff's Exhibit 2.

At the end of April 2005 Plaintiff was removed from workers' compensation coverage and proceeded to achieve a discharge in bankruptcy. See Plaintiff's Exhibit 1, ¶ 20, 21.

Ms. Reis' workers' compensation claim was re-instituted by a new attorney, Frederick A. Costello, in November of 2005 and she was placed back on workers' compensation in February of 2006. The workers' compensation insurance carrier appealed the Order and the matter was settled permanently in May of 2007. See Plaintiff's Exhibit 1, ¶ 22-24.

In June of 2007 Plaintiff filed suit against Amtrak for the injury she suffered on June 23, 2004. The suit was filed in the Superior Court and removed to Federal District Court by Defendant. See Plaintiff's Exhibit 1, ¶ 25.

In February 2008 Defendant filed a Motion for Summary Judgment (Docket Document Number 10) in which Defendant, among other things, alleged that the Plaintiff should be judicially estopped from asserting any claims against Amtrak because she did not identify her claim against Amtrak in her 521 Statement of Assets section of her Chapter 7 Bankruptcy Petition.

Plaintiff subsequently filed an objection to the Motion for Summary Judgment in April of 2008, (Docket Document number 19), and the previously mentioned Affidavits of herself and Attorney Jacquard were submitted with the Objection.

Subsequent to receiving the objection to the Motion for Summary Judgment, Defendant moved to take the depositions of Attorneys Jacquard and Farley concerning information that was contained in Attorney Jacquard's Affidavit in reference to his representation of Plaintiff in the bankruptcy action and Attorney Farley's representation of Ms. Reis in reference to her workers' compensation claim.

Plaintiff posed no objection to Attorney Jacquard's deposition and the production of his complete bankruptcy file as Plaintiff had submitted an Affidavit from Attorney Jacquard and felt the attorney/client privilege had been waived in reference to Attorney Jacquard. Attorney Jacquard was allowed to be deposed and no objection was raised concerning attorney/client privilege and Jacquard's complete file was turned over to Amtrak's defense counsel. Portions of the file revealed that Attorney Jacquard was aware of the location of Plaintiff's fall and the extent of her injuries as a result of the fall and despite this fact, both in his deposition and his Affidavit, he responded that he felt there was no claim to be made against Amtrak at that time (April 2005) . See Plaintiff's Exhibit 2, ¶6. Mr. Jacquard in his deposition indicated that he had done some personal injury work so he was familiar with the proximate cause of injuries and had made personal injury claims in the past on behalf of clients, although his primary work was in the bankruptcy field. See Plaintiff's Exhibit 3, pages 39, 42, 43, 44.

The information in Plaintiff's Affidavit concerning Michael Farley contained no confidential attorney/client discussions. It mentioned the letter Mr. Farley sent to Amtrak on December 1, 2004, which Defendant already possessed and was obviously not

protected by the attorney/client privilege.[1] It also mentioned that to her knowledge Attorney Farley had never made a claim against Amtrak and never contacted Amtrak again subsequent to December 2004 to her knowledge. Plaintiff's Exhibit 1, ¶ 14, 15 and 16.

That despite the dearth of information revealed about her discussions with Attorney Farley, the Magistrate Judge felt that because Plaintiff had revealed information concerning her discussions with Attorney Jacquard about the preparation of her bankruptcy petition, that in fairness all subject matter discussions concerning her injury of June 23, 2004 were available to the Defendant and that she had effectively waived her right of attorney/client privilege in reference to her workers' compensation attorney, Michael Farley. See Docket Document Number 47, Memorandum and Order of Magistrate Martin, p. 11.

**LAW FOR STANDARD OF REVIEW**

As stated in Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel Compliance with his subpoena deuces tecum, (Docket Document Number 41), that the attorney/client privilege is among the oldest common law privileges dating back to the 16th Century. It exists for the purpose of encouraging full and truthful communication between and attorney and his client and recognizes that sound legal advice or advocacy services a client's public ends and that such advice or advocacy depends on the lawyer being fully informed by the client . The maintenance of the

[1] What is not in Farley's letter of December 1st is significant. First, no claim for monetary damages is made against Amtrak. Second, no allegation is made that Amtrak acted in a negligent manner. Third, no request is made that Amtrak refer this matter to its insurance carrier.

attorney/client privilege up to its proper limits are of substantial importance to the administration of justice. In re: VonBulow 828 F.2d 94, 99 (1st Cir. 1987).

The attorney/client privilege is highly valued, courts should be cautious about finding implied waivers. Claims of implied waiver must be evaluated on principles of logic and fairness. . . it is not surprising that case law reveals few genuine instances of implied waiver. In re: Keeper of the Records v United States of America, 348 F.3d 16 p. 20 (1st Cir. 2003).

Attorney/client privilege may be waived only when there has been a disclosure of confidential communication to a third party. United States v Aronoff, 466 F.2 855, 861, 862 (S.D.NY 1979).

Elements that must be established to invoke attorney client privilege are as follows:

1. The asserter/holder of the privilege is or sought to become a client;

2. The person to whom the communication was made (a) is a member of a bar of a court or a subordinate and is acting as a lawyer;

3. The communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing either an opinion of law or legal services or assistance in some legal proceeding and not for the purpose of committing a crime or tort;

4. The privilege has been claimed and not waived by the client.

United States v Kelly 69 F.2d 928, 938 (5th Cir.)

The so-called waiver by implication is based on considerations of fairness that usually entails the client testifying as to privileged communications in part and then

selectively withholding the other communications. State v VonBulow 475 A.2d 995, 1008 (RI 1984).

Subject matter waiver of attorney/client privilege also rests on the fairness considerations at work in the context of litigation. In re: VonBulow 828 F.2d 94, 102 (1st Cir. 1987).

Deliberate disclosure by a client of privileged communications did not waive attorney/client privilege where the client did not put at issue in any way the substance of her communications with her attorney and the partial disclosure was not misleading. In re: VonBulow 828 F.2d 94, 102.

A waiver of privilege of one attorney which is related to subject matter disclosed does not result in a sweeping subject matter waiver that would extend to other attorneys. In re: Von Bulow 828 F.2d 94, 103.

A client may waive the protection of the attorney/client privilege either expressly or by implication. Sedco International, S.A. v Cory, 683 F.2d 1201, 1206 (8th Cir. 1982).

Waivers by implication can sometimes extend beyond the matter actually revealed. In re: Keeper of the Records, 340 F.3d 23-24.

A disclosure or an assertion about the communication may effect a waiver of privilege not only as to that communication, but also as to other communications made during the same consultation and consultations made at other times about the same subject. United States v Aronoff, 466 F.Supp. 855, 862 (S.D. NY 1979).

Implied waivers are only found when communications of a material issue are made during a judicial proceedings and when in circumstances in which it would be patently unfair to uphold a claim of privilege. United States v Aronoff, 466 F. Supp. 862.

Implied waivers require a careful weighing of facts and should not be applied cavalierly. United States v Desir, 273 F.3d 45.

**ARGUMENT**

As stated previously, the material issue that is in question in this Motion for Summary Judgment is whether or not Plaintiff intentionally withheld the revelation of an asset when she filed her Chapter 7 bankruptcy petition. Specifically, did she intentionally omit filing a claim or potential claim against Amtrak when she filed for Chapter 7 bankruptcy, even though she had revealed her claim and her injury against the workers' compensation carrier in that petition?

Plaintiff previously, in both her objection to the Motion for Summary Judgment and a Request for a Protective Order and Objection to Motion to Compel by Defendant, stated that she had relied heavily on the advice of her bankruptcy attorney, Robert Jacquard, in listing her assets when she filed her Chapter 7 bankruptcy petition. See Plaintiff's Exhibit 1, ¶ 20.[2]

Attorney Jacquard supported this representation in his Affidavit and his deposition testimony. Attorney Jacquard presented his complete file that showed the notes he took in his intake interview with Ms. Reis. The notes revealed he was aware of the location, time and extent of the injuries to Ms. Reis. See Plaintiff's Exhibit 5.

---

[2] Plaintiff is a high school graduate and a single mother with no previous experience in the Court system other than her divorce and workers' compensation claim.

Despite all that information, Attorney Jacquard testified in his opinion there was no claim against Amtrak.

Plaintiff was not selective or misleading in her revelation of her conversations with Attorney Jacquard. In reference to the material issue of why she did what she did in reference to the bankruptcy filing, she withheld nothing and asked that nothing be withheld by Attorney Jacquard, her bankruptcy attorney.

The Magistrate Judge apparently felt that because Ms. Reis waived her communications with Attorney Jacquard, the individual who handled her bankruptcy and dealt exclusively with her in every aspect of her bankruptcy petition, that somehow that waiver translates into a second waiver in reference to Attorney Farley. As stated in our Introduction, absolutely nothing, selective or otherwise, was revealed concerning her confidential discussions with Attorney Farley in reference to her workers' compensation case, an entirely different matter that in reality had little to do with her bankruptcy petition.

The Court in its decision, on page 9, indicates that the disclosure in reference to Attorney Jacquard was deliberate and intentional through a sworn Affidavit. This is absolutely true. Frankly, how else would Plaintiff counter the argument of Defendant that she should be judicially estopped for failing to list her alleged claim against Amtrak if she did not describe the process that went into filing her bankruptcy petition?

There is not a scintilla of evidence that indicates that Mr. Farley had anything to do with her bankruptcy filing or that he gave her any advice whatsoever concerning what to list or not list in her assets in that filing. Robert Jacquard handled that matter exclusively. There is no evidence that he ever spoke with Attorney Farley or received any

documents from Attorney Farley. See Plaintiff's Exhibit 3, deposition of Attorney Jacquard, p. 31, 32. There is no evidence that Ms. Reis relied in any way on advice or discussions with Attorney Farley in determing what to list on her bankruptcy petition. From this set of facts, the Magistrate Judge made the quantum leap to indicate that because Attorney Farley represented her in reference to her workers' compensation injury and sent one letter requesting information from Amtrak that he had input in the preparation of her bankruptcy petition. He states based on fairness because Plaintiff had waived her right of attorney/client privilege in reference to Attorney Jacquard, that she must also waive her attorney/client privilege in reference to Attorney Farley. Neither the Magistrate Judge nor Defendant's attorney in his brief cite one case that indicates that waiver of privilege with one attorney for one subject, bankruptcy, transmutes into waiver of privilege with any and all other attorneys who may have information about an injury claim. The Defendant may argue that subject matter here is the issue of whether she discussed the possibility of a claim with anyone other than Attorney Jacquard. That is not the subject matter that is relevant in this instance. The subject is what did she discuss with Attorney Jacquard at the time she filed her bankruptcy petition in April of 2005? She may have had an interest in a claim against Amtrak in December of 2004 and she obviously eventually did have an interest in a claim against Amtrak in June of 2007 when she filed her suit. The real subject matter issue is what was the information she received from her bankruptcy attorney when she filed her bankruptcy petition in April of 2005? She waived any attorney/client privilege of any discussions she had with him and she allowed him to be deposed and his file exposed fully to the Defendant. This is not a selective waiver on her part. She had only one bankruptcy attorney.

If you take the position of the Magistrate Judge, and presumably the Defendant, they would have a right to the entire file of her real estate attorney, her divorce attorney and any other individual who may have represented her for any legal matter because of what she revealed concerning her discussions with her bankruptcy attorney. This flies in the face of the admonitions of the First Circuit set forth the case of U. S. v Desir 273 F.2d 39.

"The waiver doctrine has only a few hard edged rules: as to many permutations, it is a fluid body of precedent reflecting a variety of concerns, including an insistence on real confidentiality and limitations based on fairness. Even in those Circuits, which have greater opportunities to discuss the contours of the implied wavier theory, the analysis is fact intensive and based on a less than definitive standard of fairness. . . . stating that whether fairness requires a waiver of privilege is determined on a case-by-case basis, focusing on the specific context in which the privilege is asserted. Because implied waiver requires a careful weighing of facts and should not be applied cavalierly, we decline to address the specific contours of appellant's privilege claim, particularly since the determination of privilege is unnecessary to affirm the District Court's denial of the new trial motion." U.S. v Desir, 273 F.3d p. 44.

The message in Desir is that waivers whether implied or subject matter are discouraged and limited to very unusual situations. When there is the slightest question the Court should rule in favor of privilege not waiver. U.S v Desir, 273 F.3d 44. In the case of in re: Keeper of the Records 348 F.3d 20, the Court admonished trial judges to be cautious about finding implied waiver and represented there are few instances of implied waiver. In addition, the proposed Rule 502 amendment to the Federal Rules of Evidence concurs with the cautionary language of U.S. v Desir and in re: Keeper of the Records. See Plaintiff's Exhibit 6. The proposed Rule 502 includes the following language:

1. A subject matter waiver should be found only when privilege or work product has already been disclosed and further disclosure "ought in fairness" to be required in order to protect against a misrepresentation that might arise from the previous disclosure. See Plaintiff's Exhibit 6, p. 3.

The notes explaining the purpose of the proposed Rule amendment provide "that a voluntary disclosure generally results in a waiver only of the communication or information dictated. A subject matter waiver is reserved for those unusual situations in which fairness requires a further disclosure of protected information in order to protect against a selective and misleading presentation of evidence to the disadvantage of an adversary." Quoting in re: VonBulow 828 F.2d 94 (2nd Cir. 1987). See Plaintiff's Exhibit 6, p. 10.

What the Magistrate Judge has done is exactly the opposite, expanding the subject matter waiver doctrine, ignoring the restrictive language of Desir, In Re: Keeper of the Records and the proposed new Rule 502 of the Federal Rules of Evidence without any legal authority. He has enlarged the subject matter waiver issue to include any attorney who may have some knowledge of a client's thought process in reference to an issue that that attorney had nothing to do with; specifically, her bankruptcy petition of April 2005. There is absolutely no evidence that Attorney Farley at that point in time even knew Ms. Reis was going through a bankruptcy in April of 2005; much less, did he give her any advice concerning what her assets were. The Magistrate states that the Plaintiff "has thrust a partial disclosure into this litigation regarding a material issue. It would be unfair to permit her to block introduction of information harmful to her case after introducing other aspects of the attorney/client communications that are beneficial." See Magistrate's Memorandum and Order, p. 11. This quote totally misses the mark. The Plaintiff did not thrust a partial disclosure. She disclosed everything in reference to her bankruptcy petition. She did not leave anything out. The Magistrate Judge has said that disclosure includes workers' compensation discussions, discussions with any and all other lawyers

that she may have had from June 24, 2004 onward. Nothing was disclosed in reference to Attorney Farley that was or was not beneficial. No case is cited indicating that revealing communications in reference to a bankruptcy claim transmutes into a waiver of communications concerning a workers' compensation claim. This leap of faith on the part of the Magistrate Judge is unwarranted, unjustified and should not be allowed to stand.

For these reasons Plaintiff respectfully requests that the Memorandum and Order of May 27, 2008 by Magistrate Judge Martin be overruled and that the request for a Protective Order and the objection to the Motion to Compel be sustained.

Plaintiff,
By her attorney,

/s/ Frederick A. Costello
Frederick A. Costello #2205
FLAHERTY, BUTTERFIELD & COSTELLO
33 College Hill Road Suite 20D
Warwick, RI 02886
Tel. 401-822-1800 x 6, Fax. 401-822-1879

**CERTIFICATION**

I hereby certify that on the 6th day of June, 2008 a true copy of within was electronically sent to Paul Dwyer, Esquire, Andrew J. Murray, Esquire and Paul Ryan.

/s/ Frederick A. Costello