PLAINTIFF'S EXHIBIT

#3



A. I don't recall her telling me that.
Q. How about in Paragraph 12? What did she tell you that's reflected in Paragraph 12 of her affidavit?
A. I don't recall her telling me any of that either.
Q. In paragraph 13, did she tell you anything reflected in Paragraph 13 of her affidavit?
A. No. I don't recall her telling me that.
Q. Did she tell you that Mr. Farley represented her in the worker's comp claim?
A. Yes.
Q. And that's reflected, actually, in the petition, correct?
A. Yes.
Q. And did you contact Mr. Farley to discuss the circumstances of the worker's comp injury?
A. No.
Q. Would that be unusual for you to do?
A. No. It's not unusual. I don't recall --
Q. Let me rephrase that. That's a bad question.
Would it be unusual for you to contact the debtor's worker's comp attorney to learn about the

facts of the worker's comp claim?
A. No.
Q. Is there a reason why you didn't here?
A. I'm sorry. I think I gave you the wrong answer.
Q. That's fine.
Would it be unusual for you to contact the debtor's attorney regarding the facts surrounding the worker's comp claim to determine whether or not there might be a third-party claim?
A. Yes.
Q. So you did not contact Mr. Farley regarding Elizabeth Reis's claim?
A. No.
Q. How about Paragraph 14? Did Ms. Reis tell you anything that's reflected in Paragraph 14 of her affidavit?
A. She may have -- no, I'm sorry. In Paragraph 14, no, I don't recall any of that.
Q. How about Paragraph 15? Did she relate anything of substance that's reflected in Paragraph 15 of her affidavit?
A. That sounds like something more that she would have told me and I would have inquired about

Case 1:07-cv-00236-S-DLM Document 46-2 Filed 05/19/2008 Page 41 of 55



Reading Paragraph 6 I was under the impression that you didn't really have a recollection of specific conversations that you had with Ms. Reis and specific answers that she gave, and this just reflects your general practice; is that correct?

A. Like I said, the only thing I specifically remember about the conversation with Ms. Reis is her pulling back a little bit and motioning towards her feet and saying that she didn't have any ability to sue anybody else for her injury, that type of thing. The other things that you asked, you know, I don't recall being said at all, and may not have been said. And yes, it also lists my practice with each and every case.

Q. Is the fact that the claim against Amtrak is not listed in the bankruptcy petition of Ms. Reis the sole basis for your statement in Paragraph 6 that, "If I felt there was any chance of this, I would have listed it as a potential property on Schedule B of her petition"?

A. Yes.

Q. How did you prepare for this deposition today?

Q. And at the time of her bankruptcy filing, what percentage of your practice would have been criminal?

A. Probably 30 percent.

Q. What types of criminal cases do you handle?

A. Mostly any misdemeanors or lower-grade felonies.

Q. You also indicated that you did some wills and probate work back in 2005. What percentage of your practice was that?

A. Very small, maybe one percent.

Q. And then personal injury lawsuits, what percentage of your practice did that make up in 2005?

A. A pretty good amount. I guess maybe five or ten percent.

Q. Were you always representing claimants in these actions?

A. Yes. I felt I was successful at it, but I was losing sleep over the cases and didn't feel that people were happy with them all the time. I decided it's not something I was interested in doing anymore.

Q. Just a rough estimate, since 1999, between

1999 and 2005, approximately how many personal injury cases would you have handled involving torts?

A. I guess about seven or eight.

MR. DWYER: Off the record.

(Recess taken)

BY MR. DWYER:

Q. Attorney Jacquard, I noticed that you did not raise, nor did Ms. Reis's counsel, raise the attorney-client privilege for any of the questions that I asked. Why is that?

A. Well, there is some case law, which I've read quite a bit of it, that states that there really isn't much of an attorney-client privilege in bankruptcy because the person, once they file a bankruptcy petition, they're responsible to divulge all of their financial information. I only have financial information in the file. I do have some cases, some interviews which I've done, where I've refused to file cases because I didn't think that -- the person either wasn't being truthful with me or any number of things. And if I had notes from an interview like that, then I would say that I can't divulge that information to you. But once these bankruptcy cases are filed, I haven't got a single

one with anything to hide. As I said, the case law is pretty clear, I think, in bankruptcy. There is really no privilege because they're responsible to divulge this information to the public anyway.

Q. Have you ever given a deposition before as an attorney? I understand you're a police officer.

A. I don't think so, no.

MR. DWYER: I'll pass the witness at this time to Mr. Costello.

I'd also indicate that this deposition should remain open until Attorney Jacquard can turn over his file relating to Ms. Reis. And at that time we'll make a determination as to whether we need to come back and ask questions regarding that file. As indicated, we have a hearing currently scheduled on summary judgment issue for May 12th. We ask for a continuance.

So I ask if you could get that to me by Friday, that would be great.

CROSS EXAMINATION

BY MR. COSTELLO:

Q. Good morning, Mr. Jacquard. I just want to ask you a couple of questions.

First, Mr. Dwyer already inquired as to