Received Fax : May 06 2008 3:27PM Fax Station : FLAHERTY COSTELLO GAL p. 2

FROM (TUE)MAY 6 2008 15:19/ST. 15:18/No. 6810142156 P 2

PLAINTIFF'S EXHIBIT

#6

* * * * *

## II. Action Item

**Proposed Rule 502 on Waiver of Attorney-Client Privilege and Work Product.**

The Evidence Rules Committee has found a number of problems with the current federal common law governing the waiver of attorney-client privilege and work product. One major

problem is that significant amounts of time and effort are expended during litigation to preserve the privilege, even when many of the documents are of no concern to the producing party. Parties must be extremely careful, because if a privileged document is produced, there is a risk that a court will find a subject matter waiver that will apply not only to the instant case and document but to other cases and documents as well. Moreover, an enormous amount of expense is put into document production in order to protect against inadvertent disclosure of privileged information, because the producing party risks a ruling that even a mistaken disclosure can result in a subject matter waiver. The Committee has determined that the discovery process would be more efficient and less costly if documents could be produced without risking a subject matter waiver of the attorney-client privilege or work product protection.

Another concern expressed to the Committee by members of the bar involves the production of confidential or work product material by a corporation that is the subject of a government investigation. Most federal courts have held that such a disclosure constitutes a waiver of the privilege, i.e., the courts generally reject the concept that a selective waiver is enforceable. This is a problem because it can deter corporations from cooperating in the first place.

Concerns about the common law of waiver of privilege and work product have been voiced in Congress as well. The Chairman of the House Committee on the Judiciary, by letter dated January 23, 2006, requested the Judicial Conference to initiate the rulemaking process to address the litigation costs and burdens created by the current law on waiver of attorney-client privilege and work product protection. The Chairman recognized that while any rule prepared by the Advisory Committee could proceed through the rulemaking process, it would eventually have to be enacted directly by Congress, as it would be a rule affecting privileges. See 28 U.S.C. § 2074(b).

The Committee directed its Reporter and its consultant on privileges to prepare a draft rule for its consideration that would address the problems of subject matter waiver, inadvertent disclosure, enforceability of confidentiality orders, and selective waiver. This draft rule was distributed in advance of the Committee meeting to selected federal judges, state and federal regulators, members of the bar, and academics. On the first day of its April meeting, the Committee held a mini-hearing on the proposed rule 502 and Committee Note, inviting presentations from those who reviewed the rule. (A transcript of the hearing is available from John Rabiej).

Based on comments received at the hearing, the Reporter and consultant revised the draft for consideration by the Committee at its meeting. Most importantly, the draft was scaled back so that it no longer regulates state rules on waiver as applied by state courts. The Committee— together with its liaisons and several members of the Civil Rules Committee invited to attend the meeting — discussed the draft proposal in extensive detail.

Received Fax : May 06 2008 3:21PM Fax Station : FLAHERTY COSTELLO GAL p. 4

FROM (TUE)MAY 6 2008 15:19/ST. 15:18/No. 6810142156 P 4



The Committee unanimously agreed on the following basic principles, as embodied in the proposed Rule 502:

1. A subject matter waiver should be found only when privilege or work product has already been disclosed, and a further disclosure "ought in fairness" to be required in order to protect against a misrepresentation that might arise from the previous disclosure.

2. An inadvertent disclosure should not constitute a waiver if the holder of the privilege or work product protection took reasonable precautions to prevent disclosure and took reasonably prompt measures, once the holder knew or should have known of the disclosure, to rectify the error.

3. A provision on selective waiver should be included in any proposed rule released for public comment, but should be placed in brackets to indicate that the Committee has not yet determined whether a provision on selective waiver should be sent to Congress.

4. Parties to litigation should be able to protect against the consequences of waiver by seeking a confidentiality order from the court; and in order to give the parties reliable protection, that confidentiality order must bind non-parties in any federal or state court.

5. Parties should be able to contract around common-law waiver rules by entering into confidentiality agreements; but in the absence of a court order, these agreements cannot bind non-parties.

After substantial discussion, the Evidence Rules Committee unanimously approved the proposed Rule 502 and the accompanying Committee Note for release for public comment. The proposed Rule 502 and Committee Note are attached to this Report as Appendix A.

**Recommendation: The Evidence Rules Committee recommends that the proposed Evidence Rule 502 be approved for release for public comment.**

* * * * *

**PROPOSED AMENDMENT TO THE FEDERAL RULES OF EVIDENCE***

**Rule 502. Attorney-Client Privilege and Work Product; Limitations on Waiver**

**(a) Scope of waiver.** — In federal proceedings, the waiver by disclosure of an attorney-client privilege or work product protection extends to an undisclosed communication or information concerning the same subject matter only if that undisclosed communication or information ought in fairness to be considered with the disclosed communication or information.

**(b) Inadvertent disclosure.** — A disclosure of a communication or information covered by the attorney-client privilege or work product protection does not operate as a waiver in a state or federal proceeding if the disclosure is inadvertent and is made in connection with federal litigation or federal administrative proceedings — and if the holder of the privilege or work product protection took reasonable

*New material is underlined; matter to be omitted is lined through.

precautions to prevent disclosure and took reasonably prompt measures, once the holder knew or should have known of the disclosure, to rectify the error, including (if applicable) following the procedures in Fed. R. Civ. P. 26(b)(5)(B).

[( c ) **Selective waiver.** — In a federal or state proceeding, a disclosure of a communication or information covered by the attorney-client privilege or work product protection — when made to a federal public office or agency in the exercise of its regulatory, investigative, or enforcement authority — does not operate as a waiver of the privilege or protection in favor of non-governmental persons or entities. The effect of disclosure to a state or local government agency, with respect to non-governmental persons or entities, is governed by applicable state law. Nothing in this rule limits or expands the authority of a government agency to disclose

Received Fax May 06 2008 3:21PM Fax Station : p. 7

FROM (TUE)MAY 6 2008 15:20/ST.15:18/No.6810142156 P 7



communications or information to other government agencies or as otherwise authorized or required by law.]**

**(d) Controlling effect of court orders.** — A federal court order that the attorney-client privilege or work product protection is not waived as a result of disclosure in connection with the litigation pending before the court governs all persons or entities in all state or federal proceedings, whether or not they were parties to the matter before the court, if the order incorporates the agreement of the parties before the court.

** The bracketing indicates that while the Committee is seeking public comment, it has not yet taken a position on the merits of this provision. Public comment on this "selective waiver" provision will be especially important to the Committee's determination. The Committee is especially interested in any statistical or anecdotal evidence tending to show that limiting the scope of waiver will 1) promote cooperation with government regulators and/or 2) decrease the cost of government investigations and prosecutions.

As the Committee has taken no position on the bracketed provision, it is obvious that there is nothing in the proposed rule that is intended either to promote or deter any attempt by government agencies to seek waiver of privilege or work product. The Committee takes no position on the ongoing debate arising from the Department of Justice's revised principles governing the prosecution of a corporation and the effect of cooperation and voluntary disclosure (Memorandum from Larry D. Thompson, Deputy Attorney General, section VI (January 20, 2003)).

<u>**(e) Controlling effect of party agreements.** — An agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection is binding on the parties to the agreement, but not on other parties unless the agreement is incorporated into a court order.</u>

<u>**(f) Included privilege and protection.** — As used in this rule:</u>

<u>(1) "attorney-client privilege" means the protection provided for confidential attorney-client communications, under applicable law; and</u>

<u>(2) "work product protection" means the protection for materials prepared in anticipation of litigation or for trial, under applicable law.</u>

**Committee Note**

This new rule has two major purposes:

1) It resolves some longstanding disputes in the courts about the effect of certain disclosures of material protected by the attorney-client privilege or the work product doctrine — specifically those disputes involving inadvertent disclosure and selective waiver.

2) It responds to the widespread complaint that litigation costs for review and protection of material that is privileged or work product have become prohibitive due to the concern that any disclosure of protected information in the course of discovery (however innocent or minimal) will operate as a subject matter waiver of all protected information. This concern is especially troubling in cases involving electronic discovery. *See, e.g., Rowe Entertainment, Inc. v. William Morris Agency,* 205 F.R.D. 421, 425-26 (S.D.N.Y. 2002) (finding that in a case involving the production of e-mail, the cost of pre-production review for privileged and work product material would cost one defendant $120,000 and another defendant $247,000, and that such review would take months). *See also Report to the Judicial Conference Standing Committee on Rules of Practice and Procedure by the Advisory Committee on the Federal Rules of Civil Procedure,* September 2005 at 27 ("The volume of information and the forms in which it is stored make privilege determinations more difficult and privilege review correspondingly more expensive and time-consuming yet less likely to detect all privileged information."); *Hopson v. City of Baltimore,* 232 F.R.D. 228, 244 (D.Md. 2005) (electronic discovery may encompass "millions of documents" and to insist upon "record-by-record pre-production privilege review, on pain of subject matter waiver, would impose upon parties costs of production that bear no proportionality to what is at stake in the litigation").

The rule seeks to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of communications or information covered by the attorney-client privilege or work product protection. Parties to litigation need to know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable. For example, if a federal court's confidentiality order is not enforceable in a state court then the burdensome costs of privilege review and retention are unlikely to be reduced.

The Committee is well aware that a privilege rule proposed through the rulemaking process cannot bind state courts, and indeed that a rule of privilege cannot take effect through the ordinary rulemaking process. *See* 28 U.S.C § 2074(b). It is therefore anticipated that Congress must enact this rule directly, through its authority under the Commerce Clause. *Cf.* Class Action Fairness Act of 2005, 119 Stat. 4, PL 109-2 (relying on Commerce Clause power to regulate state class actions).

The rule makes no attempt to alter federal or state law on whether a communication or information is protected as attorney-client privilege or work product as an initial matter. Moreover, while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally.

The rule governs only certain waivers by disclosure. Other common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product. *See, e.g., Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) (reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense); *Ryers v. Burleson*, 100 F.R.D. 436 (D.D.C. 1983) (allegation of lawyer malpractice constituted a waiver of confidential communications under the circumstances). The rule is not intended

to displace or modify federal common law concerning waiver of privilege or work product where no disclosure has been made.

**Subdivision (a).** The rule provides that a voluntary disclosure generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to protect against a selective and misleading presentation of evidence to the disadvantage of the adversary. *See, e.g., In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) (disclosure of privileged information in a book did not result in unfairness to the adversary in a litigation, therefore a subject matter waiver was not warranted); *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994)(waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage). The language concerning subject matter waiver — "ought in fairness" — is taken from Rule 106, because the animating principle is the same. A party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation. *See, e.g., United States v. Branch*, 91 F.3d 699 (5th Cir. 1996) (under Rule 106, completing evidence was not admissible where the party's presentation, while selective, was not misleading or unfair). The rule rejects the result in *In re Sealed Case*, 877 F.2d 976 (D.C.Cir. 1989), which held that inadvertent disclosure of documents during discovery automatically constituted a subject matter waiver.

**Subdivision (b).** Courts are in conflict over whether an inadvertent disclosure of privileged information or work product constitutes a waiver. A few courts find that a disclosure must be intentional to be a waiver. Most courts find a waiver only if the disclosing party acted carelessly in disclosing the communication or

information and failed to request its return in a timely manner. And a few courts hold that any mistaken disclosure of protected information constitutes waiver without regard to the protections taken to avoid such a disclosure. *See generally Hopson v. City of Baltimore*, 232 F.R.D. 228 (D.Md. 2005) for a discussion of this case law.

The rule opts for the middle ground: inadvertent disclosure of privileged or protected information in connection with a federal proceeding constitutes a waiver only if the party did not take reasonable precautions to prevent disclosure and did not make reasonable and prompt efforts to rectify the error. This position is in accord with the majority view on whether inadvertent disclosure is a waiver. *See, e.g., Zapata v. IBP, Inc.*, 175 F.R.D. 574, 576-77 (D. Kan. 1997) (work product); *Hydraflow, Inc. v. Enidine, Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993) (attorney-client privilege); *Edwards v. Whitaker*, 868 F.Supp. 226, 229 (M.D. Tenn. 1994) (attorney-client privilege). The rule establishes a compromise between two competing premises. On the one hand, information covered by the attorney-client privilege or work product protection should not be treated lightly. On the other hand, a rule imposing strict liability for an inadvertent disclosure threatens to impose prohibitive costs for privilege review and retention, especially in cases involving electronic discovery.

The rule refers to "inadvertent" disclosure, as opposed to using any other term, because the word "inadvertent" is widely used by courts and commentators to cover mistaken or unintentional disclosures of information covered by the attorney-client privilege or the work product protection. *See, e.g., Manual for Complex Litigation Fourth* § 11.44 (Federal Judicial Center 2004) (referring to the "consequences of inadvertent waiver"); *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993) ("There is no

Received Fax : May 06 2008 3:21PM Fax Station : p. 13
FROM (TUE)MAY 6 2008 15:20/ST. 15:18/No. 6810142156 P 13



consensus, however, as to the effect of inadvertent disclosure of confidential communications.").

[**Subdivision (c).** Courts are in conflict over whether disclosure of privileged or protected information to a government agency conducting an investigation of the client constitutes a general waiver of the information disclosed. Most courts have rejected the concept of "selective waiver," holding that waiver of privileged or protected information to a government agency constitutes a waiver for all purposes and to all parties. *See, e.g., Westinghouse Electric Corp. v. Republic of the Philippines,* 951 F.2d 1414 (3d Cir. 1991). Other courts have held that selective waiver is enforceable if the disclosure is made subject to a confidentiality agreement with the government agency. *See, e.g., Teachers Insurance & Annuity Association of America v. Shamrock Broadcasting Co.,* 521 F. Supp. 638 (S.D.N.Y. 1981). And a few courts have held that disclosure of protected information to the government does not constitute a general waiver, so that the information remains shielded from use by other parties. *See, e.g., Diversified Industries, Inc. v. Meredith,* 572 F.2d 596 (8th Cir. 1977).

The rule rectifies this conflict by providing that disclosure of protected information to a federal government agency exercising regulatory, investigative or enforcement authority does not constitute a waiver of attorney-client privilege or work product protection as to non-governmental persons or entities, whether in federal or state court. A rule protecting selective waiver in these circumstances furthers the important policy of cooperation with government agencies, and maximizes the effectiveness and efficiency of government investigations. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 314 (6th Cir. 2002) (Boggs, J., dissenting) (noting that the "public interest in easing government investigations" justifies a rule that disclosure to government agencies of information covered by the attorney-client

privilege or work product protection does not constitute a waiver to private parties).

The Committee considered whether the shield of selective waiver should be conditioned on obtaining a confidentiality agreement from the government agency. It rejected that condition for a number of reasons. If a confidentiality agreement were a condition to protection, disputes would be likely to arise over whether a particular agreement was sufficiently air-tight to protect against a finding of a general waiver, thus destroying the predictability that is essential to proper administration of the attorney-client privilege and work product immunity. Moreover, a government agency might need or be required to use the information for some purpose and then would find it difficult or impossible to be bound by an air-tight confidentiality agreement, however drafted. If a confidentiality agreement were nonetheless required to trigger the protection of selective waiver, the policy of furthering cooperation with and efficiency in government investigations would be undermined. Ultimately, the obtaining of a confidentiality agreement has little to do with the underlying policy of furthering cooperation with government agencies that animates the rule.]

**Subdivision (d).** Confidentiality orders are becoming increasingly important in limiting the costs of privilege review and retention, especially in cases involving electronic discovery. *See Manual for Complex Litigation Fourth* § 11.446 (Federal Judicial Center 2004) (noting that fear of the consequences of waiver "may add cost and delay to the discovery process for all sides" and that courts have responded by encouraging counsel "to stipulate at the outset of discovery to a 'nonwaiver' agreement, which they can adopt as a case-management order."). But the utility of a confidentiality order in reducing discovery costs is substantially diminished if it provides no protection outside the particular litigation in which the order is entered. Parties are unlikely to be able to reduce the costs of

pre-production review for privilege and work product if the consequence of disclosure is that the information can be used by non-parties to the litigation.

There is some dispute on whether a confidentiality order entered in one case can bind non-parties from asserting waiver by disclosure in a separate litigation. *See generally Hopson v. City of Baltimore*, 232 F.R.D. 228 (D.Md. 2005) for a discussion of this case law. The rule provides that when a confidentiality order governing the consequences of disclosure in that case is entered in a federal proceeding, according to the terms agreed to by the parties, its terms are enforceable against non-parties in any federal or state proceeding. For example, the court order may provide for return of documents without waiver irrespective of the care taken by the disclosing party; the rule contemplates enforcement of "claw-back" and "quick peek" arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product. As such, the rule provides a party with a predictable protection that is necessary to allow that party to limit the prohibitive costs of privilege and work product review and retention.

**Subdivision (e).** Subdivision (e) codifies the well-established proposition that parties can enter an agreement to limit the effect of waiver by disclosure between or among them. *See, e.g., Dowd v. Calabrese*, 101 F.R.D. 427, 439 (D.D.C. 1984) (no waiver where the parties stipulated in advance that certain testimony at a deposition "would not be deemed to constitute a waiver of the attorney-client or work product privileges"); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) (noting that parties may enter into "so-called 'claw-back' agreements that allow the parties to forego privilege review altogether in favor of an agreement to return inadvertently produced privilege documents"). Of course such an agreement can bind only the parties to the agreement. The rule makes clear that if parties want protection from a finding of waiver

by disclosure in a separate litigation, the agreement must be made part of a court order.

**Subdivision (f).** The rule's coverage is limited to attorney-client privilege and work product. The limitation in coverage is consistent with the goals of the rule, which are 1) to provide a reasonable limit on the costs of privilege and work product review and retention that are incurred by parties to litigation; and 2) to encourage cooperation with government investigations and reduce the costs of those investigations. These two interests arise mainly, if not exclusively, in the context of disclosure of attorney-client privilege and work product. The operation of waiver by disclosure, as applied to other evidentiary privileges, remains a question of federal common law. Nor does the rule purport to apply to the Fifth Amendment privilege against compelled self-incrimination.