UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELIZABETH A. REIS, Plaintiff, | : | |
| vs. | : | Civil Action No. 07-236S |
| NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION, Defendant. | : | |

**DEFENDANT'S OBJECTION TO MOTION TO SUBSTITUTE AS PARTY PLAINTIFF**

Defendant National Passenger Railroad Corporation, a/k/a National Railroad Passenger Corporation ("Amtrak") hereby opposes Andrew S. Richardson's ("Trustee") Motion to Substitute As Party Plaintiff pursuant to Federal Rule of Civil Procedure 25(c) for the following reasons:

1. Rule 25(c) is not the proper device to cure a situation where a plaintiff brings an action in which she is not the real party in interest. *See QSI-Fostoria DC, LLC v. General Electric Capital, 223 F.R.D. 465 (N.D.Ohio 2004); 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1958 (2007).*

2. Fed. R. Civ. P. 17 applies where the "real party in interest" seeks to substitute, but requires that the movant prove the original filing was the product of an "honest and understandable mistake" and the trustee offers no such evidence. *See Fed. R. Civ. P. 17(a); Feist v. Consolidated Freightways Corp., 100 F.Supp.2d 273 (E.D.Pa. 1999), aff'd, 216 F.3d 1075 (3d Cir. 2000).*

3. The motion to substitute was not brought in a "reasonable time" as required under Rule 17. Plaintiff Reis never brought the motion to substitute, and the trustee waited more than

forty-five (45) days after the bankruptcy case was re-opened and on the eve of the hearing on defendant's motion for summary judgment to move to substitute as party plaintiff.

4. Permitting substitution at this late date under the circumstances would result in undue prejudice to this defendant while denying said motion would result in little or no prejudice to plaintiff and the trustee.

Accordingly, for the reasons set forth more fully in the accompanying memorandum, this Court should deny the Trustee's Motion to Substitute as Party Plaintiff.

DEFENDANT,
NATIONAL RAILROAD PASSENGER CORPORATION,

/s/ Paul E. Dwyer, Jr.

Paul E. Dwyer, Jr. (#3956)
Andrew J. Murray (#5071)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903-2499
(401) 274-9200 (tel.)
(401) 276-6611 (fax)

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 1st, 2008 a copy of the foregoing Memorandum in the above-captioned case has been served by ECF to the following attorney(s).

Frederick A. Costello, Esquire
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886

Paul Ryan, Esq.
670 Willett Avenue
East Providence, RI 02915
P-(401) 437-0660
F-(401) 433-1605

Steven J. Boyajian, Esq.
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, Rhode Island 02906
(401) 273-9600
(401) 273-9605 (fax)

Andrew S. Richardson, Esq.
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, Rhode Island 02906
(401) 273-9600

/s/ Paul E. Dwyer, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELIZABETH A. REIS,<br>Plaintiff,<br><br>vs.<br><br>NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION,<br>Defendant. | : | Civil Action No. 07-236S |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO TRUSTEE'S MOTION TO SUBSTITUTE PARTY PLAINTIFF**

## I. FACTUAL BACKGROUND

On June 23, 2004, Elizabeth Reis tripped and fell on-board an Amtrak Acela Train in Providence while traveling on business to New York. She alleges that she broke her foot and sustained other injuries as a result of the fall.

On July 2, 2004, she contacted the Amtrak Claims Department and gave a tape recorded statement of the circumstances surrounding her injury. *Exhibit A.* At her deposition conducted on December 10, 2007, she unequivocally testified that she understood then that this was her first step in making a claim for damages against Amtrak. *Deposition of Elizabeth Reis at pp. 49-52, appended hereto as Exhibit B.*

On April 18, 2005, Elizabeth Reis filed a voluntary bankruptcy petition under Chapter 7. *See Bankruptcy Petition, Schedules B & C, appended hereto as Exhibit C.*

She failed to identify her potential claim against Amtrak. *See Id.; Exhibit B at p. 77.* Ms. Reis decided not to list her potential claim against Amtrak despite being told of the importance of listing such matters in her petition by her bankruptcy attorney Robert Jacquard.

*Deposition of Robert Jacquard, Esq. at pp. 15-18 (May 6, 2008), appended hereto as Exhibit D.* Ms. Reis told Attorney Jacquard that there was no possibility that she had a third-party claim as a result of the fall. *Id. at p. 18.* Certainly, Attorney Jacquard never told her that she did not have a claim against Amtrak. *Id. at p. 19.* Under questioning from the Bankruptcy Trustee at the creditor's committee meeting, Ms. Reis denied that she had any claim for money other than the Workers' Compensation claim. *See Exhibit E.*

On order of the Court, the deposition of Michael Farley, Esq., plaintiff's workers' compensation attorney, was taken. Attorney Farley testified that at his initial intake meeting with Ms. Reis on August 12, 2004, he explored with her the possibility of a cause of action against Amtrak. *Deposition of Michael Farley, Esq. at pp. 19-23 (July 14, 2008), appended hereto as Exhibit F.* He went as far as explaining to her the differences in the elements of proof between a Workers' Compensation claim and a tort action as well as the differences between the types and amounts of benefits or damages available in each. *Id.*

As a result of Attorney Farley's deposition, defendant obtained ten (10) e-mail communications dated between November 19, 2004 and September 10, 2005 from Ms. Reis to Attorney Farley referencing her potential claim against Amtrak. *Appended hereto as Exhibits G-P.*[1] These indisputably establish that prior to, during and after the pendency of her bankruptcy petition, Ms. Reis not only knew that she had a claim against Amtrak but believed it to be "substantial" and that she intended to pursue it through settlement. *See Exhibits G-P.*

Instigated by Ms. Reis's November 19 communication, Attorney Farley wrote a letter to Seth Starr, Amtrak Claims representative, requesting certain information in order to continue his

[1] It is clear that Attorney Costello was not aware of his client's e-mail communications with Attorney Farley until they were served upon him and defendant's counsel by Attorney Farley on July 11, 2008, one business day prior to Attorney Farley's deposition. Attorney Farley testified that he never sent the e-mail communications to Attorney Costello in error. *Exhibit F at p. 25.*

investigation of the claim. *See Exhibit Q.* He followed up with a telephone call to Mr. Starr. *Exhibit F at pp. 29-30.* On October 10, 2005, Attorney Farley was discharged by Ms. Reis probably due, according to him, to her dissatisfaction with his pursuit of her claim against Amtrak. *See Exhibit F at pp. 25-26.*

Despite her deposition testimony to the contrary and having authored the e-mails, Ms. Reis executed and filed her own sworn affidavit and that of Attorney Jacquard in Opposition to Defendant's Motion for Summary Judgment. *Affidavits appended hereto as Exhibits R and S.* As stated by this Court, these affidavits were offered "to support her contention that she did not include the claim against Amtrak on the bankruptcy forms because she was unaware that she had such a claim." *Memorandum and Order Granting Motion to Compel, p. 10 (May 27, 2008).*

Among other statements, Ms. Reis swore:

> "28. That I certainly am willing to re-open my bankruptcy petition and file an amended 521 statement listing this claim. It was never my intention to hide this claim. I just never gave any thought to making a claim or that I actually had a claim and that thought process was re-enforced by my discussions with Mr. Jacquard."

*Exhibit R at ¶ 28.*

This is in stark contrast to her deposition testimony wherein she stated that she didn't list the claim against Amtrak "[b]ecause at the time it wasn't formally in litigation. At the time, we didn't even know if we were going to go to litigation with Amtrak." *Exhibit B at p. 77*; *see also Exhibit R at ¶ 20.* She also swore that at the time of her bankruptcy filing her "absolute main focus was staying on Workers' Compensation." *Exhibit R at ¶ 20.*

Based upon the affidavits, Amtrak moved to conduct the deposition of Attorney Farley. For reasons which are now obvious, plaintiff vigorously opposed defendant's motion to take

Attorney Farley's deposition. The deposition was allowed, leading to the discovery of Ms. Reis's e-mails and culminating in Defendant's Motion to Strike the Affidavits.

On April 30, 2008, defense counsel forwarded Defendant's Motion for Summary Judgment and Plaintiff's Opposition thereto to the Bankruptcy Trustee. *Exhibit T.* On or about May 29, 2008, the Bankruptcy Estate was re-opened on motion of the trustee for the purpose of pursuing Ms. Reis' claim against Amtrak. *Exhibit U.* At no time did Ms. Reis seek to re-open the bankruptcy case to identify her claim against Amtrak. *Exhibit B at p. 80.* More than forty five (45) days later and shortly before Defendant's Motion to Strike and for Summary Judgment were to be heard, the trustee filed his Motion to Substitute.

## II. TRUSTEE'S MOTION TO SUBSTITUTE MUST BE DENIED BECAUSE FED.R.CIV.P. 25(c) IS INAPPLICABLE WHEN THE PROPERTY INTEREST TRANSFERRED PRIOR TO SUIT BEING FILED

The trustee bases his Motion to Substitute as Party Plaintiff on Federal Rule of Civil Procedure Rule 25(c) ("Rule 25(c)"), which provides in relevant part:

> Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

*Fed. R. Civ. P. 25(c).* Rule 25(c), however, applies only where the transfer of interest occurs <u>during</u> the pendency of the litigation, not where the transfer occurred <u>prior</u> to the litigation's commencement. *See Metlife Capital Corp. v. Water Quality Ins. Syndicate, 198 F. Supp. 2d 97, 103 (D. Puerto Rico 2002); Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405, 1407 (11th Cir. 1998); 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1958 (2007).* Plaintiff's interest in the instant claim transferred to the trustee at the time she filed her bankruptcy petition. In situations such as this, when an interest was transferred prior to commencement of the suit, Fed. R. Civ. P. Rule 17(a) ("Rule 17(a)") is controlling. *See Fed. R.*

*Civ. P. 17(a); 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1958 (2007)*. As explained below, a successful motion under Rule 17 requires the movant to present evidence of an "honest and understandable" mistake, which the trustee has not done. Rule 25(c) is not the appropriate vehicle for the trustee's substitution and his motion must be denied on this ground alone.

## III. HAD TRUSTEE PROPERLY FILED A MOTION TO SUBSTITUTE PURSUANT TO FED. R. CIV. P. RULE 17(a), TRUSTEE'S MOTION WOULD STILL FAIL

### A. Trustee Cannot Establish That Plaintiff, in Bringing the Claim in Her Name, Made an Honest and Understandable Mistake.

Fed. R. Civ. P. 17(a) governs those situations where substitution of the "real party in interest" is sought. *Fed. R. Civ. P. 17(a)*. Even if the trustee had filed his Motion to Substitute as Party Plaintiff pursuant to the appropriate rule, Rule 17(a), the trustee's motion still must be denied, because the trustee cannot show that Plaintiff, in filing in her own name, made an "honest and understandable mistake."

"[T]he Advisory Committee's Notes make clear that [Rule 17] is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Feist v. Consolidated Freightways Corporation, 100 F. Supp. 2d 273, 275 (E.D.Pa. 1999), aff'd 216 F.3d 1075 (3d Cir. 2000), cert. denied 532 U.S. 920, 121 S.Ct. 1357, 149 L.Ed. 2d 287 (2001)*. The burden to prove that the suit was initiated through an honest and understandable mistake by the plaintiff lies with the party seeking substitution. *Id. at p. 276, 280* (motion joined by trustee); *see also, Hatherly v. Mid-Continent Casualty Co., 2006 WL 1897266 (S.D.Tex. July 10, 2006)*. Furthermore, where the plaintiff cannot prove that the filing was due to an honest and understandable mistake, "the interest of Plaintiff's creditors in recovering some of the debts owed to them is not sufficient to justify substitution of the

bankruptcy trustee." *Feist, 100 F. Supp. 2d at 280; Weiburg v. GTE Southwest, Inc., 2002 WL 31156431 at * 5 (N.D. Tex. Sept. 26, 2002), aff'd 71 Fed. Appx. 440 (5th Cir. 2003).* In such a situation, the case may be dismissed without affording the real party in interest an opportunity to substitute. *Equal Employment Opportunity Commission v. J.D. Streett & Company, Inc., 2006 WL 3076667 (S.D.Ill. October 30, 2006).* This is due, in part, to the policy that "[i]t would be unreasonable to permit an action filed by a party who knows that he or she is not the real party in interest to toll the statute of limitations." *4 Moore's Federal Practice & Procedure 3d, §17.12[1][a] (2008); see United States ex. rel. Wulff v. CMA, Inc., 890 F.2d 1070, 1074-75 (9th Cir. 1989).* [2]

Accordingly, the trustee must prove that Reis's filing of the lawsuit was the product of an "honest and understandable mistake." When evaluating the evidence in making its determination, the court may consider the credibility and veracity of the plaintiff as well as any circumstantial evidence touching on the matter. *See Feist, 100 F.2d at pp. 277-280* (court evaluates credibility of plaintiff's explanations); *J.D. Streett & Company, Inc., at * 3-5* (examining circumstantial evidence). Undoubtedly recognizing that no such evidence can be marshalled, the trustee makes no effort to do so.

The circumstances confronting this court are strikingly similar to those found in *Feist, supra*. In that case, Plaintiff Feist alleged that he sustained severe injuries while at work. *Feist, 100 F.2d at p. 276.* He began receiving Workers' Compensation benefits shortly thereafter.

---

[2] The limitations period on Ms. Reis's personal injury claim expired three years after the date of the incident, June 23, 2004. *R.I. Gen. Laws §9-1-14 (2008).* Once the limitations period expired, Amtrak obtained a vested property right in its statute of limitations defense, protected from incursion by the due process clause of the Rhode Island State Constitution. *See Kelly v. Marcantonio, 678 A.2d 873, 883 (R.I. 1996).* To permit the trustee to employ the relation back aspects of Rule 17 or Rule 25 to circumvent the statute of limitations without proof of an honest and understandable mistake would be particularly unfair, prejudicial and contrary to the purposes of the Rules.

Almost two years after the incident, the plaintiff brought a tort suit against the Defendant. *Id.* During the pendency of the lawsuit, defendant became aware that plaintiff had filed a bankruptcy petition a year and five months after his injury and approximately six months before the tort suit was filed. *Id.* When asked by the trustee at the meeting of creditors whether he had "any claims against anyone for any reason whatsoever," plaintiff replied "nothing." Plaintiff received a discharge of his debts two months prior to suit being filed. *Id.* The court granted defendant leave to perform discovery on the circumstances surrounding the bankruptcy filing.

Discovery revealed that in the weeks following the discharge of his debts, plaintiff contacted four attorneys with respect to his tort suit. *Id.* He further testified that he never informed any of the first three attorneys about his bankruptcy filing. *Id. at 277.* When asked at his second deposition why he did not pursue a claim against defendant sooner, plaintiff testified "[t]he whole concept of having a claim against defendant didn't even enter my mind at that point." *Id.* Later, plaintiff testified, "I had no idea I could sue anybody. I mean, first of all, that wasn't my main focus, and secondly, I just thought I was receiving Workers' Comp. And that was my right, that was it." *Id.*

During his second deposition, plaintiff testified that he did not list the claim on his bankruptcy petition because he "had no knowledge of having any claim against anybody other than receiving Workers' Comp." *Id. at 279.* Plaintiff also testified that he did not believe that he had a claim until he had a conversation with his uncle about two months prior to filing the tort action. *Id.* When asked what led him to seek an attorney so shortly after his bankruptcy was discharged, plaintiff evasively answered why he brought suit:

Q. At some point in time you came to the conclusion that this trucker orchestrated the situation?

A. I knew that from the beginning. The thing was I was hoping to get better and as time went on I got so depressed and isolated myself to such an extent. I didn't want to try and get the courts or go after anybody.

*Id. at 279.*

After examining the evidence offered, the court denied the plaintiff and trustee's motion to substitute because the plaintiff failed to carry his burden to prove that filing the action in his own name was an honest and understandable mistake. *Id. at 280.* To allow substitution under such circumstances would, according to the court, "contravene the purpose of Rule 17(a)." *Id.*

Like the plaintiff in *Feist*, Reis bankruptcy filing was discovered fortuitously. Like Feist, Reis failed to identify her potential claim against Amtrak in her petition. *Exhibit B at p. 77*; *Exhibit C.* As did Feist, Ms. Reis denied that she had any claims other than her Workers' Compensation action at her creditor's committee meeting. *Exhibit E.*

Like Feist, Ms. Reis knew shortly after her injury that she had a potential claim against Amtrak. *See Exhibit A; Exhibit B at pp. 49-52; Exhibit F at pp. 19-23; Exhibits G-P.* She continued to maintain that belief throughout the pendency of her bankruptcy proceedings. *Exhibits G-P.* Similar to Feist, who admittedly did not tell at least his prior tort counsel of his bankruptcy petition, Ms. Reis did not tell her bankruptcy counsel of her belief that she had a potential claim against Amtrak. *Exhibit D at p. 18.*

Like Feist, Ms. Reis tells this court that it never occurred to her until shortly before filing suit that she believed that she had a claim against Amtrak. *Exhibit R at ¶¶ 24-28.* As did Feist, Ms. Reis asserts that her "main focus" was on her Workers' Compensation claim. *Exhibit R at ¶ 20.*

Like Feist, Reis steadfastly maintained her position to the trial court, despite knowing of evidence contradicting it. *Compare, Exhibits R and S with Exhibits G-P.* As in *Feist*, plaintiff's

position forced defendant to conduct depositions of counsel unnecessarily and bring additional motions. Here, the Bankruptcy Trustee filed the motion to substitute. In *Feist*, the motion was filed by the plaintiff but apparently joined by the trustee. *Feist, 100 F.2d at 280.*

The facts here mirror those in *Feist*. Neither the plaintiff nor the trustee can prove that Ms. Reis made an honest and understandable mistake in filing suit. As the court did in *Feist*, this court should deny the motion to substitute.

A similar result occurred in *J.D. Streett & Company, Inc., supra*. There two female employees of the defendant filed charges on November 23, 2003 with the Equal Employment Opportunity Commission alleging that they and several other women were subjected to sexual harassment and a sexually hostile work environment at defendant's workplace. *2006 WL 3076667 at *1*. On September 29, 2005, after an unsuccessful attempt at conciliation, the EEOC filed suit on behalf of the women. Sometime thereafter, plaintiff Wolf, one of the female employees, was allowed to join the litigation. *Id.*

Wolf ceased worked for defendant in 2001. Necessarily, any sexual harassment of her ended at that time. *Id. at *2*. Wolf, however, had filed for bankruptcy on July 23, 2003 and failed to list the claim against the defendant on her list of assets. *Id.*

The Court examined whether Wolf's failure to list the claim was an honest and understandable mistake and concluded that it was not. *Id. at 3*. The Court noted that, under such circumstances, it is not difficult to determine who is the real party in interest. *Id.* Plaintiff knew of the facts giving rise to her cause of action two years before filing her bankruptcy petition. *Id.* She was represented by counsel at all pertinent times. *Id.* Moreover, even after Wolf conceded that she knew that she had a viable cause of action in 2005, she never moved to re-open her bankruptcy case. Such conduct, the Court concluded, "indicates at the most an intent to defraud

the Court and her creditors, and at the least inexcusable neglect." *Id.* Under such circumstances, the court ruled that dismissal of Wolf's claims were proper. *Id. at *4.*

In the instant case, Ms. Reis knew of the facts giving rise to the cause of action immediately. Less than a week thereafter, she had contacted Amtrak to make a claim. Less than two months thereafter, she met with Attorney Farley and discussed a potential claim against Amtrak. She maintained her intent to pursue her claim against Amtrak during the pendency of the bankruptcy proceeding.

Moreover, even though the absence of the potential claim on her petition was pointed out to her during her December 10, 2007 deposition, she never moved to reopen her bankruptcy case and list the claim.[3] *Exhibit A at p. 80.* She only offered to reopen her bankruptcy case in her affidavit filed in response to defendant's motion for summary judgment; the same affidavit in which she swore she was unaware that she had a potential claim against Amtrak. *Exhibit R, ¶ 28.*

Under such circumstances, the trustee's motion to substitute must be denied. *Hatherly v. Mid-Continent Casualty Co., 2006 WL 1897266 (S.D.Tex. July 10, 2006); Delor v. Intercosmos Media Group, Inc., 232 F.R.D. 562 (E.D.La. 2005); Rawoof v. Texor Petroleum Company, 2004 WL 3021391 (N.D.Ill. December 29, 2004), aff'd 521 F.3d 750 (7th Cir. 2008); Griffin v. EFW, Inc., 2004 WL 906393 (N.D. Tex., March 24, 2004); Weiburg, 2002 WL 31156431 (N.D. Tex. September 26, 2002), aff'd 71 Fed. Appx. 440 (5th Cir. 2003).*

## IV. THE TRUSTEE'S LATE MOTION FOR SUBSTITUTION FAILS TO SATISFY THE "REASONABLE TIME" COMPONENT OF RULE 17(a)(3) AND WOULD PREJUDICE DEFENDANT

In *Rawoof, supra*, plaintiff moved to substitute the real party in interest on the last day of discovery. Thereafter, the Magistrate Judge extended discovery by one month to allow the

---

[3] The bankruptcy case was reopened on May 29, 2008 upon motion of the trustee.

defendant to compel discovery from plaintiff. While denying substitution, the court stated: "The last days of discovery are too late to attempt to substitute a plaintiff: such a substitution will almost always prejudice a defendant." *2004 WL 3021391 at *4.* Similarly, in the case of *Rodriguez v. Mustang Manufacturing Company, 2008 WL 2605471 (E.D. Mich. June 27, 2008)*, the court concluded that a lengthy delay in seeking to substitute the real party in interest required that summary judgment be granted. In *Rodriguez*, the plaintiff had filed for bankruptcy in February 2006 and obtained a discharge in July 2006. *2008 WL 2605471 * 3.* Similar to the Plaintiff in this case, Rodriguez did not list his claim as a scheduled asset in the bankruptcy proceeding and did not seek to reopen the bankruptcy proceeding to assert the claim. *Id.* In May 2008, the defendant filed a motion for summary judgment arguing that it was entitled to judgment as Rodriguez was not the real party in interest. The court agreed and stated:

> First, Rodriguez has had already had a reasonable time to ascertain the real party in interest ... Granting Rodriguez time now to reopen or substitute the trustee as the prosecuting party would cause months of delay, taking this action well outside the statute of limitations on the original claim. Though this fact does not constitute a procedural bar to Rodriguez's case, see Fed.R.Civ.P. 17(a)(3) ("After ... substitution, the action proceeds as if it had been originally commenced by the real party in interest."), it is unfairly prejudicial to Mustang. Evidence has already been lost or moved during the almost four years since Rodriguez's injury, to the detriment of Mustang's discovery efforts. ( See D.'s Mot. at 7-8.) Given Rodriguez's failure to determine the real party in interest despite years of opportunity to do so, and the harm that an additional delay would cause Mustang, the month that has passed since Mustang's Rule 17 objection constitutes a reasonable period to amend the complaint. *See Siler v. Wal-Mart Stores, Inc., No. 03-00031, 2005 WL 1185805, at *4 (S.D.Ohio May 17, 2005)* (concluding that Rule 17(a)(3) did not merit judicial stay to allow the plaintiff to seek reopening in bankruptcy court, as plaintiff had years after bankruptcy discharge to determine the real party in interest).

*Id. at *3.*

Like in *Rodriguez*, the conduct of the plaintiff and the trustee in this case certainly does not satisfy Rule 17(a)(3)'s "reasonable time" requirement. First, with respect to Plaintiff, she has had years to identify the real party in interest yet never moved to substitute the trustee as the

plaintiff in this case. She has not done so despite being on notice that she had a personal injury claim, despite swearing that she would reopen the bankruptcy if she needed to, and despite having opposed Defendant's Summary Judgment Motion with affidavits detailing her understanding of the claim approximately four (4) months ago. Rather, Plaintiff has allowed extensive discovery to proceed without ever taking such action while having knowledge of the need to substitute the trustee.

Similarly, the trustee has unreasonably delayed in seeking to substitute into this action. As of April 30, 2008, the Trustee was aware of the pending Motion for Summary Judgment and Plaintiff's Objection thereto. While the Trustee reopened the bankruptcy case on May 29, 2008, he also waited more than forty-five (45) days to file the Motion to Substitute and did so on the eve of the hearing on defendant's motion for summary judgment. This conduct, along with that of the plaintiff, certainly fails to satisfy the "reasonable time" element of Rule 17(a)(3).

In this case, discovery was set to close first on March 31, 2008 and then on June 30, 2008. Since then, the discovery period has been extended to August 30, 2008. Defendant's motion for summary judgment has been pending for almost six (6) months. Defendant has spent an enormous amount of money and time engaging in discovery related to the "real party in interest" issue. Much of Plaintiff's December 10, 2007 deposition was devoted to it. More than half of defendant's motion for summary judgment focuses upon it.[4]

Thereafter, plaintiff filed her affidavits in an attempt to create a factual issue to defeat the motion. As a result, defendant was required to conduct the deposition of Attorney Jacquard and engage in extensive motion practice, including an appeal to the district court judge, in order to conduct the deposition of Attorney Farley. All of this time and money was spent simply to prove

---

[4] By court order, defendant's motion for summary judgment was bifurcated with the judicial estoppel argument to be heard first while its substantive lack of notice argument is to be heard at a later date, should it be necessary.

what plaintiff said in her affidavit was false – something which would have been avoided had the affidavits not been executed and filed at all. This sideshow detracted from defendant's efforts to defend the merits of the action.

Conversely, there is no prejudice to the plaintiff who cannot be permitted to benefit from her fraud. Moreover, where the plaintiff has engaged in such conduct, "the interest of Plaintiff's creditors in recovering some of the debts owed to them is not sufficient to justify substitution." *Feist, 100 F. Supp. 2d at 280; J.D. Streett & Company, Inc., 2006 WL 3076667 at *3 - *4.* The Advisory Committee Notes to Fed. R. Civ. P. 17 make clear the policy that the Rule is not to be employed to preserve even legitimate claims where the original filing was the product of inexcusable neglect or fraud.

> [The Rule] is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Doe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim and have the benefit of suspension of the limitation period. It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the flight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim can be substituted to take advantage of the suspension of the limitation period.

*Fed. R. Civ. P. 17, Advisory Committee Notes, 1966 Amendment.*

In the Advisory Committee's example, the Rule could not be used to preserve the potentially legitimate wrongful death claims of the personal representatives of crash victims because there was no understandable mistake. *See Gardner v. State Farm Fire and Casualty Co., 2008 WL 2805641 (3d Cir. 2008), quoting United States ex. rel., Wulff v. CMA, Inc., 890 F.2d 1070, 1075 (9th Cir. 1989)* ("Rule 17(a) is the codification of the salutory principle that an

action should not be forfeited because of an honest mistake. It is not a provision to be distorted by the parties to circumvent the limitations period.") The positions of Ms. Reis's creditors are certainly no better, and in many ways more tenuous, than that of the airplane crash victims.

The creditors' potential losses are due to entering into various business relationships with the debtor Elizabeth Reis who, through either unfortunate circumstances or difficult economic times, was unable to meet her obligations. It is a risk of doing business. Certainly, no creditor loaned money to Ms. Reis on the belief that recourse could be made against a cause of action that they had no idea existed and where recovery is, at best, speculative. Debts owed to unsecured creditors totaled slightly above $31,000. *See Exhibit C, Schedule F.* These creditors are all large corporations who are not dependent upon repayment of debts by Ms. Reis to continue business operations. *See Weiburg, 71 Fed. Appx. 440 (5th Cir. 2003)* ("As the court found, recovery is highly speculative. The court had not ruled on [defendant's] summary judgment motion yet … Any recovery would be spread among eight creditors, large corporations whose financial condition hardly rises and falls with their share of Weiburg's debts").[5]

[5] Ms. Reis reaffirmed her obligations to her secured creditors. *See Exhibit B.*

## V. CONCLUSION

For the aforementioned reasons the trustee's motion to substitute as party plaintiff must be denied.

DEFENDANT,
NATIONAL RAILROAD PASSENGER
CORPORATION,

/s/ Paul E. Dwyer, Jr.

Paul E. Dwyer, Jr. (#3956)
Andrew J. Murray (#5071)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903-2499
(401) 274-9200 (tel.)
(401) 276-6611 (fax)

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 1st, 2008 a copy of the foregoing Memorandum in the above-captioned case has been served by ECF to the following attorney(s).

Frederick A. Costello, Esquire
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886

Paul Ryan, Esq.
670 Willett Avenue
East Providence, RI 02915
P-(401) 437-0660
F-(401) 433-1605

Steven J. Boyajian, Esq.
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, Rhode Island 02906
(401) 273-9600

Andrew S. Richardson, Esq.
Boyajian, Harrington & Richardson
182 Waterman Street
Providence, Rhode Island 02906
(401) 273-9600
(401) 273-9605 (fax)

______/s/ Paul E. Dwyer, Jr.