DEFENDANT'S EXHIBIT D



Volume I
Pages 1 to 53
Exhibits 1 to 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELIZABETH A. REIS,
Plaintiff,

vs.

NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION,
Defendant.

Civil Action No. 07-236S

DEPOSITION OF ROBERT B. JACQUARD, a witness called on behalf of the Defendant, taken pursuant to the Federal Rules of Civil Procedure, before Grant D. Hackett, Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Edwards Angell Palmer & Dodge, LLP, 2800 Financial Plaza, Providence, Rhode Island, on Tuesday, May 6, 2008, commencing at 10:43 a.m.

PRESENT:

Flaherty, Butterfield & Costello
(by Frederick A. Costello, Esq.)
33 College Hill Road, Suite 20D, Warwick, RI 02886, for the Plaintiff.

Edwards Angell Palmer & Dodge, LLP
(by Paul E. Dwyer, Esq.)
2800 Financial Plaza, Providence, RI 02903-2499, for the Defendant.

* * * * *

A. This is the first page of the voluntary petition, which I would have put together.

Q. And is the remainder of the document portions of the voluntary petition?

A. Yes.

Q. Do you recall discussing with Elizabeth Reis that she would be signing that document under pains and penalties of perjury?

A. I don't know if I -- I don't typically use the term a lot, "pains and penalty of perjury." I do tell my clients that it's extremely important that they answer the questions on the petition thoroughly, especially as it relates to property. I typically state to my clients, I always do, that it's very important to tell the Court what all of your property is. And if there was any chance that you were going to lose some property as a result of filing a bankruptcy, I would be able to spot it if they were honest with me and told me everything they had for property.

Q. Do you tell your clients what is meant by "property" under the law?

A. Yes.

Q. What is meant by property under the

bankruptcy law?

A. Well, I first go through, I ask about individual pieces of property. I ask them first about their real estate. If they own real estate at the time, I then ask them specific questions about that. I also inquire about any other real estate they've owned in the previous five years. Then I ask them about any cars or vehicles they own. Then I inquire about any cash they may have on hand, any accounts whatsoever they have on hand in any bank or financial institution, checking accounts, 401Ks and so forth. I inquire about their furniture, clothing, jewelry, whether they have any life insurance policies.

I ask these questions in that order so that I'm certain in my mind I did not miss anything. And then I follow up with, I say, "Do you own any other property whatsoever?" And then I follow that up with, "Do you have any claims against anyone or do you have a right to sue anybody for any money or have you been in any accidents in the last three years in which you may be able to sue anyone?"

Q. Did you ask Elizabeth Reis that question?

A. I don't specifically remember it, but I

know I ask it in every single circumstance. It's so important to do that because my clients are going to be pretty upset at me if they lose a piece of property. That's probably the thing they're most concerned with when they file bankruptcy. I tell them, "If you want me to be able to advise you properly, you need to tell me everything that you have, everything that you own. I stress that. And then at the end -- I follow it in that order. At the end I ask about any lawsuits they may have.

Q. She told you about the worker's comp matter that she had?

A. Yes.

MR. DWYER: Let's mark as Exhibit 3 Attorney Jacquard's affidavit, please.

(Document marked as Jacquard Exhibit 3 for identification)

Q. Sitting here today do you have a recollection of what she told you about the worker's comp claim?

A. There is one thing I do remember about it.

Q. What is that?

A. Well, I remember her telling me she had a worker's comp claim. And I asked her, "How did you

injure yourself?" And I remember her telling me that she fell. And I don't know necessarily if I recall that it was on a train or anything like that at this point because it was a couple of years ago. I then inquired of her, you know, whether there was any possibility there may be a third party at fault and whether she may possess a third-party action.

Q. What did she say to you?

A. She said no. I know she told me there wasn't. I know that I felt very certain that she was certain that she didn't possess any third-party action.

But what I remember about it was her sort of pushing back from the table and looking down at her feet and sort of motioning down there and explaining that she fell. I remember her doing that. Beyond that, you know, I knew it was a fall, and I don't remember exactly what was said. I'm certain that I would have inquired further as to whether there was any possibility that a third party may be responsible that she could sue.

Q. Would the substance of that portion of the conversation as to whether or not she had any rights against third parties be reflected somewhere in the

notes in your file?
A. If she said she possessed it, I would have written a note down there that she had a personal injury claim.
Q. Do you recall what she told you as to how the accident occurred for which she received worker's comp?
A. The only thing I remember was that it was a fall, to be honest with you.
Q. If you could look at your affidavit. Take a moment to read that.
A. (Witness complies) I remember it.
Q. Okay. In the last -- did you ever advise Ms. Reis that she did not have a potential claim against Amtrak?
A. No.
Q. Do you recall her stating at any meetings to you at anytime during the course of your representation that she tripped and fell over a passenger bag in the aisle of the Amtrak train?
A. I don't recall what it was at this point that she said she tripped over.
Q. Would it refresh your recollection if I indicate that she also stated that after she tripped

MICHAEL J. FARLEY
ATTORNEY AT LAW
LICENSED IN RHODE ISLAND AND MASSACHUSETTS

RECEIVED
DEC - 8 2004
AMTRAK
BOSTON CLAIMS OFFICE

EXHIBIT
4

December 1, 2004

Amtrak
ATTN: Seth Starr
253 Summer Street
Boston, MA 02210

RE: **Elizabeth Reis vs. Amtrak**

Dear Mr. Starr:

Please be advised that I represent Elizabeth Reis with respect to an injury she sustained while on Amtrak on June 23, 2004.

Please forward any information which you have with regard to this matter to my attention, including any investigations which have been done. Also, please forward me a copy of the recorded statement which you conducted on July 2, 2004.

Please call me if you have any questions or comments.

Very truly yours,

Michael J. Farley

MJF:mfa