DEFENDANT'S EXHIBIT A

1

Volume I
Pages 1 to 95
Exhibits 1 to 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELIZABETH A. REIS,
Plaintiff,

vs.

NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION,
Defendant.

Civil Action No. 07-236S

DEPOSITION OF ELIZABETH A. REIS, a witness called on behalf of the Defendant, taken pursuant to the Federal Rules of Civil Procedure 30, before Grant D. Hackett, Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Edwards, Angell, Palmer & Dodge, LLP, Providence, Rhode Island, on Monday, December 10, 2007, commencing at 10:10 a.m.

PRESENT:

Flaherty, Butterfield & Costello
(by Frederick A. Costello, Esq.)
33 College Hill Road, Suite 20D, Warwick, RI 02886, for the Plaintiff.

Edwards, Angell, Palmer & Dodge, LLP
(by Paul E. Dwyer, Esq.)
2800 Financial Plaza, Providence, RI 02903-2499, for the Defendant.

Also Present:
Seth Starr
Nancy Van der Veer

* * * * *

P R O C E E D I N G S

ELIZABETH A. REIS

a witness called for examination by counsel for the Defendant, having been satisfactorily identified by the production of her driver's license and being first duly sworn by the Notary Public, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. DWYER:

Miss Reis, my name is Paul Dwyer. I represent Amtrak in a case you've brought against Amtrak pending in the United States District Court for the District of Rhode Island. We're here today to take your deposition, which is essentially a statement under oath. I'll be asking questions, and you'll be responding to them.

If at anytime you need a break during the deposition, please let me know and we can accommodate you. At times during the deposition your attorney may object. You can answer the question unless your attorney instructs you otherwise.

Also, you have to be careful to answer verbally because the court reporter can't take down

when you got on the car?

A. No.

Q. There were no Amtrak personnel in that car?

A. No.

Q. Is that correct?

A. That is correct.

Q. How quickly were you moving?

A. I was just walking regular.

Q. Were you carrying anything?

A. I was. I had my purse and my briefcase on my shoulder, right shoulder. And then I was carrying my -- I was just going for an overnight. I just had a very small piece of luggage.

Q. Were you carrying that in one arm or dragging it behind you on rollers, that piece of luggage?

A. I don't remember because I don't remember which piece of luggage I took with me that time.

Q. Were you carrying anything in front of you? Was the luggage being carried in front of you or the side or back, if you recall?

A. It would be -- I don't know for sure.

Q. Was this woman on your left or your right?

A. She was on my right.

Q. How do you know that -- strike that.
How is it that you now believe that you tripped over her luggage?
MR. COSTELLO: Objection. I don't think there has been any testimony that she tripped over that woman's luggage.
MR. DWYER: I misunderstood. What luggage did you trip over?
A. A piece of luggage. A piece of luggage that was in the aisle as I was walking down.
Q. Oh, you don't know if it belonged to that woman or not?
A. I don't know for sure.
Q. Do you think it belonged to that woman?
A. What I do know for sure is this. I got almost to the end of the car and I fell over. I know I fell over something because I know I didn't trip because I know from the shoes. I know I fell over something because I was at almost the end of the car. This is the vestibule (indicating); this is the beginning of the other car (indicating). I ended up in this corner (indicating). My left side smashed into that corner. So I know --
MR. COSTELLO: For the record, she's

pointing to the left corner.

A. The left corner. So I know I had to trip over something and go airborne to go from being almost to the end of the quiet car and then end up on the ground on the other side of the vestibule smashed in the left-hand corner.

Q. Well, you said you know you tripped over something. How do you know you tripped over luggage?

A. Then I was going to tell you that the more I thought about what had happened, I do remember out of the corner of my ear hearing someone in a woman's voice saying "I'm sorry. Oh, I'm so sorry."

Q. To whom?

A. To me.

Q. And what did this woman look like?

A. I don't know.

Q. She wasn't an Amtrak person?

A. No. She wasn't an Amtrak person.

Q. This was a passenger?

A. Correct.

Q. So how do you know it wasn't her leg that you tripped over?

A. To be honest with you, I don't think I

to get myself up on that metal bar and I couldn't. And an Amtrak conductor or whatever he was, a big man, boisterous voice, had a uniform on, was screaming at me over and over again, "Lady, what are you going to do? Are you going to stay on or get off? We have to get this train moving." I remember saying, "Just give me a minute." And I tried again to pull myself up on that bar. And he must have screamed that at me three times. Each time I tried to get myself up and I couldn't. He then had the door open to the platform. And he took my things and threw them out on the platform.

Q. Threw them or placed them out?

A. He threw them out. And the security guard that was down on the platform took me by my wrist and dragged me off the train. There was no place to sit. He said the best he could do was the ground. And I said I couldn't get down to the ground, plus I had a dress on. So I stood there with my right elbow on his shoulder with my right foot dangling until rescue got there, which was about ten minutes.

Q. Did any physician ever tell you that the dangling of your foot outside of the Amtrak station further harmed your foot beyond what occurred in the