UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELIZABETH A. REIS, Plaintiff, | : | |
| v. | : | CA 07-236 S |
| NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION, Defendant. | : | |

**REPORT AND RECOMMENDATION**
**FOR REFERRAL TO**
**UNITED STATES ATTORNEY**

David L. Martin, United States Magistrate Judge

For the reasons stated herein, I recommend that certain sworn statements and testimony provided by Elizabeth A. Reis ("Plaintiff" or "Reis") in the above entitled matter and/or in her Chapter 7 bankruptcy proceeding[1] be referred to the United States Attorney for consideration of criminal prosecution.

**Facts[2] and Travel**

On June 23, 2004, Reis boarded an Amtrak Acela train which had stopped in Providence, Rhode Island, en route to New York City. See Exhibit ("Ex.") A (Affidavit of Elizabeth Reis in Opposition to Defendant's Motion for Summary Judgment ("Reis Aff.")) ¶ 2.[3] As she moved through the quiet car, Reis tripped on a bag and fell into the vestibule. Id. ¶ 3. She sustained a comminuted fracture of her right foot, suffered injuries to her neck, shoulder, and knees, and exacerbated a pre-existing

---

[1] In the Matter of Elizabeth A. Reis, United States Bankruptcy Court, District of Rhode Island, Case No. 1:05-bk-11339, Chapter 7.

[2] The facts are taken from the documents indicated.

[3] Exhibit A (Reis Aff.) is Document ("Doc.") #22 in the record.

fibromyalgia problem. Id. ¶ 4.

While Reis was lying on the floor of the car in pain and unable to get up, an Amtrak conductor told her that she had to get off the train immediately because they had a schedule to keep. Id. ¶¶ 5-6. She quotes the conductor as stating: "Lady, you going to stay on or get off, we got to get this train moving." Id. ¶ 5. Reis told the conductor that she was unable to get up on her own. Id. ¶ 8. The next thing that happened, according to Reis, was that her luggage was taken off the train and thrown on the train platform, and two security guards took her by the wrists and pulled her off the train. Id. ¶ 7. Reis had to lean on one of the security guards for about ten minutes prior to an emergency vehicle coming to take her to the hospital. Id.

After being transported to the hospital and admitted for her injuries, Reis spoke with her father. Id. ¶ 9. She indicated how angry she was regarding how she had been treated after she had fallen. Id. ¶ 10. Reis' father told her that she should voice her complaint to management. Id. The next day, June 24, 2004, Reis called Amtrak in Boston and spoke with a woman by the name of Martha O'Neil ("O'Neil"). Id. ¶ 11. O'Neil indicated that if Reis had a complaint O'Neil would put her in touch with someone from Amtrak or they would contact Reis. Id.

Several days later an Amtrak representative, Seth Starr ("Starr"), contacted Reis and asked if she would give him a recorded statement.[4] Id. ¶ 12. Reis agreed and gave Starr a

---

[4] Other evidence indicates that the date on which Starr contacted Reis was July 2, 2004. See Ex. B (Transcript of Recorded Statement given by Reis on 7/2/04 to Seth Starr of Amtrak) at 1. Exhibit B appears in the record as an exhibit to Defendant's Memorandum of Law in Support of Its Objection to Trustee's Motion to Substitute Party Plaintiff ("Defendant's Mem. Re Substitution"). See Defendant's Mem. Re Substitution, Ex. A. Defendant's Mem. Re Substitution was filed in support of Defendant's Objection to Motion to Substitute as Party

statement in which she voiced her displeasure with how she had been treated after she had fallen. Id. Reis told Starr that she intended to proceed through her employer's workers' compensation carrier, id., because she had been on her way to a trade show for her employer when she fell, see Ex. B (Transcript of Recorded Statement given by Reis on 7/2/04 to Seth Starr of Amtrak) at 4.

In early December of 2004, Starr received a letter from Attorney Michael J. Farley ("Attorney Farley"), stating that he represented Reis with respect to the injury she sustained on June 23, 2004,[5] and requesting any information Starr had regarding the matter and also a copy of the recorded statement which Reis had given. See Ex. C (Letter from Farley to Starr of 12/1/04).[6] Starr replied on December 9, 2004, acknowledging Attorney Farley's letter of representation. See Ex. H (Deposition of Michael J. Farley ("Farley Dep.")) at 58. In a subsequent telephone conversation, Starr declined to provide a copy of the recorded statement to Attorney Farley. See id. at 29.

On April 18, 2005, Reis filed a Voluntary Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the District of Rhode Island. See Ex. D (Bankruptcy File).[7] Under "Schedule B - Personal Property," id. at 4, which required Reis to identify "Other personal property of any kind not already

---

Plaintiff (Doc. #62).

[5] Although the letter does not state explicitly that Attorney Farley is representing Reis in a claim against Amtrak, see Deposition of Michael J. Farley ("Farley Dep."), Deft. Ex. 7 (Letter from Farley to Amtrak of 12/1/04), he described it as such, see Farley Dep. at 30, 68, and Amtrak acknowledged it as such, see id., Deft. Ex. 8 (Letter from Starr to Farley of 12/9/04).

[6] Exhibit C appears in the record as an exhibit to Defendant's Statement of Undisputed Facts (Doc. #11)("SUF"). See SUF, Ex. E.

[7] Exhibit D appears in the record as an exhibit to Defendant's Mem. Re Substitution. See Defendant's Mem. Re Substitution, Ex. C (Bankruptcy File).

listed," Reis stated that she had injured her foot at work in June of 2004, that she was collecting workers' compensation, and that she was represented by Attorney Farley, id. Reis did not mention her claim against Amtrak. See id. A "341 Hearing" was held in connection with the Bankruptcy Petition on May 23, 2005. See Ex. E (Transcript of "341 Hearing" and Letter from Dwyer to Martin, M.J., of 8/18/08).[8] At the hearing, Reis was asked: "Um, do you have any other claim for money other than the workers' compensation claim?" Id. at 3. Reis answered: "No sir." Id.

On October 20, 2005, Reis' attorney in the present action, Frederick A. Costello ("Attorney Costello"), sent Attorney Farley a letter requesting that he transfer her file to Costello's office. See Farley Dep., Deft. Ex. 5 (Letter from Costello to Farley of 10/20/05). The first paragraph of the letter stated:

> Enclosed please find an Authorization to Transfer file signed by Elizabeth Reis. It would be appreciated if you forward your file concerning her personal injury case and workers compensation case to this office at your earliest convenience.

Ex. H (Letter from Costello to Farley of 10/20/05).[9]

On June 1, 2007, Reis filed this action against Defendant National Passenger Railroad Corporation, a/k/a National Railroad Passenger Corporation ("Amtrak" or "Defendant"), in the Providence County Superior Court. See Complaint. Amtrak removed the action to this Court on June 27, 2007. See Notice of Removal (Document ("Doc.") #1).

---

[8] The first three pages of Exhibit E appear in the record as an exhibit to Defendant's Mem. Re Substitution. See Defendant's Mem. Re Substitution, Ex. E (Transcript of "341 Hearing").

[9] Exhibit H consists of excerpts from Attorney Farley's deposition and a copy of the letter from Attorney Costello to Attorney Farley of 10/20/05. The letter is found at the last page of Ex. H. The letter appears in the record as Deft. Ex. 5 to Attorney Farley's deposition.

Amtrak filed a motion for summary judgment on February 5, 2008, asserting, among other grounds, that Reis had failed to disclose her claim against Amtrak in her bankruptcy proceeding and that, therefore, she is judicially estopped from asserting the cause of action in this forum. See Memorandum of Law in Support of Defendant National Passenger Railroad Corporation's Motion for Summary Judgment ("Defendant's Summary Judgment Mem.") at 2-7; see also Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993)(holding that debtor, "having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis"). In support of this argument, Amtrak cited the fact that Reis' April 18, 2005, Voluntary Bankruptcy Petition reflected that she had no contingent claims of any kind. See Defendant's Summary Judgment Mem. at 5. Amtrak pointed out that the information underlying Reis' tort claim was known to her at the time she filed for bankruptcy because: 1) the injury had already occurred, 2) she had filed a workers' compensation claim based on the same injury, 3) she had already contacted the Amtrak claims department as a first step in initiating a claim against Amtrak, and 4) four months prior to the bankruptcy petition, Attorney Farley had sent a letter of representation to Amtrak with Reis' knowledge. See id. at 3, 6; see also Ex. H at 5. Given these facts, Amtrak contended that Reis could not credibly rebut the application of judicial estoppel on the grounds that her failure to disclose the claim was innocent. See Defendant's Summary Judgment Mem. at 6. Amtrak strongly implied (if not directly stated) that Reis' failure to identify the claim against Amtrak, when required to do so under pains and penalty of perjury, "is a fraud upon the court ...." Id. at 3.

Reis responded to Amtrak's accusation by filing two

affidavits to support her objection to the motion for summary judgment. See Plaintiff's Objection to Defendant's Motion for Summary Judgment (Doc. #19). One of the affidavits was from her bankruptcy attorney, Robert B. Jacquard ("Attorney Jacquard"), see Ex. F (Affidavit of Robert B. Jacquard ("Jacquard Aff.")),[10] and the other was Reis,' see Ex. A. In his affidavit, Attorney Jacquard stated in part that:

> I am certain that I asked Ms. Reis specific questions to determine if there was any third party responsible for her injuries. I am certain that Ms. Reis knew of no third party claim that she may have had, and that nothing she said in response to my questions led me to believe otherwise. If I felt there was any chance of this I would have listed it as potential property on Schedule B of her Petition.

Jacquard Aff. ¶ 6.

Reis swore in her affidavit:

> 20. That I filled out the forms at [Mr. Jacquard's] instruction and listed the claim I had for workers compensation resulting from my injury on June 23, 2004. I did not list a claim against Amtrak because at that point in time I did not believe I was making a claim against Amtrak and, in fact, had not made any claim against Amtrak at that time and **I had no intention of pursuing a claim at that point, after discussions with Mr. Jacquard it was my belief that there was no claim to be made.**
>
> ....
>
> 28. .... It was never my intention to hide this claim. **I just never gave any thought to making a claim or that I actually had a claim and that thought process was reinforced by my discussions with Mr. Jacquard.**

Ex. A ¶¶ 20, 28 (bold added).

Reis' counsel, Attorney Costello, apparently relying on the

[10] Exhibit F (Jacquard Aff.) is Doc. #25 in the record.

information stated in the affidavits, asserted in Plaintiff's opposition to the motion for summary judgment that "[t]here is not a scintilla of evidence presented by Defendant to show that Plaintiff intended to pursue a claim against Amtrak and, in fact, the opposite is true." Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Summary Judgment Mem.") at 14. Attorney Costello additionally asserted that Reis "had done nothing to actively pursue a claim against Amtrak. She identified the only claim that she believed she had in her bankruptcy schedule. That was the workers' compensation claim." Id. at 15.

Amtrak, believing that Reis had waived the attorney-client privilege by filing the affidavits, served subpoenas duces tecum on Attorneys Jacquard and Farley seeking documents and deposition testimony. See Memorandum of Law in Support of Defendant National Passenger Railroad Corporation's Emergency Motion to Compel Compliance with Subpoena Duces Tecum (Doc. #33) ("Defendant's Emergency Motion Mem.") at 2. Counsel for Attorney Farley informed Amtrak's counsel that Attorney Farley would be "raising the attorney client privilege and the Fifth Amendment privilege on behalf of Ms. Reis in opposition to the subpoena." Id. at 2.

Amtrak then moved to compel Attorney Farley to comply with the subpoena duces tecum which had been served upon him on April 29, 2008. See Defendant, National Passenger Railroad Corporation's, Emergency Motion to Compel Compliance with a Subpoena Duces Tecum (Doc. #30) ("Amtrak's Emergency Motion to Compel"). Although Reis interposed no objection to the production of records and testimony by Attorney Jacquard, Reis objected to Amtrak's attempt to obtain documents and testimony from Attorney Farley, contending that she had not waived the attorney-client privilege as to communications with him. See

Plaintiff's Objection to Defendant's Emergency Motion to Compel Compliance with Subpoena Duces Tecum (Doc. #41); Plaintiff's Memorandum in Support of Her Objection to Defendant's Emergency Motion to Compel Compliance with Subpoena Duces Tecum ("Plaintiff's Emergency Motion Mem.") at 6-9. Reis also sought a protective order to prevent the deposition and production of records by Attorney Farley. See Plaintiff's Motion for Protective Order (Doc. #39).

On May 27, 2008, this Magistrate Judge granted Amtrak's Emergency Motion to Compel, finding that Reis had failed to meet her burden of establishing that she had not waived the attorney-client privilege with respect to communications with Attorney Farley which may bear upon her knowledge of whether or not she had a potential claim against Amtrak as a result of the injury she sustained on June 23, 2004.[11] See Memorandum and Order

---

[11] In so ruling, this Magistrate Judge wrote:

> In short, the issue is one of fairness. Plaintiff (through the affidavits) has made assertions about privileged communications for the purpose of supporting her claim that she did not have knowledge of the claim against Defendant at the time she filed her bankruptcy petition. She now seeks to bar evidence of other communications regarding the June 23, 2004, incident which bear directly on her knowledge or lack of knowledge regarding the existence of a claim against Defendant. The "attorney client privilege cannot be used as both a shield and a sword." United States v. Desir, 273 F.3d at 45; see also State v. Von Bulow, 475 A.2d at 1007 ("the attorney-client privilege properly serves as a shield and not as an offensive tool of litigation"); id. ("A party may not, therefore, insist upon protection of the privilege for damaging communications while disclosing those which it considers to be favorable to its position."). Plaintiff has thrust a partial disclosure into this litigation regarding a material issue. It would be unfair to permit her "to block the introduction of information harmful to h[er] case after introducing other aspects of attorney-client communications that are beneficial ...." United States v. Desir, 273 F.3d at 45 (internal quotation marks omitted); see also United States v. Aronoff, 466 F.Supp. at 862 (stating that where a privilege holder has made assertions about privileged communications in

Granting Motion to Compel (Doc. #47) at 11. Reis appealed this ruling to District Judge William Smith, but on July 2, 2008, Judge Smith affirmed this Magistrate Judge's ruling. See Opinion and Order (Doc. #56).

Thereafter, Attorney Farley complied with the subpoena, producing documents to Amtrak and submitting to being deposed on July 14, 2008. See Ex. H at 6-7. Among the documents produced by Attorney Farley were emails which he received from Reis between November 19, 2004, and September 10, 2005. See Ex. G (Emails from Reis to Attorney Farley).[12] The documents produced and Attorney Farley's deposition testimony came to the Court's attention on August 14, 2008, as it was preparing for a hearing on the Motion to Substitute Party Plaintiff (Doc. #59) filed by Andrew S. Richardson, chapter 7 trustee of Plaintiff's bankruptcy estate. Following that hearing, the Court reviewed all of the documents cited herein and concluded that it should issue this Report and Recommendation.

**Discussion**

For the reasons stated in the sections which follow, I find that there are grounds to believe: 1) that Reis' affidavit contains false statements and that Reis knew that the statements were false when she made them; 2) that Reis attempted to perpetrate a fraud on Defendant and this Court by these statements; and 3) that Reis made false statements in her Chapter 7 bankruptcy proceeding and that she knew these statements were

---

> a judicial proceeding, "his privilege should be revoked at least with respect to any communications whose disclosure might affect the factfinder's judgment as to that issue").

Memorandum and Order Granting Motion to Compel (Doc. #47) at 10-11 (alterations in original).

[12] Exhibit G (Emails from Reis to Attorney Farley) appears in the record as Defendant's exhibit to the deposition of Attorney Farley. See Farley Dep., Deft. Ex. 2.

false when she made them.

## I. Reis' Affidavit

### A. False Statements

In her affidavit, Reis states that when she completed the bankruptcy forms with Attorney Jacquard in April of 2005 she "had no intention of pursuing a claim [against Amtrak] at that point ...," Ex. A ¶ 20; that after "discussions with Mr. Jacquard it was my belief that there was no claim to be made," id.; and that she "just never gave any thought to making a claim or that I actually had a claim ...," id. ¶ 28. The following evidence in the record indicates that these statements are false.

Reis was angry about how she had been treated by Amtrak personnel after she fell, and she contacted Amtrak to voice her complaint. See Ex. A ¶¶ 10-11. Reis gave a recorded statement to Starr on July 2, 2005, see Ex. B at 1, and she understood it was part of the process of making a claim, see Ex. J (Deposition of Elizabeth A. Reis ("Reis Dep.")) at 49-50.

Attorney Farley testified that he met with Reis on August 12, 2004, see Ex. H at 14; that he explained to her the difference between what could be recovered in a workers' compensation claim and what could be recovered in a tort claim, id. at 20-21; that his explanation included the fact that with a tort claim there was a potential to recover for pain and suffering and other damages, id.; that they talked about Reis' third-party claim against Amtrak,[13] id. at 21; that he told Reis that she had a potential claim against Amtrak, id. at 54; that after the meeting Attorney Farley opened a workers' compensation file and a "miscellaneous liability file," id. at 7, or "personal

[13] Attorney Farley testified: "I can see her in my office. I remember having this discussion with her, and I know we talked about it [the third-party claim]." Farley Dep. at 21.

injury file,"[14] id. at 52; that after their August 12, 2004, meeting he had several telephone conversations with Reis and the claim against Amtrak was definitely discussed during a telephone conversation on June 13, 2005,[15] id. at 24, 48-49, and that "it probably came up a couple of other times, a few other times," id. at 24; that on November 19, 2004, he received an email from Reis in which she recounted that she had spoken with the Amtrak claims office on June 25, 2004, and that on July 2, 2004, Starr had called her and she had given him a detailed recorded statement, id. at 32-34; see also Farley Dep., Deft. Ex. 2 (Email from Reis to Farley of 11/19/04).

Reis' November 19, 2004, email to Attorney Farley also stated:

> **I surely hope that you're able to settle for a substantial amount.** They cared more about getting the train moving than an injured passenger. They should never have moved me, let alone drag me off the train with an injury. I've lost almost 6 months of my life not being able to drive, get around, etc. Being a single parent I had no one to help take care of me or my son. The list is endless.
>
> I also wondered if you knew that this isn't anything new for Amtrak. An acquaintance told me that her friend's dad was traveling on Amtrak from Hartford to NYC, having

---

[14] Attorney Farley indicated that the personal injury file may not have been opened until after he received an email from Reis on November 19, 2004, regarding Amtrak. See Ex. H at 52. He suggested this scenario because the personal injury file contained that email and the December 1, 2004, letter of representation which he sent to Amtrak. See id.

[15] Attorney Farley's notes of this conversation reflect that Reis "confirmrd [sic] she doesn't remember what caused her fall[.]" Ex. H at 48; see also Farley Dep., Deft. Ex. 3. Attorney Farley testified that there would be no reason to discuss with Reis what caused her fall in relation to her workers' compensation claim. See Ex. H at 48. He agreed that his June 13, 2005, telephone conversation with Reis dealt, at least in part, with a potential claim against Amtrak. See id. at 48-49.

> severe chest pains and they asked if they'd please stop the train at the next unscheduled depot to let him off to get a rescue. They said they had to keep the train moving and couldn't stop until they got to NYC. The man had a heart attack ended up getting a huge settlement from Amtrak. Thank God he didn't die. Also, did you hear that last week the exact same train that I was on derailed and 70 people were injured. Unbelievable!

Ex. G at 1 (bold added).

Shortly after receiving the above email Attorney Farley sent the letter of representation to Amtrak which requested a copy of her recorded statement. See Ex. C. He testified that the November 19, 2004, email from Reis may have been what caused him to set up the personal injury file and to send the letter of representation to Amtrak (directed to the attention of Seth Starr). See Ex. H at 52.

Attorney Farley testified that he spoke to Starr at Amtrak in February or March of 2005 and that Starr declined to provide him with a copy of the recorded statement which Reis had given in July of 2004. See id. at 29. Between April 13, 2005, and September 10, 2005, he received a series of emails from Reis in which she inquired about the status of her claim against Amtrak. See Ex. G; see also Ex. H at 40.

In the April 13, 2005, email, Reis advised Attorney Farley that, among other things, "I have had to file for bankruptcy." Ex. G at 2 (April 13, 2005, email). Thereafter, on May 4, 9, 13, and 16, June 1 and 7, July 25, and September 10, 2005, Reis sent emails to Attorney Farley which all included queries as to whether he had made contact with Amtrak or whether she should expect a financial settlement from Amtrak. See id. at 3-9. For example, on May 13, 2005, Reis asked: "Have you been able to contact Amtrak since we last spoke?" Id. at 5. On June 7, 2005, she stated: "Would you please let me know how things stand with Seth Starr at Amtrak? I desperately need to recoup my financial

losses from this accident!" Id. at 8. In her July 25, 2005, email Reis inquires: "What is happening with Amtrak? Should I expect any financial settlement from them?" Id. at 9. Her final email to Attorney Farley (sent on September 10, 2005) contains the following inquiry: "When are you going to know if I'll be receiving a financial settlement from the PWCVB[16] [Reis' employer], Workers Comp, and/or Amtrak?" Id. at 10.

Reis' actions in contacting Amtrak, Attorney Farley's testimony, and Reis' emails to Attorney Farley demonstrate the falsity of Reis' statements in her affidavit that: a) she had no intention of pursuing a claim against Amtrak when she completed the bankruptcy forms with Attorney Jacquard in April of 2005, b) it was her belief after speaking with Attorney Jacquard that there was no claim to be made, and c) she never gave any thought to making a claim or that she actually had a claim. See Ex. A ¶¶ 20, 28.

**B. Knowingly False**

The Court has carefully considered the fact that Reis' affidavit was presumably drafted by Attorney Costello (and not by Reis) and that it was signed on April 22, 2008, some three years after her emails evidencing knowledge of her potential claim against Amtrak. In particular, the Court has considered whether Reis could have forgotten by April 2008 the knowledge which she clearly possessed in 2005. If she did, her attestation as to the truthfulness of the statements in the affidavit would not have been knowingly false. The Court concludes that such possibility is unlikely for the following reasons.

First, it cannot be credibly maintained that Reis forgot the existence of her potential claim against Amtrak when she signed her bankruptcy declaration on April 18, 2005, see Ex. D at 5, or

---

[16] Providence/Warwick Convention and Visitors Bureau. See Ex. B at 4.

when she testified at the "341 Hearing" on May 23, 2005, see Ex. E. Her persistent emails to Attorney Farley in April, May, and June of 2005, asking whether he had contacted Amtrak or Starr and whether she would be able to recover for pain and suffering, bracket the execution of her bankruptcy declaration and testimony. On April 13, 2005, only five days before she signed her bankruptcy declaration, Reis sent Attorney Farley an email asking whether he would be helping her recover "financial compensation for pain and suffering[.]" Ex. G at 2. Attorney Farley had explained to Reis that such damages could only be recovered via a personal injury claim and not a workers' compensation claim. See Ex. H at 20-21. Thus, her inquiry about compensation for pain and suffering demonstrates awareness of a third-party claim against Amtrak at the time she was proceeding with her bankruptcy.

In addition, it is impossible to read Attorney Jacquard's deposition testimony without concluding that Reis deliberately concealed and withheld information from him about the existence of a potential third-party claim. See Ex. I (Deposition of Robert B. Jacquard ("Jacquard Dep.")). Attorney Jacquard repeatedly indicated that he is particularly careful in this respect, see id. at 17-19, 22-23, 27-28, 34-35, 39, and that if there is any chance that such a claim exists he will include it, see id. at 35,[17] 47. The fact that Reis deliberately withheld

---

[17] Attorney Jacquard testified:

> If there is any belief at all that it may be a colorable claim, it's listed. I've had many petitions where I've listed "potential personal injury claim" or "potential slip and fall," you know. I might say in there, but it's unlikely, whatever. My style in filling out these petitions is to overstate things. I just do. I overstate things to be on the safe side.

Ex. I at 35.

information about the third-party claim from Attorney Jacquard and that she knowingly made false statements in her bankruptcy proceeding weighs against the possibility that the false statements in her April 2008 affidavit were innocently made.

Second, Reis' statement in her affidavit that "after discussions with Mr. Jacquard it was my belief that there was no claim to be made," Ex. A ¶ 20, is at odds with any suggestion that her failure to include the claim against Amtrak on Schedule B was attributable to a lapse of memory or to inadvertence. Rather, her affidavit strongly implies that after discussing the matter with Attorney Jacquard he gave her the impression (if not the express opinion) that there was no claim to be had. Reis' misstatement regarding what Attorney Jacquard told her regarding a potential claim against Amtrak goes well beyond a mere lapse of memory and into the realm of deliberate fabrication. Attorney Jacquard denied telling Reis that she did not have a claim against Amtrak, see Ex. I at 19, and he testified that he was certain he would have inquired further if Reis had told him anything which suggested that a third party could be responsible for her injury, see id. at 18.

Reis' statement that after "discussions with Mr. Jacquard it was my belief that there was no claim to be made," Ex. A ¶ 20, also cannot be reconciled with her emails in July and September 2005, inquiring whether she would be receiving a financial settlement from Amtrak, see Ex. G at 9-10. Thus, this is not a case where Reis forgot a single piece of information (i.e., her awareness of a potential third-party claim when she filed her bankruptcy petition) of which she was cognizant for only a relatively short time. Rather, here the record demonstrates that Reis was aware of and interested in the possibility of a third-party claim against Amtrak during at least the fifteen month period from July 2004 to October of 2005. During this time Reis

called Amtrak, gave the recorded statement to Starr, consulted with Attorney Farley, emailed him repeatedly, and ultimately contacted Attorney Costello who then requested the transfer of Reis' "file concerning her personal injury case and workers compensation case ...," Ex. H (Letter from Costello to Farley of 10/20/05).[18] Therefore, the length of time during which Reis had knowledge of and keen interest in the possibility of a third-party claim weighs against the likelihood that she forgot the knowledge she possessed in 2005 when she signed the affidavit in 2008.

Third, the context in which Reis filed the affidavit weighs against the possibility that her misstatements were innocent. Reis had already been alerted by virtue of being questioned at her deposition about the omission of the claim from her bankruptcy schedule, see Ex. J at 75-77, and also by Defendant's motion for summary judgment based on judicial estoppel, see Defendant's Summary Judgment Mem. at 2-7, that her knowledge of the existence of a potential third-party claim was a critical issue relative to her ability to personally continue with the instant action. Instead of indicating some uncertainty regarding the state of her knowledge, Reis chose not only to file an affidavit evidencing no uncertainty but also asserting that Attorney Jacquard had "reinforced," Ex. A ¶ 28, her belief that she did not have a third-party claim. The affidavit was clearly intended to persuade this Court that Reis was not aware that she had a potential claim against Amtrak when she filed her bankruptcy petition and that she did not gain this knowledge until May of 2007 when "Mr. Costello suggested that I may have a

---

[18] It can be reasonably inferred that Reis told Attorney Costello that she had been represented by Attorney Farley in both a workers' compensation case and a personal injury case because Attorney Costello refers to both in his letter requesting transfer of the file. See Ex. H (last page).

claim against Amtrak." Ex. A ¶ 24.

Fourth, Reis filed Attorney Jacquard's affidavit to bolster her claim that she was unaware of the existence of a third-party claim at the time she filed for bankruptcy. She then strenuously opposed any disclosure of information by Attorney Farley concerning her knowledge or lack of knowledge relative to a third-party claim. This action strongly suggests that Reis was aware that her 2008 affidavit contained false statements and that disclosure of her communications with Attorney Farley would reveal their falsity.

In sum, the evidence weighs strongly against the possibility that Reis was unaware that the affidavit did not truthfully reflect the extent of her knowledge in April 2005. See Hull v. Municipality of San Juan, 365 F.3d 98, 101-02 (1st Cir. 2004) (finding no error in district court's conclusion that plaintiff's fraud was proved by clear and convincing evidence and stating that "the information withheld was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements as merely careless"). Rather, the evidence indicates that Reis knew her affidavit contained false statements and that she filed it in a deliberate attempt to mislead the Court and to preserve the viability of her claim in this action.

**II. Attempt to Perpetrate a Fraud on Defendant and the Court**

According to the First Circuit, a "fraud on the court" occurs when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Hull, 356 F.3d at 102. Reis sought to perpetrate a fraud on Defendant and this Court by falsely representing in her affidavit that the failure to include

the Amtrak claim in her bankruptcy petition was an innocent omission based on an honest belief that she had no claim, see Ex. A ¶ 20, or actual unawareness of that claim, see id. ¶ 28, and that, therefore, she should not be judicially estopped from prosecuting her claim against Amtrak in this action. Reis withheld information from Attorney Jacquard and concealed from him the existence of her third-party claim. The Court bases this finding on Attorney Jacquard's deposition testimony that he was especially careful regarding such matters,[19] see Ex. I at 16-18, 27, 34-35, 39, 47; his declaration that "[i]f I felt there was any chance of [Reis having a third-party claim] I would have listed it as potential property on Schedule B of her Petition," Ex. F ¶ 6; and Reis' emails to Attorney Farley demonstrating that she was very much aware of her potential claim against Amtrak before, during, and after her engagement of Attorney Jacquard for the bankruptcy proceeding, see Ex. G.

**III. Reis' Bankruptcy Declaration and Testimony**

As already explained in detail above, at the time Reis testified in the Bankruptcy Court that she had no other claim for money other than her workers' compensation claim, she had been sending emails to Attorney Farley (on May 4, 9, 13, and 16, 2004) in which she repeatedly asked whether he had made contact with Amtrak, see Ex. G at 3-6. Following the May 23, 2005, "341 Hearing," Reis continued to send Attorney Farley emails (on June 1, and 7, July 25, and September 10, 2005) in which she asked

[19] Attorney Jacquard testified that "I know she told me there wasn't [a third-party claim]." Ex. I (Jacquard Dep.) at 18. Attorney Jacquard further testified that he felt very strongly about how he conducted interviews with clients, id. at 27, and that he "felt very certain that she was certain that she didn't possess any third-party action," id. at 18. Because he felt so strongly about the thoroughness of his questioning of Reis regarding whether she had a third-party claim, when he was contacted by Attorney Costello, Attorney Jacquard was willing to provide the affidavit which was filed in this action. Id. at 27.

whether he had made contact with Amtrak or whether she should expect a financial settlement from Amtrak, see Ex. G at 7-10. The discharge in Reis' bankruptcy case was entered on July 25, 2005. See Defendant's Mem. Re Substitution, Ex. C (Discharge of Debtor). Reis never informed Attorney Jacquard about her claim against Amtrak. See Ex. I at 36, 38.

**Conclusion**

For the reasons stated above, I recommend that the affidavit filed by Reis in this action and her declaration and testimony in her bankruptcy action be referred to the United States Attorney for consideration of criminal prosecution.[20]

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 5, 2008

[20] Given the nature of this Report and Recommendation, it is questionable whether the usual admonition that any objections to it must be specific and filed with the Clerk of Court within ten (10) days of its receipt is required. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). However, the Court sees no downside to providing Reis with an opportunity to voice an objection to the recommendation. Accordingly, she is advised that she has ten days to do so.