**EXHIBIT J**

Volume I
Pages 1 to 95
Exhibits 1 to 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - - - - - - -x

ELIZABETH A. REIS,
Plaintiff,

vs.

NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION,
Defendant.

Civil Action No. 07-236S

- - - - - - - - - - - - - - - - - - - - - -x

DEPOSITION OF ELIZABETH A. REIS, a witness called on behalf of the Defendant, taken pursuant to the Federal Rules of Civil Procedure 30, before Grant D. Hackett, Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Edwards, Angell, Palmer & Dodge, LLP, Providence, Rhode Island, on Monday, December 10, 2007, commencing at 10:10 a.m.

PRESENT:

Flaherty, Butterfield & Costello
(by Frederick A. Costello, Esq.)
33 College Hill Road, Suite 20D, Warwick, RI 02886, for the Plaintiff.

Edwards, Angell, Palmer & Dodge, LLP
(by Paul E. Dwyer, Esq.)
2800 Financial Plaza, Providence, RI 02903-2499, for the Defendant.

Also Present:
Seth Starr
Nancy Van der Veer

* * * * *

Q. You indicate in this matter that the police officer with whom you spoke indicated that he would put in a report on it?

A. Yes.

Q. When did you talk to the police officer?

A. He wasn't a police officer. He was the security, the person that dragged me off the train.

Q. Was he Amtrak security?

A. I think so.

Q. What did he look like?

A. He was short, kind of short, heavy-set. I think he was balding.

Q. Do you recall what his uniform looked like?

A. No.

Q. And how did you get Martha's name?

A. I don't know. I guess I just called information for the Amtrak number and --

Q. Okay.

A. -- she was the one that answered.

Q. And you understood you were calling the Amtrak claims department?

A. Yes.

Q. And this was your first step to telling your side of the story to make a claim, correct?

A. That is correct.
Q. And what, as best you can recall, can you tell me what Martha said to you and what you said to Martha?
A. I am so sorry. I have no idea.
Q. Do you recall how long a conversation it was with Martha?
A. I don't remember. The only part that I do remember of that conversation is her telling me she wasn't the one that I needed to talk to; that she would give my name to the claim, the person who would be talking to me.
Q. And was that Mr. Starr?
A. Yes.
Q. Do you recall if Mr. Starr contacted you or if you contacted Mr. Starr?
A. I don't remember.
Q. Was there anything -- how many conversations did you have with Martha?
A. I don't know for sure.
Q. How many conversations did you have with Mr. Starr?
A. I don't know that for sure.
Q. Do you know if it was more than one for

States Bankruptcy Court?
A. Yes.
Q. And who represented you in that matter?
A. Attorney Jacquard.
Q. How did you decide to go to Mr. Jacquard?
A. He was referred to me.
Q. Who referred you?
A. Another attorney.
Q. Which other attorney referred you? Was it Mr. Farley?
A. No, John Reis.
Q. John Reis, is he any relation?
A. Yes, he is.
Q. Who is he?
A. My brother.
Q. Where does Mr. Reis practice?
A. He practices in Cranston.
Q. Okay. Can you turn to the third to last page on the document.
A. (Witness complies)
MR. COSTELLO: "...Compensation of Attorney?"
MR. DWYER: One before that. I'm sorry. Section 18.

Q. You see at the bottom there it says, "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct"?
A. Yes.
Q. And you signed that?
A. Yes.
Q. And it's signed on April 18, 2005, correct?
A. Correct.
Q. If you turn to Schedule B, Personal Property, that would be the third page on Schedule B.
MR. COSTELLO: B6?
MR. DWYER: No, Schedule B. It's the third Schedule B.
Q. Do you see No. 33, "Other personal property of any kind not already listed. Itemize." Do you see that?
A. Yes.
Q. And you listed your worker's comp claim as a result of work on 6/2004, correct?
A. Yes.
Q. That's the incident which gives rise to

your claim against Amtrak, correct?
A. Correct.
Q. You indicated that the value there was unknown, correct?
A. Correct.
Q. Any reason why you didn't list the claim against Amtrak?
A. Because at that time it wasn't formally in litigation. At that time we didn't even know if we were going to go to litigation with Amtrak.
Q. Okay. Where did you get that understanding that your claim had to be currently in litigation in order to be listed as, listed on your bankruptcy petition?
MR. COSTELLO: I'm going to object and instruct you not to answer that because clearly it gets into attorney-client privilege.
Q. Would you agree with me nowhere in this bankruptcy petition is this claim against Amtrak identified?
A. No; that is correct.
Q. If you go back to the page prior, personal property, No. 20.
A. (Witness examines page)