UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELIZABETH A. REIS, Plaintiff,

v. : CA 07-236 S

NATIONAL PASSENGER RAILROAD CORPORATION, A/K/A NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.

**MEMORANDUM AND ORDER**
**DENYING MOTION TO SUBSTITUTE**

This is a tort case in which Plaintiff Elizabeth A. Reis ("Plaintiff" or "Reis") seeks damages for injuries sustained after she fell on June 23, 2004, aboard an Amtrak Acela train which had stopped in Providence, Rhode Island. Before the Court is a Motion to Substitute Party Plaintiff (Document ("Doc.") #59) ("Motion to Substitute" or "Motion") filed by Andrew S. Richardson ("Attorney Richardson" or "the Trustee") in his capacity as Chapter 7 trustee of the bankruptcy estate of Plaintiff.[1]

**Facts**

On or about December 1, 2004, Defendant National Railroad Passenger Corporation ("Amtrak" or "Defendant") received a letter from Attorney Michael J. Farley ("Attorney Farley"), stating that he represented Reis with respect to the injury she had sustained

[1] Although the Motion states that it is brought pursuant to Fed. R. Civ. P. 25(c), the Trustee has conceded that the motion to substitute himself as the party Plaintiff is governed by Rule 17. See Trustee's Reply to Defendant's Objection to Motion to Substitute as Party Plaintiff (Doc. #65) ("Trustee's Reply") at 2 ("Due to the fact that the Plaintiff's interest in the pending case was transferred prior to the filing of the case, the outcome of the instant motion is governed by Rule 17.").

on June 23, 2004,[2] and requesting information regarding the matter and a copy of the recorded statement which Reis had given to Seth Starr ("Starr"), an Amtrak claims representative. See Defendant's Memorandum of Law in Support of Its Objection to Trustee's Motion to Substitute Party Plaintiff ("Defendant's Mem. re Substitution"), Exhibit ("Ex.") Q (Letter from Farley to Starr of 12/1/04). Amtrak replied on December 9, 2004, acknowledging Attorney Farley's letter of representation. See Deposition of Michael J. Farley ("Farley Dep.") at 58. In a subsequent telephone conversation, Starr declined to provide a copy of the recorded statement to Attorney Farley. See id. at 29.

Slightly less than five months later, on April 18, 2005, Reis filed a Voluntary Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the District of Rhode Island. She was represented by Attorney Robert B. Jacquard ("Attorney Jacquard"). In her bankruptcy filing, Reis did not disclose the existence of her potential claim against Amtrak, but indicated only that she had injured her foot at work[3] in June of 2004 and that she was collecting workers' compensation. See Defendant's Mem. re Substitution, Ex. C (Bankruptcy Court File) at 21. Similarly, at a May 23, 2005, hearing in the bankruptcy proceeding, Reis was asked: "Um, do you have any other claim for

---

[2] Although the letter does not state explicitly that Attorney Farley is representing Reis in a claim against Amtrak, see Defendant's Memorandum of Law in Support of Its Objection to Trustee's Motion to Substitute Party Plaintiff ("Defendant's Mem. re Substitution"), Exhibit ("Ex.") Q (Letter from Farley to Starr of 12/1/04), Attorney Farley described it as such, see Deposition of Michael J. Farley ("Farley Dep.") at 30, 68, and Amtrak acknowledged it as such, see id., Deft. Ex. 8 (Letter from Starr to Farley of 12/9/04).

[3] In a recorded statement given to an Amtrak representative on July 2, 2004, Reis stated that at the time she fell she was on her way to a trade show for her employer, the Providence/Warwick Convention and Visitors Bureau. See Defendant's Mem. re Substitution, Ex. A (Transcript of 7/2/04 Recorded Statement) at 4.

money other than the workers' compensation claim?" Id., Ex. E ("341 Hearing" Transcript) at 3. She answered: "No sir." Id.

Two years later, on or about June 1, 2007, Reis, represented by Attorney Frederick Costello ("Attorney Costello"), filed this action against Amtrak in the state superior court. Amtrak removed the action to this Court on June 27, 2007.

Reis was deposed on December 10, 2007. During her deposition, she was asked why she had not listed her claim against Amtrak in her bankruptcy petition. See id., Ex. B (Excerpts of Reis' Deposition) at 77. Reis responded: "Because at that time it wasn't formally in litigation. At that time we didn't even know if we were going to go to litigation with Amtrak." Id. When asked from where she had gotten the understanding that her claim had to be in litigation in order to be listed on her bankruptcy petition, Reis' counsel objected and instructed her not to answer on grounds of attorney-client privilege. See id.

On February 5, 2008, Amtrak filed a motion for summary judgment asserting, among other grounds, that Reis had failed to disclose her claim against Amtrak in her bankruptcy proceeding and that, therefore, she was judicially estopped from asserting the cause of action in this forum. See Memorandum of Law in Support of Defendant National Passenger Railroad Corporation's Motion for Summary Judgment ("Defendant's Summary Judgment Mem.") at 2-7; see also Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993)(holding that debtor, "having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis"). In support of this ground, Amtrak cited the fact that Reis' April 18, 2005, Voluntary Bankruptcy Petition reflected that she had no contingent claims of any kind. See Defendant's Summary Judgment

Mem. at 5. Amtrak pointed out that the information underlying Reis' tort claim was known to her at the time she filed for bankruptcy because: 1) the injury had already occurred; 2) she had filed a workers' compensation claim based on the same injury; 3) she had already contacted the Amtrak claims department as a first step in initiating a claim against Amtrak; and 4) four months prior to the bankruptcy petition, Attorney Farley had sent a letter of representation to Amtrak with Reis' knowledge. See id. at 3, 6. Amtrak contended that Reis could not credibly rebut the application of judicial estoppel on the grounds that her failure to disclose the claim was innocent, see id. at 6, and strongly implied (if not directly stated) that her failure to identify the claim against Amtrak was "a fraud upon the court ...," id. at 3.

Reis responded to Amtrak's accusation by filing two affidavits to support her objection to the motion for summary judgment. See Plaintiff's Objection to Defendant's Motion for Summary Judgment (Doc. #19). One of the affidavits was from her bankruptcy attorney and the other was from Reis. In his affidavit, Attorney Jacquard stated in part that:

> I am certain that I asked Ms. Reis specific questions to determine if there was any third party responsible for her injuries. I am certain that Ms. Reis knew of no third party claim that she may have had, and that nothing she said in response to my questions led me to believe otherwise. If I felt there was any chance of this I would have listed it as potential property on Schedule B of her Petition.

Defendant's Mem. re Substitution, Ex. S (Affidavit of Robert B. Jacquard ("Jacquard Aff.")) ¶ 6.[4]

Reis in her affidavit stated:

> 20. That I filled out the forms at [Mr. Jacquard's]

[4] The Jacquard Aff. also appears in the record as Doc. #25.

> instruction and listed the claim I had for workers compensation resulting from my injury on June 23, 2004. I did not list a claim against Amtrak because at that point in time I did not believe I was making a claim against Amtrak and, in fact, had not made any claim against Amtrak at that time and I had no intention of pursuing a claim at that point, after **discussions with Mr. Jacquard it was my belief that there was no claim to be made.**
>
> ....
>
> 28. .... It was never my intention to hide this claim. **I just never gave any thought to making a claim or that I actually had a claim and that thought process was reinforced by my discussions with Mr. Jacquard.**

Id., Ex. R (Affidavit of Elizabeth Reis in Opposition to Defendant's Motion for Summary Judgment ("Reis Aff."))(bold added).[5]

Reis' counsel in this action, apparently relying on the information stated in the affidavits, asserted in Plaintiff's opposition to the motion for summary judgment that "[t]here is not a scintilla of evidence presented by Defendant to show that Plaintiff intended to pursue a claim against Amtrak and, in fact, the opposite is true." Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Summary Judgment Mem.") at 14. Counsel additionally asserted that Reis "had done nothing to actively pursue a claim against Amtrak. She identified the only claim that she believed she had in her bankruptcy schedule. That was the workers' compensation claim." Id. at 15.

Amtrak, believing that Reis had waived the attorney-client privilege by filing the affidavits, served subpoenas duces tecum on Attorneys Jacquard and Farley, seeking documents and deposition testimony. See Memorandum of Law in Support of

[5] The Reis Aff. also appears in the record as Doc. #22.

Defendant National Passenger Railroad Corporation's Emergency Motion to Compel Compliance with Subpoena Duces Tecum (Doc. #33) ("Defendant's Emergency Motion Mem.") at 2. Counsel for Attorney Farley informed Amtrak's counsel that Attorney Farley would be "raising the attorney client privilege and the Fifth Amendment privilege on behalf of Ms. Reis in opposition to the subpoena." Id.

Amtrak then moved to compel Attorney Farley to comply with the subpoena duces tecum which had been served upon him on April 29, 2008. See Defendant, National Passenger Railroad Corporation's, Emergency Motion to Compel Compliance with a Subpoena Duces Tecum (Doc. #30) ("Amtrak's Emergency Motion to Compel"). Although Reis interposed no objection to the production of records and testimony by Attorney Jacquard, Reis objected to Amtrak's attempt to obtain documents and testimony from Attorney Farley, contending that she had not waived the attorney-client privilege as to communications with him. See Plaintiff's Objection to Defendant's Emergency Motion to Compel Compliance with Subpoena Duces Tecum (Doc. #41); Plaintiff's Memorandum in Support of Her Objection to Defendant's Emergency Motion to Compel Compliance with Subpoena Duces Tecum ("Plaintiff's Emergency Motion Mem.") at 6-9. Reis also sought a protective order to prevent the deposition and production of records by Attorney Farley. See Plaintiff's Motion for Protective Order (Doc. #39).

On May 27, 2008, this Magistrate Judge granted Amtrak's Emergency Motion to Compel, finding that Reis had failed to meet her burden of establishing that she had not waived the attorney-client privilege with respect to communications with Attorney Farley which could bear upon her knowledge of whether or not she had a potential claim against Amtrak as a result of the injury

she sustained on June 23, 2004.[6] See Memorandum and Order Granting Motion to Compel (Doc. #47) at 11. Reis appealed that ruling to District Judge William Smith, but on July 2, 2008, Judge Smith affirmed this Magistrate Judge's ruling. See Opinion and Order (Doc. #56).

Thereafter, Attorney Farley complied with the subpoena, producing documents to Amtrak and submitting to being deposed on July 14, 2008. See Farley Dep. at 6-7. Among the documents produced by Attorney Farley were emails which he received from Reis between November 19, 2004, and September 10, 2005. See Defendant's Mem. re Substitution, Exs. G-P (Emails from Reis to

---

[6] In so ruling, this Magistrate Judge wrote:

> In short, the issue is one of fairness. Plaintiff (through the affidavits) has made assertions about privileged communications for the purpose of supporting her claim that she did not have knowledge of the claim against Defendant at the time she filed her bankruptcy petition. She now seeks to bar evidence of other communications regarding the June 23, 2004, incident which bear directly on her knowledge or lack of knowledge regarding the existence of a claim against Defendant. The "attorney client privilege cannot be used as both a shield and a sword." United States v. Desir, 273 F.3d at 45; see also State v. Von Bulow, 475 A.2d at 1007 ("the attorney-client privilege properly serves as a shield and not as an offensive tool of litigation"); id. ("A party may not, therefore, insist upon protection of the privilege for damaging communications while disclosing those which it considers to be favorable to its position."). Plaintiff has thrust a partial disclosure into this litigation regarding a material issue. It would be unfair to permit her "to block the introduction of information harmful to h[er] case after introducing other aspects of attorney-client communications that are beneficial ...." United States v. Desir, 273 F.3d at 45 (internal quotation marks omitted); see also United States v. Aronoff, 466 F.Supp. at 862 (stating that where a privilege holder has made assertions about privileged communications in a judicial proceeding, "his privilege should be revoked at least with respect to any communications whose disclosure might affect the factfinder's judgment as to that issue").

Memorandum and Order Granting Motion to Compel (Doc. #47) at 10-11 (alterations in original).

Attorney Farley). As explained in this Magistrate Judge's Report and Recommendation for Referral to United States Attorney (Doc. #72) ("Recommendation for Referral"), Attorney Farley's testimony and the emails produced by him demonstrate that Reis was fully aware of her potential claim against Amtrak at the time she filed for bankruptcy and that statements made by her in that proceeding and in the affidavit filed in this action, denying such knowledge, were knowingly false.

In the meantime, on April 30, 2008, Amtrak's counsel notified Attorney Richardson of the pendency of the instant action and provided him with copies of various documents filed in the case, including Defendant's motion for summary judgment which had been filed on February 5, 2008. See id., Ex. T (Letter from Dwyer to Richardson of 4/30/08). After receiving these documents, Attorney Richardson moved to reopen Reis' bankruptcy, and on May 29, 2008, the case was reopened. See Defendant's Mem. re Substitution, Ex. U (Order granting Trustee's motion to reopen case). Attorney Richardson filed the instant Motion to Substitute on July 22, 2008, and Amtrak filed its objection to the Motion on August 1, 2008. A hearing was held on August 15, 2008, and, thereafter, the Court took the matter under advisement.

**Law**

> The filing of a bankruptcy petition creates an estate that generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Any causes of action that accrue to the debtor prior to the filing of the bankruptcy petition are property interests included in the estate. Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 491 (3rd Cir. 1997); Cain v. Hyatt, 101 B.R. 440, 441-42 (E.D. Pa. 1989). A cause of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the estate. Lawrence v. Jackson Mack Sales, Inc., 837 F.Supp. 771, 779 (S.D. Miss. 1992), aff'd, 42

> F.3d 642 (5th Cir. 1994). After a claim becomes part of the bankruptcy estate, only the bankruptcy trustee, as representative of the estate, has the authority to prosecute or settle the cause of action. Chrysler Credit Corp. v. B.J.M., Jr., Inc., 834 F.Supp. 813, 839 (E.D. Pa. 1993); Cain, 101 B.R. at 442.

Feist v. Consol. Freightways Corp., 100 F.Supp.2d 273, 274 (E.D. Pa. 1999).

Moreover, a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends. Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir. 2006); see also Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993)(holding that debtor, "having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis").

**Discussion**

There is no dispute in this case that Reis' claim against Amtrak accrued prior to the filing of her bankruptcy petition. When Reis commenced her bankruptcy case, the claim became the property of the bankruptcy estate. Therefore, any claim by Reis against Amtrak arising out of her fall on June 23, 2004, no longer belongs to Reis. Rather, it is the property of the reopened bankruptcy estate. See Feist, 100 F.Supp.2d at 275.

Fed. R. Civ. P. 17(a) contemplates that the real party in interest may move to be substituted into the action. See Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."). However, "the Advisory Committee's Notes make it clear that this provision 'is intended to prevent forfeiture when determination of the proper party to sue is

difficult or when an understandable mistake has been made.'" Feist, 100 F.Supp.2d at 275 (quoting Fed. R. Civ. P. 17 Advisory Committee's Note, 1966 Amendment); see also Wieburg v. GTE Southwest Inc., 272 F.3d 302, 308 (5th Cir. 2001)("In accordance with the Advisory Committee's notes, most courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult."); EEOC v. J.D. Streett & Co., No. 05-cv-4186-JPG, 2006 WL 3076667, at *3 (S.D. Ill. Oct. 30, 2006)("[Rule 17(a)] generally applies to situations in which the commencement of the action by the wrong party is an honest mistake, such as where the real party in interest is difficult to determine or where the mistake is excusable. On the other hand, the Court may dismiss the case without offering the real party in interest an opportunity to ratify or join the action.")(citing Feist, 100 F.Supp.2d at 277-80); Hatherly v. Mid-Continent Cas. Co., Civil Action No. C-05-583, at *2 (S.D. Tex. July 10, 2006) (same); Automated Info. Processing, Inc. v. Genesys Solutions Grp., Inc., 164 F.R.D. 1, 3 (E.D.N.Y. 1995) ("[A]lthough the last sentence of Rule 17(a) seems to suggest it is applicable in every case in which the wrong plaintiff has been named, the history of that section reveals that it ... should be applied only to cases 'in which substitution of the real party in interest is necessary to avoid injustice.'")(quoting 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1555 at 415 (2nd ed. 1990)).

Amtrak notes that the facts in Feist are very similar to those in the instant matter. See Defendant's Mem. re Substitution at 6. Feist alleged that he sustained severe injuries while at work. Feist, 100 F.Supp.2d at 276. He began receiving workers' compensation benefits shortly thereafter. Id.

Almost two years after the incident, Feist brought a tort suit against the defendant. Id. During the pendency of the lawsuit, the defendant became aware that Feist had filed a bankruptcy petition a year and five months after his injury and approximately six months before the tort suit was filed. Id. When asked by the trustee at the meeting of the creditors whether he had "any claims against anyone for any reason whatsoever," id., Feist replied "nothing," id. Feist received a discharge of his debts two months prior to suit being filed. Id. The court granted the defendant leave to perform discovery on the circumstances surrounding the bankruptcy filing. Id.

Discovery revealed that in the weeks following the discharge of his debts, Feist contacted four attorneys with respect to his tort suit. Id. He testified that he never informed any of the first three attorneys about his bankruptcy filing. Id. at 277. When asked at his second deposition why he did not pursue a claim against the defendant sooner, Feist testified "[t]he whole concept of having a claim against [the defendant] didn't even enter my mind at that point." Id. (first alteration in original). At a subsequent hearing, Feist testified "I had no idea I could sue anybody. I mean, first of all, that wasn't my main focus, and secondly, I just thought I was receiving workers' comp and that was my rights, that was it." Id.

During his second deposition, Feist testified that he did not list the claim on his bankruptcy petition because "he had no knowledge of having any claim against anybody other than receiving workers' comp." Id. at 279. Feist also testified that he did not believe that he had a claim until he had a conversation with his uncle about two months prior to filing the tort action. Id. However, when he was asked what led him to seek an attorney so shortly after his bankruptcy was discharged, his response indicated that his knowledge of a potential claim

dated back to the incident:

> I knew that from the beginning. The thing was I was hoping to get better and as time went on I got so depressed and isolated myself to such an extent. I didn't want to try and get involved in the courts or go after anybody.

Id. at 279.

The court in Feist denied the plaintiff's and trustee's motion to substitute because the plaintiff failed to carry his burden of proving that the filing of the action in his own name was an honest and understandable mistake. Id. at 280. The court concluded that to allow a substitution where a plaintiff cannot establish that he was acting as a result of an honest mistake would contravene the purpose of Rule 17(a). Id. at 280.

Amtrak persuasively delineates the similarities between Feist and the instant matter:

> Like the plaintiff in Feist, Reis['] bankruptcy filing was discovered fortuitously. Like Feist, Reis failed to identify her potential claim against Amtrak in her petition. [Defendant's Mem. re Substitution, Ex. B at 77; id., Ex. C.] As did Feist, Ms. Reis denied that she had any claims other than her Workers' Compensation action at her creditor[s'] committee meeting. [Id., Ex. E.]
>
> Like Feist, Ms. Reis knew shortly after her injury that she had a potential claim against Amtrak. [Id., Ex. A; id., Ex. B at 49-52; id., Ex. F at 19-23; id., Exs. G-P.] She continued to maintain that belief throughout the pendency of her bankruptcy proceedings. [Id., Exs. G-P.] Similar to Feist, who admittedly did not tell at least his prior tort counsel of his bankruptcy petition, Ms. Reis did not tell her bankruptcy counsel of her belief that she had a potential claim against Amtrak. [Id., Ex. D at 18.]
>
> Like Feist, Ms. Reis tells this court that it never occurred to her until shortly before filing suit that she believed that she had a claim against Amtrak. [Id., Ex. R at ¶¶ 24-28.] As did Feist, Ms. Reis asserts that her

> "main focus" was on her Workers' Compensation claim. [Id., Ex. R ¶ 21.]
>
> Like Feist, Reis steadfastly maintained her position to the trial court, despite knowing of evidence contradicting it. *Compare*[ ] *Exhibits R and S with Exhibits G-P.* As in Feist, plaintiff's position forced defendant to conduct depositions of counsel unnecessarily and bring additional motions. Here, the Bankruptcy Trustee filed the motion to substitute. In Feist, the motion was filed by the plaintiff but apparently joined by the trustee. Feist, 100 F.[Supp.]2d at 280.

Defendant's Mem. re Substitution at 8-9.

Citing these striking similarities between the two cases, Amtrak asserts that neither Reis nor the Trustee can prove that Reis made an honest and understandable mistake in filing suit. Id. at 9. Thus, Amtrak contends that this Court should rule similarly to the Feist court and deny the Motion. See id.

The Trustee acknowledges that "several courts have required that the party seeking substitution ... demonstrate that the failure to initially prosecute the case in the name of the real party in interest resulted from an 'understandable mistake.'" Trustee's Reply to Defendant's Objection to Motion to Substitute as Party Plaintiff ("Trustee's Reply") at 3-4 (citing Feist, 100 F.Supp.2d at 275). However, the Trustee contends that the result and reasoning of Feist are flawed, see id. at 6, and argues that a more reasonable approach is that found Canterbury v. Federal-Mogul Ignition Co., 483 F.Supp.2d 280 (S.D. Iowa 2007), see Trustee's Mem. at 5.

In Canterbury, the Plaintiff was terminated by his employer due to repeated absences. Canterbury, 483 F.Supp. at 822. Shortly thereafter, the plaintiff filed a Voluntary Chapter 7 petition and failed to list any of his potential claims against his former employer. Id. Only a week after filing his bankruptcy petition the plaintiff took the preliminary steps

necessary to pursue his claims under the Family Medical Leave Act, the Americans with Disabilities Act, and the Iowa Civil Rights Act. Id. On September 12, 2005, the plaintiff commenced his state court action against his former employer. Id.

Similar to the instant case, the defendant/employer in Canterbury moved for summary judgment arguing that the plaintiff was judicially estopped from asserting claims not disclosed in his bankruptcy schedules. Id. at 822-23. The plaintiff moved to amend his complaint to substitute his Chapter 7 trustee as the real party in interest pursuant to Rule 17. Id. The defendant objected to the proposed substitution, contending that the concealment of potential claims from the bankruptcy trustee could not constitute an "understandable mistake" and therefore substitution could not be allowed. Id. at 826.

The Canterbury court determined that the trustee should be substituted as the real party in interest in the pending claim. In so ruling, the court stated:

> Canterbury's actions in filing the present suit and in failing to disclose it to the Trustee, and in failing to disclose the bankruptcy proceedings to the Defendant, were his own post-petition actions and should not be attributed to the Trustee as the proper party in interest. Presumably, if the Court were to dismiss the present action in its entirety, the Trustee would refile Canterbury's claims against Defendant, but the action would be time-barred by applicable statutes of limitations. Such a result would be less than equitable, particularly in light of the fact that the Trustee was not aware of the claims until after the statute of limitations had expired. Refusing to permit the substitution of the Trustee as the real party in interest, then, would represent a significant detriment to the Trustee and, more importantly, to Canterbury's creditors, while at the same time permitting Defendant to receive a possible windfall by virtue of not being held accountable for its allegedly illegal actions. Accordingly, the Court concludes that the interests of justice are best served by permitting the substitution of the Trustee for Canterbury in the present action.

Id. at 827.

The Canterbury opinion is not without persuasive force, and in different circumstances this Court might be inclined to follow it. Here, however, the Court concludes that granting the Motion would result in injustice to Amtrak. Reis' actions in this case are so egregious that they constitute a "fraud on the court" and warrant dismissal of the action. See Hull v. Municipality of San Juan, 356 F.3d 98, 102 (1st Cir. 2004)(stating that "'fraud on the court' is a *potential* basis for dismissing a claim on the facts where 'a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense'")(quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118-19 (1st Cir. 1989))(footnote omitted); see also Aoude, 892 F.2d at 1118 ("fraud on the court can take many forms"). Those actions are fully detailed in this Magistrate Judge's Recommendation for Referral, and they constitute clear and convincing evidence that Reis engaged in a pattern of deliberate deception in the course of discovery relating to her knowledge of a potential third-party claim against Amtrak, see Hull, 356 F.3d at 101 (explaining that in determining whether dismissal is warranted "t]he first question is whether [the plaintiff] engaged in a pattern of deliberate deception in the course of discovery"); id. (noting requirement for "clear and convincing evidence"). The basis for this finding of deliberate deception is stated below.

First, the information about the extent of Reis' knowledge of a potential third-party claim was "squarely sought." Id. When it became an issue in this action, she filed an affidavit in which she repeatedly denied having an awareness of that claim and

falsely asserted that Attorney Jacquard had reinforced that belief in her.[7] See Defendant's Mem. re Substitution, Ex. R ¶¶ 20-21, 28.

Second, as in Hull, here there is a broader pattern of deceit. See Hull, 356 F.3d at 101. Reis' duplicity was not limited to filing the affidavit in this proceeding, but it extended to the bankruptcy proceeding. She lied on her bankruptcy schedule, and she lied when she testified at the creditors' meeting. See Recommendation for Referral at 13-15. Moreover, Reis sought to capitalize on her concealment of information from Attorney Jacquard in the bankruptcy proceeding by having him file an affidavit in this case which supported her false claim that she was unaware of a third-party claim when she filed for bankruptcy.

Third, Reis is not a neophyte. Her emails reflect that she is an educated person who understood the difference between what she could recover under a workers' compensation claim and what could be recovered in a tort action. See Recommendation for Referral at 14 (noting that question posed by Reis in her April 13, 2005, email to Attorney Farley reflects that she had retained his explanation of the difference between these two types of claims); see also Farley Dep. at 20-21. As the Hull court observed, it is easy enough to forget details from one's past, see Hull, 356 F.3d at 101, but here the evidence weighs strongly against the possibility that the false statements in Reis' affidavit are due to a lapse of memory, see Recommendation for Referral at 13-17 (finding Reis' statements to be knowingly

---

[7] As detailed in the Recommendation for Referral, Reis' claim that her discussions with Attorney Jacquard left her with the belief that there was no claim to be made, Defendant's Mem. re Substitution, Ex. R ¶ 20, is directly contradicted by her subsequent emails to Attorney Farley, pressing him for information regarding her potential claim against Amtrak, see id., Exs. H-P.

false). Thus, this case is not dissimilar to Hull where the information withheld by the plaintiff "was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements and omissions as merely careless." Hull, 356 F.3d at 101-02.

In short, Reis lied substantially and materially in the course of discovery in this action. Amtrak was required to expend a great deal of effort to ferret out the truth, and Reis resisted those efforts at every step. See Recommendation for Referral at 5-9; Defendant's Mem. re Substitution, Ex. B at 77. Such conduct is a basis for dismissal.[8] See Hull, 356 F.3d at 102-03.

The Trustee may argue that denying the instant Motion punishes the creditors for Reis' misconduct. It is true that the creditors bear no blame for Reis' actions, but the Court sees no reason why the creditors should be placed in a better situation *vis-à-vis* Amtrak than Reis is herself. If Reis by her misconduct has brought this action to the point where it should be dismissed, those are the shoes into which the creditors (represented by the Trustee) should step. The same would certainly be true if Reis had brought this action to a point where the Court was about to sanction or default Amtrak because of Amtrak's misconduct or duplicity. In such circumstances, the creditors would certainly want the benefit of the impending ruling against Amtrak, and they would undoubtedly argue that the fact that misconduct had been committed against Reis, who was no longer a party to the action (by virtue of a motion for substitution having been granted), is not a reason to deny the

---

[8] While no motion for dismissal has been filed, Amtrak has filed for summary judgment on the ground that Reis is judicially estopped from prosecuting this action. The Court is issuing with this Memorandum and Order a Report and Recommendation recommending that summary judgment be granted on that ground.

creditors the benefit of the Court's remedial action. Similarly here, the fact that the misconduct was committed by Reis is not a reason to deny Amtrak the benefit of the Court's inherent power to deal with fraud. See Chavez v. City of Albuquerque, 402 F.3d 1039, 1045 (10th Cir. 2005)(finding that district court did not abuse its discretion in exercising its inherent power to dismiss plaintiff's case as a sanction for perjuring himself during discovery); cf. Feist, 100 F.Supp.2d at 280 ("the interest of [p]laintiff's creditors in recovering some of the debts owed to them is not sufficient to justify substitution of the bankruptcy trustee as the real party in interest in this case").

While the above reasoning may suggest that the Court should first grant the Motion to Substitute and then entertain a motion from Amtrak to dismiss the case based on Reis' fraud on the Court, the Court sees no point in such an exercise. It would only prolong this action and increase Amtrak's costs even further. Accordingly, the Motion is denied because granting it would impose an injustice on Amtrak.

**Conclusion**

For the reasons stated above, the Motion to Substitute is DENIED.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 5, 2008